UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

| Present: The Honorable | BEVERLY REID O'CONNELL, United States District Judge | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Not Present | Not Present | |

**Proceedings:**   (IN CHAMBERS)

**ORDER RE PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [32]**

Pending before the Court is Plaintiff Bruce Brown's Motion for Class Certification on behalf of himself and others similarly situated. (Dkt. No. 32). This case involves an action for assorted violations of the California Labor and Business and Professions Codes brought by Plaintiff against Defendants Shippers Transport Express, Inc. ("STE") and SSA Marine ("SSA"). The central issue animating this case is whether STE wrongfully classified Plaintiff and the putative class members as independent contractors, thereby depriving them of the rights and benefits as *de facto* employees. For the following reasons, Plaintiff's motion is **GRANTED**.

## I.   FACTUAL BACKGROUND

### A. Defendant STE Transport Express

Defendant STE is a trucking and logistics company providing land transportation services for ocean containers to and from international ports in Los Angeles County and Oakland since 1993. (Opp'n 3.) STE is a subsidiary of Inland Services Corporation which, in turn, is a subsidiary of Carrix, Inc. (SSA Opp'n 3, Dkt. No. 56.) STE maintains a fleet of drivers in California who often work full-time, year-round, driving STE-owned and labeled trucks. (Mot. 1.) The putative class in this litigation is composed of STE drivers operating out of STE yards in Carson and Oakland, California. (Mot. 1.) STE's logistical operations, such as scheduling the pick-up and delivery of the containers, are performed by regular employees. (Mot. 3.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

  Responding to a series of new California Air Resources Board ("CARB") regulations between 2008 and 2010, STE inaugurated a program whereby it leased CARB compliant trucks to drivers whose older noncompliant trucks were no longer able to operate within Los Angeles County.  (Opp'n 4–5.)  Drivers participating in the new program entered into contractual agreements with STE which included a "Truck Lease Agreement," a "Transportation Agreement," an "Acknowledgment of Independent Contractor form," and a "Workers' Compensation Waiver" (collectively, the "Agreements").  (Berganza Decl. ¶ 3.)  The Agreements include the following terms: (1) drivers are independent contractors and not STE employees; (2) drivers have the right to use the leased truck to provide services to other companies; (3) drivers are empowered to use substitutes and helpers; (4) drivers are responsible for their own expenses; (5) drivers are responsible for their own taxes; (6) drivers are paid per load, not by the hour; and (7) the truck is leased to the driver for a fixed duration.  (Opp'n 5.)  Despite such terms, there are conflicting beliefs among STE drivers as to whether they are STE employees or independent contractors.  (Opp'n 5.)

  Bruce Brown ("Brown" or "Plaintiff") is a former STE driver who operated out of STE's Carson location.  (Mot. 5.)  Brown, the sole class representative in this action, worked for STE on two different occasions: from January 2008 to October 2008, and from August 2010 to October 2011.  (Mot. 5.)  During his first stint with STE in 2008, STE classified Brown as an employee truck driver and paid him an hourly rate.  (Mot. 5.)  During his second stint, however, STE classified Brown as an independent contractor although he performed the same type of job as before.  (Mot. 5.)  Grayling Taylor ("Taylor") is also a former STE driver who operated out of STE's Carson location.  (Mot. 5.)  Taylor worked for STE from September 2010 to April 2012.  (Mot. 5.)

  STE requires its drivers to have minimum qualifications, such as a Class A license and at least one year of experience operating commercial trucks.  (Mot. 6.)  STE also requires its drivers to certify that they are eligible to work in the United States, pass a safety road test, submit to a background check, and acknowledge that they will abide by STE's Drug and Alcohol Testing Program Policy.  (Mot. 6–7; Sayas Decl., Exs. 11–13, Dkt. Nos. 34-11–34-13.)  Finally, STE requires all its new Drivers to undergo orientation training which covers issues on vehicle inspection, accidents, procedures on picking up loads, and hours of service.  (Mot. 7.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

As part of the truck lease agreement with STE, drivers may not have any passengers in the vehicle while fulfilling STE contracts unless the individual is another STE contracted driver. (Sayas Decl. Ex. 18.) The leased trucks prominently display the STE name. (Mot. 8.) STE's "Off-Route, Call-In & Sealed Loads" policy strictly prohibits its drivers from transporting STE loads on anything but known truck routes unless authorized by dispatch or STE management. (Mot. 8.) The leased trucks are also subject to STE pre-trip and post-trip inspections. (Mot. 8.) STE contracted drivers are permitted to use STE leased trucks to work for other haulers but at a substantially higher lease rate. (Def.'s Notice of Lodging, Ex. 7 at 1 ¶ 3, Dkt. No. 60.)

STE Drivers are paid a flat "piece rate" which varies per load or container transported; they are not able to negotiate a different rate from STE. (Mot. 8–9.) That said, STE does not set drivers' schedules or tell them when they must arrive at STE's yard. (Opp'n 6.) Drivers are able to set their own entrepreneurial agenda, work when and with whom they want; and take unlimited time off. (Opp'n 6.)

STE deducts from drivers' pay assorted business costs, including fuel, insurance, lease payments, and damage repairs. (Mot. 9.) These deductions are itemized in STE's standard Check Request Form, a document included with drivers' weekly pay checks. (Mot. 9.)

### B. Defendant SSA Marine, Inc.

Defendant SSA Marine, Inc., ("SSA") is a Carrix, Inc., subsidiary located in Washington and operating numerous port cargo terminals along the West Coast. (SSA Opp'n 3.) SSA's subsidiaries operate three large container terminals in Southern California. (SSA Opp'n 3.) These facilities permit access to approximately 1,000 trucking companies including STE. (SSA Opp'n 3.) When the terminals are overcrowded, the SSA subsidiaries often contract with STE and other truckers to haul large numbers of containers to STE's Carson facility. (SSA Opp'n 3.) The SSA subsidiaries are responsible for the safety of the truck drivers while at the terminal facilities to retrieve their loads. (SSA Opp'n 3-4.) The yard rules related to the drivers are mandated by the Division of Occupational Safety and Health and other Agencies.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

(SSA Opp'n 4.) SSA Marine employees provide accounting, benefit and payroll services to STE employees free of charge. (Mot. 4.) For instance, the amount of gross compensation and the itemized deductions to STE drivers' pay are inputted into a computer database by SSA employees in Seattle. (Mot. 4.) STE drivers' interaction with SSA employees in the Carrix corporate office in Seattle, consists of inquiries related to issuance of the drivers settlement checks. (Hofman Decl. ¶ 4.) A brief search of SSA records determined that SSA primarily interacts with five STE drivers who usually have questions relating to the issuance of 1099 forms. (Hofman Decl. ¶ 5.)

## II. PROCEDURAL HISTORY

On January 31, 2012, Plaintiff filed this case in California state court against STE and Does 1 through 10. (Removal, Ex. A at 3, Dkt. No. 1-1.)[1] On February 15, 2013, Plaintiff filed a first amended complaint ("FAC"), which added SSA and alleged seven state causes of action for: (1) failure to pay minimum wage under Cal. Lab. Code §§ 1194, 1194.2, 1197; (2) failure to reimburse for business expenses under Cal. Lab. Code § 2802; (3) unlawful coercion under Cal. Lab. Code § 450; (4) failure to provide accurate itemized wage statements under Cal. Lab. Code § 226; (5) waiting time penalties under Cal. Lab. Code § 203; (6) unfair business practices under Cal. Bus & Prof. Code §§ 17200, *et seq.*; and (7) civil penalties under Cal. Lab. Code §§ 2698, *et seq.*—the Private Attorney General Act ("PAGA"). (Removal 3, Dkt. No. 1.)

On March 22, 2013, Defendant SSA Marine removed to this Court under 28 U.S.C. §§ 1441, 1446, and 1453 alleging diversity subject matter jurisdiction under 28. U.S.C. 1332 (d). (Removal 3.) SSA Marine is a business incorporated and with its principal place of business in the state of Washington and Tayler and Brown are residents of California. (Removal 4.) The amount in controversy is believed to be well in excess of the required $5,000,000. (Removal 4–10.)

On March 28, 2013, this Court issued an Order to Show Cause as to whether the local controversy exception of the Class Action Fairness Act applied and whether the Court should consider a motion to remand. (Dkt. No. 6.) The parties timely responded, (Dkt. Nos. 9–10), and on April 29, 2013, the Court held the CAFA exception did not

---

[1] Page numbers used here are those affixed by the Court Clerk at the time of filing.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

apply. (Dkt. No. 12)  On September 23, 2013, Plaintiff moved to certify a class as representative. (Dkt. No. 32.) The proposed class is composed of all persons who (1) signed a Truck Lease Agreement with STE in California from January 31, 2008, through the date on which notice is provided to the class, (2) actually drove STE's truck without hiring others to perform the work for STE, and (3) were classified by STE as independent contractors instead of employees.  (Dkt. No. 32.)  Defendants timely opposed (Dkt. Nos. 54, 56.), and Plaintiff filed his reply on November 20, 2013, (Dkt. No. 63).

## III.   LEGAL STANDARD

Federal district courts have jurisdiction over class action suits if the claims arise under federal law. 28 U.S.C. § 1331. In the alternative, a district court will have jurisdiction if the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and any member of the prospective class is (a) a citizen of a state different from any defendant; (b) a foreign state or citizen or subject of a foreign state and any defendant is a citizen of a state; or (c) a citizen of a state and any defendant is a foreign state or a citizen or subject of a foreign state. 28 U.S.C. § 1332(d)(2).

The party seeking class certification bears the burden of establishing that the prospective class satisfies the four requirements under Federal Rule of Civil Procedure 23(a):

> (1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Additionally, the party seeking class certification bears the burden of demonstrating it has met at least one of the requirements of Rule 23(b).  *See Valentino v. Carter–Wallace,* 97 F.3d 1227, 1234 (9th Cir.1996).  Certification should only be granted if, "after a rigorous analysis," the district court determines that the prospective class satisfies the

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

requirements of Rule 23(a). *Wal-Mart Stores*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)) (internal quotation marks omitted).

When reviewing a class certification motion, district courts are generally bound to take the substantive allegations of the complaint as true. *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 n.7 (9th Cir. 1975)). Nevertheless, the Supreme Court has recognized that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 161) (internal quotation marks omitted). Ultimately, district courts have "broad discretion to determine whether a class should be certified and to revisit that certification throughout the legal proceedings before the court." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 810 (9th Cir. 2010).

## IV. DISCUSSION

Plaintiff seeks certification of the following class: all persons who (1) signed a Truck Lease Agreement with STE in California from January 31, 2008, through the date on which notice is provided to the class, (2) actually drove STE's truck without hiring others to perform the work for STE, and (3) were classified by STE as independent contractors instead of employees. (Mot. 13.) The Court finds that Plaintiff has met his burden to satisfy the requirements of Rule 23(a).

### A. Rule 23(a) Requirements

#### 1. *Numerosity Is Satisfied*

Numerosity is satisfied if "the class is so large that joinder of all members is impracticable." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (citing Fed. R. Civ. P. 23(a)). "The numerosity requirement is not tied to any fixed numerical threshold—it 'requires examination of the specific facts of each case and imposes no absolute limitations.'" *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

2010) (quoting *Gen. Tel. Co. of the Nw., Inc.* v. *EEOC*, 446 U.S. 318, 330 (1980)). Ninth Circuit precedent, however, suggests that numerosity is satisfied when the prospective class includes at least forty members. *Id.*

Defendants do not dispute that Plaintiff's prospective class satisfies the numerosity requirement. Plaintiff's prospective class totals approximately 307 current and former STE drivers according to documents provided in discovery to Plaintiff's counsel. (Mot. 13; *see* Sayas Decl. ¶ 29.) Circuit case law suggests 300 members is more than sufficient to satisfy Rule 23(a)(1). *See Id.* The Court finds that Plaintiff satisfies the numerosity requirement.

2. *Commonality Is Satisfied*

Rule 23(a)(2)'s requirement of "common questions of law or fact" can be misleading. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551–52 (2011). The Supreme Court has explained that "[c]ommonality [more accurately] requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Id.* (quoting *Falcon* at 457 U.S. at 157). This is not to imply that members of the prospective class need only claim violations of the same provision of law. *Id.* at 2551. Rather, "[t]heir claims must depend upon a common contention . . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

As was the case with numerosity, Defendants do not contest 23(a)'s commonality requirement. Plaintiff claims each class member was erroneously classified and compensated as an independent contractor when they were properly owed the benefits furnished by California law to regular employees. The resolution of whether STE possessed a degree of control over the class such that its members were actually employees and not independent contractors is a common contention that is "central to the validity of each one of [Plaintiff's] claims." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551. The Court finds that Plaintiff satisfies the commonality requirement.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | | Date | March 10, 2014 |
|---|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | | |

     3. *Typicality Is Satisfied*

     Ninth Circuit precedent holds that commonality and typicality "tend to merge." *Meyer v. Portfolio Recovery Assocs. LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2361 (2013) (quoting *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551 n.5). But both commonality and typicality "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id*. "The typicality requirement looks to whether 'the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (alteration in original) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)) (internal quotation marks omitted).

     "'All questions of fact and law need not be common to satisfy the [commonality requirement]. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.'" *Meyer*, 707 F.3d at 1041 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). This requirement "is 'permissive' and requires only that the representative's claims are 'reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Rodriguez*, 591 F.3d at 1124 (quoting *Hanlon*, 150 F.3d at 1020).

     Defendants argue Plaintiff is atypical because: (1) due to persistent and unpredictable family issues, he drove for STE on an erratic basis and took extended leaves; (2) STE tasked him by text message to haul at night, whereas other members had to call in by a certain time to haul at night; (3) he resigned for safety reasons whereas others class members were fired; and (4) he drove solely at night whereas other members drove also drove during the day. (STE Opp'n 22–24.) Plaintiff counters that Brown is typical of the class because: (1) he was classified as an independent contractor; (2) he was subject to the same policies and procedures as other class members; (3) he drove only STE's trucks during his engagement with the company, (4) he was not paid for all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

the hours he worked, and (5) he had truck maintenance and other expenses deducted from his pay. (Reply 10–11.) Plaintiff has the better of the argument. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). Here, the typicality requirement is met "because Plaintiff[] ha[s] alleged an identical injury, namely that the proposed class members were improperly classified as independent contractors and as a result they were denied a host of work-related benefits provided by California labor laws." *Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 WL 4635198, at *8 (N.D. Cal. Oct. 5, 2011.) The Court finds that Plaintiff has established typicality.

    4.  *Adequacy Is Satisfied*

Rule 23(a)'s adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation and internal quotation marks omitted). The Ninth Circuit has held that resolution of two questions determines the party's adequacy to represent the class: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Defendants argue that some class members will not want to lose their "independent contractor" status and the freedom of schedule this allows. (Opp'n 24.) In other words, they do not want to be classified as employees, and, thus, Plaintiff's entire case is against these class members' interests. Defendants' argument misunderstands the adequacy inquiry. As the court explained in *Norris-Wilson v. Delta-T Grp., Inc.*,

> [Defendant's] last argument is that many behavioral healthcare professionals who work with [defendant] *prefer* to be independent contractors, and that this creates a conflict of interest. But the conflicts that Rule 23(a)(4) is concerned about are conflicts between the class representatives and other members of the putative class, not between those who do and don't think a lawsuit is a good idea in the first place. Just because potential class

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

> members disagree with the spirit of any action doesn't mean it shouldn't be certified. It will almost always be the case that some putative class members are happy with things as they are.

270 F.R.D. 606 (S.D. Cal. 2010) (internal citations omitted) (emphasis in original). The fact that some class members may prefer an independent contractor status does not destroy a motion for certification.

Defendants also argue that Brown is unlike some of the other prospective class members who have criminal records that make them "virtually unemployable." (Opp'n 25.) Defendants argue that they would not hire those prospective class members to be employees. (Opp'n 25.) As Plaintiff points out, the criminal records of class members have no relevance. Plaintiff's legal theory is that the class members were *de facto* employees that Defendants compensated as independent contractors. (Reply 12.) They argue that those with criminal records have, thus, already been "employed" by Defendants. There is no conflict of interest between the class representative and the other drivers or any reason to suggest Mr. Brown will not vigorously champion of the interests of the class. The Court finds that Plaintiff satisfies the adequacy requirement.

### B. Rule 23(b)(3) Requirements

For certification under Rule 23(b)(3) the class must show that "common questions predominate over any questions affecting only individual members and that class resolution [is] superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods, Inc.*, 521 U.S. at 592-93 (internal quotation marks omitted).

### 1. *Questions of Law or Fact Common to the Class Predominate*

Rule 23(b)(3) requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1209-10 (2013). The predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem Prods, Inc.*, 521 U.S. at 623. In

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

doing so, it "focuses on the relationship between the common and individual issues," of the class. *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. The legal and factual issues need not be identical across the class; the proposed class need only be "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623 (citation omitted). The Court finds that questions of law or fact common to Plaintiff and the putative class members dominate over those affecting only individual members.

      a.  Legal Presumption as to Employment

Plaintiff and the putative class members enjoy a legal presumption that they are employees of STE. As the California Supreme Court has held, "the fact that one is performing work and labor for another is *prima facie* evidence of employment and such person is presumed to be a servant in the absence of evidence to the contrary." *Robinson v. George*, 16 Cal. 2d 238, 242, 105 P.2d 914, 916 (1940); *see also Narayan v. EGL, Inc.*, 616 F.3d 895, 900 (9th Cir. 2010) (quoting *Robinson*, 16 Cal.2d 238, 242 (1940)). The putative class members were retained to perform labor for STE. According to Plaintiff's theory of liability, Defendants cannot rebut this presumption of employment. (Reply 5.)

Defendants argue that the employees operated as independent contractors, and as such Plaintiff and the putative class members have individualized questions of law and fact. (Opp'n 13.) The California Supreme Court offered an extensive employee versus independent contractor analysis in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341 (1989). According to *Borello*, "[o]ne seeking to avoid liability has the burden of proving that persons whose services he has retained are independent contractors rather than employees." *Id*. at 349. Defendants argue that Plaintiff cannot satisfy the most "decisive" factor regarding control. (Opp'n 18.) According to *Borello*, "California decisions applying such statutes uniformly declare that '[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired.'" *Id*. at 350 (1989) (citation omitted). The Court finds that Plaintiff satisfies this factor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

As common evidence of control Plaintiff offers:

(1) STE's admission that it controls all the logistics of the trucking operations; (2) STE's uniform hiring and orientation practices; (3) STE's provision of the primary equipment necessary to do the drivers' work- a truck; (4) STE's written policies demonstrating control over Drivers' working conditions, including, among others, its "Off Route, Call In & Sealed Loads" policy, its "Co-Driver/Passenger Policy," and its "Hours of Service" policy; (5) STE's mandatory driver meetings; (6) STE's monitoring of driver performance through GPS devices and dispatchers' field observations; (7) STE's ability to discipline drivers through suspensions, reassignment to less desirable day shifts, and terminations; (8) STE's payment of pre-determined flat piece rate for each load; (9) STE's control over the same categories of expense deductions from each drivers' pay.

(Reply 4-5) (citations omitted). Most of the common policies and practices are memorialized in written policies ("Agreements") and signed by all drivers. (Reply 4.) Plaintiff argues that putative class members' ability to control meaningful aspects of the relationship requires the Court to look no further than these Agreements signed by all drivers.

      b. Agreements

Defendants concede that STE has common policies and procedures regarding "driver qualifications, safety oversight and review, recording[/]reporting driver hours in service, driving and maintaining trucks, safe storage of chassis and containers, among many others." (Opp'n 13-14.) Defendants argue, however, that the Agreements should be given little weight as common evidence of an employer relationship. (Opp'n 13.) According to Defendants, the Agreements are mandated by the Federal Motor Carrier Safety Administration Regulations and Federal Truth in Leasing Regulations, thus providing little probative value. (Opp'n 13.) A similar argument was made by the defendant in *Hurst v. Buczek Enterprises, LLC*, 870 F. Supp. 2d 810, 826 (N.D. Cal. 2012). In *Hurst*, defendant argued that it supervised plaintiff at the behest of the Department of Housing and Urban Development. *Id*. Defendant tried to argue that it did not actually control plaintiff. *Id*. The court in *Hurst* was not persuaded by this argument, stating "it is not clear why the *reason* for Defendant's control over Plaintiff is relevant"

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

and that "attempt[ing] to draw a line between some hypothetical form of supervision [the defendant] would implement absent client demands or legal requirements, on the one hand, and the actual form of supervision it implemented, on the other, is unpersuasive." *Id*. The court pointed a Ninth Circuit case it felt suggested such compliance was indicative of an employment relationship. *See Narayan,* 616 F.3d at 902 (considering evidence of employer controls as supporting employment status, including requirements "imposed to meet 'the industry standard, the DOT regulation, and . . . customer's requirements.'"). The Court is similarly unpersuaded by Defendants' argument.

   c. Meaningful Control

  Defendants also argue Plaintiff and the putative class members maintain some autonomy, pointing to anecdotal evidence that some may set their own schedules, own their own trucks, have separate businesses, and reject loads without reprisal.[2] (Opp'n 18-19.) Again, the Court is unpersuaded that individualized claims are dominant. "[I]t is the right to control, not the exercise of the right, which bears on the status of the work arrangement." *Borello*, 48 Cal.3d at 357 n.9. Individual autonomy "is only significant when it shows an individual exerts such a control over a meaningful part of the business that [he or she] stands as a separate economic entity." *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1371 (9th Cir. 1981). Defendants argue that some drivers own their own trucks, but is undisputed that STE owns the trucks that putative class members use to perform their work. (Reply 7.) Further, Defendants argue the Agreements "empower[] drivers to use substitutes and helpers." (Opp'n 5.) The Court finds that there is a question as to whether this is possible in practice. At all times, STE maintains "the right to control who is allowed in its trucks to perform the work, even when the truck is ostensibly leased to class members." (Reply 7.) Similarly, STE's "Co-Driver/Passenger Policy" actually prohibits drivers from hiring helpers because it expressly provides that "[u]nder NO circumstances do we allow any passengers, family members, friends or other drivers (*even if they are contracted to* us) to be in the vehicle (*other than the driver assigned to*

---

[2] Defendants also argue that "Plaintiff posits a joint employer theory based upon a tenuous and indirect corporate relationship between SSA and STE. SSA is a subsidiary of Carrix and has, as its subsidiaries, unionized stevedoring companies." (Dkt. No. 56 at 3.) On the other hand, STE is a subsidiary of Inland Services Corporation, which is itself a subsidiary of Carrix. (Dkt. No. 56 at 3.) The Court need not address this argument because it is not relevant to the question of class certification.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

*such vehicle*).") (Reply 3 n.2.) As such, Defendants have not established that Plaintiff and the putative class members control meaningful aspects of the relationship.

According to Defendants, more is required to establish predominance. (Opp'n 15.) Defendants urge the Court to examine the substantive issues raised by Plaintiff and inquire into the proof relevant to each issue. *See Jimenez v. Domino's Pizza*, 238 F.R.D. 241, 251 (C.D. Cal. 2006). In *Jimenez*, the court determined that it was "not the typical case where a class can be certified because the class members' duties are, or can be determined to be, roughly identical, despite the need for individual damage determinations based on the number of hours worked." *Id*. *Jimenez* involved employees with individualized tasks. Such is not the case here as all proposed members of the putative class drove trucks leased to them by STE, were paid a flat rate per piece, and were assigned the type and location of work assignments. (Mot. 9.)

### d. Individualized Damages

Finally, Defendants argue that individualized damages should defeat the motion for class certification under Rule 23(b)(3). The Court does not agree. Specifically, Defendants argue that Plaintiff seeks reimbursement for the individualized costs of leasing the trucks, fuel, insurance, and damages to Defendants' trucks. (Opp'n 15.) "[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Defendant cites to *Drake v. Morgan Stanley & Co.*, for support, which the Court finds to be distinct from the case at hand. No. CV 09-6467, 2010 WL 2175819, at *7 (C.D. Cal. Apr. 30, 2010). In *Drake* "an individualized factual determination of whether each employee (1) incurred an expense (2) that was necessary (3) and reasonable (4) as a direct consequence of the discharge of his or her duties" was required for a damages assessment. *Id*. The same kind of individualized inquiry is not necessary here. Damage calculations are manageable on a class-wide basis by reference to STE's own records, which reflect hours worked by drivers and all expenses uniformly deducted from driver pay. (Mot. 24.) To the extent that time information is lacking for certain uncompensated duties, Plaintiff may utilize scientific surveys and statistical sampling. *See Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 333 (2004) ("California courts and others have in a wide variety of contexts considered pattern and practice evidence, statistical evidence, sampling evidence, expert testimony, and other indicators of a defendant's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

centralized practices in order to evaluate whether common behavior towards similarly situated plaintiffs makes class certification appropriate."). Surveys are frequently used to estimate key values in litigation when there are not extant contemporaneous records. (Phillips Decl. ¶ 11.)

"[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Amgen Inc. v. Connecticut Retirement Plans and Trust* Funds, 133 S.Ct. 1184, 1191 (2013). The Court finds that Plaintiff satisfies the predominance requirement of 23(b)(3).

2. *Class Action Is Superior Vehicle to Resolve Dispute*

Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The Ninth Circuit has held that "[a] court may consider other, non-listed factors, however, and . . . a broad inquiry is appropriate." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 713 (9th Cir. 2010). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

a. Class Members' Interests in Individually Controlling the Litigation

Defendants argue that a class action is not a superior vehicle to resolve the dispute because the individual class members have large potential recoveries. One driver, for example, is currently pursuing a claim for $40,000 in front of the Division of Labor Standards Enforcement. (Opp'n 22.) Plaintiff counters that potentially large individual

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

recoveries are not dispositive and are outweighed by the judicial resources that will be conserved by adjudicating this dispute via a class action. (Reply 9.) The fact that a class member's "claim may be large enough to pursue individually, [] does not defeat certification, especially in light of the substantial judicial resources conserved by determining common issues in a single adjudication." *Dalton v. Lee Publications, Inc.*, 270 F.R.D. 555, 565 (S.D. Cal. 2010). Because common issues predominate, it would be more efficient to resolve the question of employment status on a class-wide basis.

        b. Extent and Nature of any Litigation

The second factor requires the Court to weigh the extent and nature of litigation already underway. This "is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits." *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1780, at 568–70 (2d ed. 1986)). The Complaint was initially filed nearly a year ago, and the parties have engaged in some discovery. (Dkt. No. 27.) The Court finds that considerations of judicial economy support certification.

        c. Desirability or Undesirability of Concentrating the Litigation in the Particular Forum

The third factor examines "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). This inquiry takes into account the location of potential class members, witnesses, and evidence. *See Zinser v. Accuflix Research Institute, Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001). Here, the vast majority of class members, witnesses and potential evidence are located in Los Angeles County; a small remainder is in Oakland. (*See* Mot. 3–4 (explaining that the Carson location employs 139 drivers at a given time compared to only about 15 drivers at the Oakland location). ) The Court is persuaded by Plaintiff's unrebutted argument that the Central District is a desirable and efficient forum in which to litigate this dispute.

        d. Likely Difficulties in Managing a Class Action

Rule 23(b)(3)'s final enumerated factor considers "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). The Ninth Circuit has held that "when the complexities of class action treatment outweigh the

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Zinser*, 253 F.3d at 1192 (citations omitted). "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Id.*

"Many courts and commentators have recognized that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012) (citations omitted). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.* Defendants do not dispute that the class is ascertainable. The class sought by Plaintiff is ascertainable. The qualifications for membership can be confirmed through Defendant's records of the Truck Lease Agreements. Plaintiff's exhibits, moreover, include many examples of these Agreements suggesting they exist and can be relied upon. (*See* Notice of Lodging 2–9, Dkt. No. 60.) The class is well-defined and of manageable size. As such, the Court finds it unnecessary to further discuss this requirement.

Individual damages present the only area where difficulties might arise should the Court grant certification to Plaintiff's class. However, as Plaintiff explains, calculating these damages does not present such a burden that it weighs against certification. Plaintiff claims, and Defendants do not disagree, that deductions from driver's pay and minimum wages due as a result of performing pre- and post-shift duties may be proven by reference to Defendants own records including computerized tracking of deductions and Vehicle Condition Reports, which contain maintenance time information. (Mot. 24.) Certainly, whatever difficulties calculating individualized damages may present, they do not outweigh the savings that will result from avoiding a multitude of individual suits.

The efficiencies gained by use of a class action for all common questions outweigh any burden created by adjudication of each driver's damages. Class certification, moreover, will protect the rights of class members, most of who would otherwise be precluded from pursuing claims given the prohibitive cost of litigation. The Court's conclusion remains subject to ongoing evaluation. If at a later stage in the litigation it becomes evident that plaintiffs' claims will not be subject to common proof, or that the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | March 10, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. | | |

class action device no longer appears to be a manageable mechanism for adjudicating this dispute, the Parties can bring that to the Court's attention. As the Ninth Circuit has explained, "a district court retains the flexibility to address problems with a certified class as they arise, including the ability to decertify." *United Steel, Paper & Forestry,* 593 F.3d at 809. Accordingly, the Court finds it appropriate to grant Plaintiff's Motion for Class Certification.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification is **GRANTED**.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | rf |