1  JAMES J. MCMULLEN, JR. (SBN: 095853)
   jmcmullen@gordonrees.com
2  STACEY M. COOPER (SBN: 226012)
   scooper@gordonrees.com
3  GORDON & REES LLP
   101 West Broadway, Suite 2000
4  San Diego, CA  92101
   Telephone:  (619) 696-6700
5  Facsimile:   (619) 696-7124

6  Attorneys for Defendants SSA MARINE, INC. AND
   SHIPPERS TRANSPORT EXPRESS, INC.
7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10 GRAYLING TAYLOR, an individual,     ) Case No.: 13-CV-02092-BRO(PLAx)
   and BRUCE BROWN, an individual on   )
11 behalf of himself and others similarly ) *Honorable Beverly Reid O'Connell*
   situated,                           )
12                                     ) Complaint filed:     January 31, 2012
                      Plaintiffs,      )
13                                     ) Removed from:
         v.                            )
14                                     ) Superior Court of the State of
   SHIPPERS TRANSPORT EXPRESS,         ) California for the County of Los
15 INC., a California corporation, SSA ) Angeles Case No.: BC477047
   MARINE, a Washington corporation, and )
16 DOES 1 to 10 inclusive,             ) **DECLARATION OF EDWARD
                                       ) DENIKE IN SUPPORT OF
17                     Defendants.     ) DEFENDANTS' OPPOSITION
                                       ) TO MOTION FOR PARTIAL
18                                     ) SUMMARY ADJUDICATION**
                                       )
19                                     ) Hearing Date:      July 21, 2014
                                       ) Time:                1:30 PM
20                                     )
                                       ) Discovery Cutoff Date: 9/22/2014
21                                     ) Trial Date: 12/01/2014
                                       )
22 _____)

23       I, Edward DeNike, declare:

24       1.     I am President of Shippers Transport Express, Inc. ("STE").

25       2.     I believe I have been the President of STE since its incorporation in

26 late 1993.

27       3.     From 1993, STE has been in the container storage and trucking

28 business.  Its business model and method of operation have been consistent since

                              -1-

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

1  that time.  STE's revenue is earned through both its container storage operations
2  and the hauling business.

3      4.      Since 1993, STE has used the broker or subhaul model for all its
4  trucking operations.  STE's business plan is customary in the industry and does not
5  involve a deceptive attempt by an employer to break up its operation into small
6  components which require no operational direction.

7      5.      The broker or subhaul model means that STE arranges to move cargo
8  by use of subhauling or subcontracting to independent owner/operator truckers,
9  and other independent contractors including corporate trucking companies of all
10  sizes.  Many of these companies are small businesses including sole
11  proprietorships.

12      6.      STE is not unique in the container drayage business.  Most of the
13  companies I am aware of in this business work with subcontractors and subhaulers
14  including independent owner/operators.

15      7.      STE's method of operation, that is the broker or subhauling model, is
16  well known in the trucking community.  Any and all persons seeking dispatches
17  with STE are well aware that STE works only with independent contractors of
18  various types and does not employ drivers.

19      8.      I am the President of several different companies in the intermodal
20  transportation business.  Both personally and as a matter of corporate culture at the
21  companies I am involved with, the companies are union supportive or union
22  neutral.  We have good employee relations and have unions where that is what the
23  employees want.

24      9.      STE has always had a friendly relationship with the Teamsters Union
25  prior to this lawsuit.  STE has always had an open line of communication with the
26  Teamsters Union and has explained its operations and its philosophies in detail.
27  Indeed, STE loaned its facility in Oakland to the Teamsters to conduct various
28  types of training in the year 2008.

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

DECLARATION OF EDWARD DENIKE                    Case No.: 13-CV-02092-BRO(PLAx)

10.     Also in the year 2008, I gave a series of interviews to the media in the Oakland area.  At my deposition on June 10, 2014, I was confronted with some of the articles which quoted me.  After being referenced by those articles, I recalled that in 2008 I extensively explained the broker or subhauler method of operation of STE to the media and explained that was STE's only method of operation.

11.     There were admittedly two very insignificant exceptions to the subhauler/broker model of operation.  The first occurred close to 1993 when STE brought aboard two drivers as employees.  We did this because those employees had lost their job at a related business and needed a job as a truck driver in order to support their families.  When those individuals from the other company left STE, they were not replaced and their trucks were sold.

12.     The other exception, which was pointed out at my deposition on June 10, 2014, was that early in 2008, a company with whom we did a great deal of business and the Teamsters Union approached us and asked us to provide temporary assignments to a group of drivers who were being laid off due to the closure of Maritech Leasing, Inc. ("Maritech").  Maritech wanted these individuals to continue in the trucking business for a matter of "months" until they could rejoin the Teamster Union at a new Maritech business which was being planned.  (Maritech was a Teamster represented trucking company.)  I did not realize that my staff was being asked to treat these drivers who came from Maritech with trucks as employees.  I later learned that we were required to secure workers' compensation insurance and treat these drivers as employees.

13.     The nineteen (19) or fewer drivers who we employed as a favor to Maritech and the Teamsters always constituted an exceptionally small percentage of the drivers we dispatched loads to.  We never reclassified these drivers as anything.  The drivers came to us, and we were asked to employ them despite the fact that they were supplied with trucks.  We employed them for less than nine months.  At the end of that time, these drivers returned to Maritech and remained

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-3-

1  employees before and after the short stint with STE.  They were never reclassified

2  as independent contractors.  They returned to Maritech which was a unionized

3  employer.  After Maritech reopened as Maritech Trucking, Inc. in late October

4  2008, Maritech Trucking, Inc. hired all of the employee drivers of STE, and STE

5  returned to its subhauling model.  It did not have access to a fleet of trucks nor

6  could it employ drivers or lease to independent contractors.

7          14.    In these two instances where STE has had employee drivers, drivers

8  would be given work assignments and told to complete them.  They had no input

9  on rate negotiation or which loads they hauled and which loads they would not

10  haul; they were hourly.  They were completely different from the independent

11  contractors.

12          15.    Our intention in employing the two original individuals and the few

13  Maritech drivers was simply to do a favor for a business affiliate and the Teamsters

14  Union and to help a group of workers in the transportation industry.

15          16.    In 2010, STE began a lease program.  This lease program was

16  implemented specifically to benefit a group of independent owner/operators who

17  were asking that trucks be made available to them on a short term lease basis

18  because they could not afford the long term debt associated with owning a

19  commercial tractor which would comply with the recent California Air Resources

20  Board ("CARB") standards.  Such trucks cost in excess of $100,000, and I was

21  repeatedly told that the owner/operators who had historically worked with STE

22  could not afford such trucks.  I am still being told that the cheaper eco-diesel trucks

23  which are CARB compliant command a price of over $60,000.  I am still being

24  told that despite trucks becoming somewhat more accessible, it is still very difficult

25  for port truckers to afford an eco-compliant tractor under the current

26  circumstances.

27          17.    With respect to the lease program, both of my managers in California

28  recommended that such a program be implemented to assist some of the

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

-4-

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

1  company's owner/operators. When I authorized the lease program I made it very

2  clear that the purpose of the program was to benefit the independent

3  owner/operators.

4      18.    The company had implemented a process to qualify drivers and

5  expanded that to include drivers who lease trucks from STE and enter into a

6  Transportation Agreement with STE. I insisted that drivers be vigorously advised

7  that this is an independent contracting operation and not employment.

8      19.    I have also been adamant that we do not simulate employment in any

9  way. We do not direct the details of the trucker's work, we do not advise the

10  truckers on how to conduct their business, and we do not intermeddle into the

11  trucker's business. Instead, we have ensured that we refrain from integrating these

12  truckers into our business, refrain from exercising control over these truckers, and

13  allow the truckers to operate independently, use the trucks for their own business

14  purposes outside of STE and otherwise encourage the owner/operators to continue

15  to operate their pre-existing trucking businesses. I have been advised that this

16  strategy and policy has been adhered to. Overall, I approved the documents and

17  system used.

18      20.    I consulted with attorneys and my managers in preparation of a packet

19  of documents to be provided to the independent owner/operators and the

20  independent drivers wishing to lease a truck. I also approved certain leases for use

21  in the lease program. I specifically requested that these documents be

22  exceptionally clear that there was no employment going on in the relationship. To

23  the contrary, the documents make it clear that each lease driver is an independent

24  contractor running his own business and must do so. We do not assist the drivers

25  in running their businesses. However, we do alert them to things such as workers'

26  compensation insurance for helpers they hire, filing tax returns as an independent

27  business, and other matters that are quite different than employment. We try to

28  contract with those who have already had success running a business and we try to

-5-

DECLARATION OF EDWARD DENIKE                Case No.: 13-CV-02092-BRO(PLAx)

1  ensure that no one misunderstands the relationship or becomes involved in a

2  relationship they do not desire to be in.

3       21.    We have always kept the Teamsters Union filled in on our efforts.

4  Lately we have been discussing with the Teamsters whether they have any

5  alternatives which would benefit the trucking community in any of the places

6  where we operate.  Nevertheless, in the course of these discussions, the

7  impediments to the model the Teamsters are advocating for have been discussed.

8  In the current business climate, the history of the Union, the company, and

9  business judgment and analysis illustrates that the independent owner/operator

10  model of doing business has large competitive advantages over an employment

11  model.  Thus, anyone using the employment model is risking losses to their

12  business and loss of work.

13       22.    This declaration is provided partially because we knew that my

14  second day of deposition would not be available by the time the Opposition to

15  Plaintiff's Motion for Partial Summary Judgment must be submitted.  The above is

16  partially a summary of the comments I made on the record when I was questioned

17  by the class action attorney Joe Sayas and the United States Department of Labor

18  attorney Natalia Nardecchia.

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

DECLARATION OF EDWARD DENIKE                    Case No.: 13-CV-02092-BRO(PLAx)

1    I know each of the above matters based upon my own personal knowledge
2    or I have opined based upon information and belief that I have set forth.
3    I declare under penalty of perjury under the laws of the United States that
4    the foregoing is true and correct to the best of my knowledge and belief.
5    Executed this _16th_ day of June 2014, at Seattle, Washington.

6

7

8                        Edward DeNike

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

1078185/19843077v.1

DECLARATION OF EDWARD DENIKE                    Case No.: 13-CV-02092-BRO(PLAx)