**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | | Date | September 30, 2014 |
|---|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | | |

Present: The Honorable    **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**       (IN CHAMBERS)

## ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [93] AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [151]

## I.    INTRODUCTION

Pending before the Court are the Parties' cross-motions for summary judgment. (Dkt. Nos. 93, 151.)  The Court has previously certified Plaintiffs as a class of truck drivers (the "Drivers") who worked for Defendant Shippers Transport Express, Inc. ("STE").  (Dkt. No. 71.)  Moving forward, a central issue in this class action—and the only issue raised in Plaintiffs' motion—is whether the Drivers were properly characterized by STE as independent contractors, as Defendants assert as an affirmative defense, or whether they were actually employees.  For the following reasons, the Court finds Plaintiffs have successfully carried their burden of proof and **GRANTS** Plaintiffs' motion for partial summary judgment.

Defendants' motion for summary judgment raises two issues.  First, Defendant SSA Marine, Inc. ("SSA Marine") argues that it cannot, as a matter of law, be considered a joint employer of the Drivers and therefore cannot be liable in this class action. Second, both Defendants STE and SSA Marine argue that the Federal Aviation Authorization Administration Act ("FAAAA") preempts Plaintiffs' claims brought under the California Labor Code.  For the following reasons, the Court rejects Defendants' arguments and therefore **DENIES** Defendants' motion for summary judgment.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | | Date | September 30, 2014 |
|---|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | | |

## II.    BACKGROUND

### A. The Parties

Plaintiffs represent a class of STE truck drivers operating out of STE's yards in Carson and Oakland, California. (Dkt. No. 71.) During the relevant time period in this dispute, Plaintiffs worked for STE under agreements stating that they were independent contractors. (*See* Defs.' Reply to Pls.' Statement of Genuine Issues of Material Fact (Dkt. No. 165-2) ("DSUF") ¶¶ 59–60.) STE's logistical operations, however, such as scheduling the pick-up and delivery of the containers, are performed by regular employees. (Dkt. No. 32 at 1.)

Defendant STE is a trucking and logistics company providing land transportation services for ocean containers to and from international ports in Los Angeles and Oakland. (Pls.' Statement of Uncontroverted Facts (Dkt. No. 96) ("PSUF") ¶¶ 1–4.) It is owned by a company called Inland Services, Inc. ("Inland Services"), which is a subsidiary of Carrix, Inc. ("Carrix"). (DSUF ¶¶ 1, 3.) Defendant SSA Marine operates marine container terminals in the Long Beach-Los Angeles area and in Oakland. (DSUF ¶ 6.) Like Inland Services, SSA Marine is a subsidiary of Carrix. (DSUF ¶ 1.) SSA Marine also owns a subsidiary called SSA Containers, Inc. ("SSA Containers"), which operates marine terminals in the Long Beach-Los Angeles area and in Oakland. (DSUF ¶ 40.)

There is much dispute about the interrelation between Defendants STE and SSA Marine, and this issue is at the heart of Defendants' motion for summary judgment. (Dkt. No. 151-1.) Some facts, however, are undisputed. For example, it is undisputed that Edward DeNike serves as the President of STE, the Executive Vice President of SSA Marine, and the President of SSA Containers. (DSUF ¶¶ 2, 3, 40.) The similarities or differences between these roles, however, are the subject of much dispute between the parties. Although Defendants concede that SSA Marine and STE share some officers and directors, they maintain that the day-to-day management of the two companies is "quite distinct." (DSUF ¶ 16.) Plaintiffs disagree. The Parties also disagree over the extent to which SSA Marine had control over employment decisions at STE, (DSUF ¶¶ 21–25), and whether the two companies are financially independent from each other, (DSUF ¶¶ 26–31). Given the factual nature of Defendants' motion, the Court will discuss these factual disputes in greater detail below.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092 BRO (PLAx)** | | Date | September 30, 2014 |
|----------|-----------------------------|--|------|---------------------|
| Title | **GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL.** | | | |

## B. Procedural Background

Plaintiffs first initiated this lawsuit against STE on January 31, 2012 in the Superior Court of California, County of Los Angeles. (Dkt. No. 1-1.) On February 15, 2013, Plaintiffs filed a First Amended Complaint ("FAC") in order to add Defendant SSA Marine. (Dkt. No. 1-1.) The First Amended Complaint, which remains the operative complaint in this matter, alleges seven state causes of action for: (1) failure to pay minimum wage under California Labor Code sections 1194, 1194.2, 1197; (2) failure to reimburse for business expenses under California Labor Code section 2802; (3) unlawful coercion under California Labor Code section 450; (4) failure to provide accurate itemized wage statements under California Labor Code section 226; (5) waiting time penalties under California Labor Code section 203; (6) unfair business practices under California Business & Professions Code sections 17200 *et seq.* ("UCL"); and (7) civil penalties under California Labor Code sections 2698 *et seq.* (Dkt. No. 1-1.)

On March 22, 2013, SSA Marine removed the underlying action to this Court pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, alleging diversity subject matter jurisdiction under 28. U.S.C. § 1332(d). (Dkt. No. 1-1.) Plaintiffs then moved for class certification on September 23, 2013, (Dkt. No. 32), which the Court granted on March 10, 2014, (Dkt. No. 71). Shortly thereafter, Plaintiffs sought leave to file a Second Amended Complaint, (Dkt. No. 73), but the Court denied this request, (Dkt. No. 82). The central issue in dispute for purposes of evaluating Plaintiffs' allegations is whether Plaintiffs are properly characterized as STE's employees or as independent contractors.

## C. The Parties' Cross-Motions for Partial Summary Judgment

On April 28, 2014, Plaintiffs filed a motion for partial summary judgment. (Dkt. No. 93.) The sole issue raised by this motion is Plaintiffs' argument that STE cannot, as a matter of law, satisfy its burden of establishing that the class members are independent contractors, as STE alleges in its Second Affirmative Defense. (Dkt. No. 93-1.) STE opposed this motion on June 16, 2014, (Dkt. No. 124), and Plaintiffs replied (pursuant to this Court's order) on July 16, (Dkt. No. 145). On August 8, 2014, Defendants filed a motion for summary judgment. (Dkt. No. 151.) Plaintiffs opposed this motion on September 8, 2014, (Dkt. No. 159), and Defendants replied on September 15, 2014, (Dkt. No. 165). The Court then heard oral argument on both motions on September 29, 2014.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | | Date | September 30, 2014 |
|---|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | | |

## III. EVIDENTIARY OBJECTIONS

Plaintiffs and Defendants both object to evidence offered by the other party in support of and in opposition to the Parties' cross-motions. (Dkt. Nos. 124-12, 139, 165-3.) Plaintiffs make numerous objections to declarations submitted by Defendants of the following witnesses: Kevin Baddeley, Juan Carlos Alvarez, Edward DeNike, Guy Sanderson, Joe Salinas, and Ana Berganza. Defendants object to various "undisputed facts" proposed by Plaintiffs on the basis that they mischaracterize or misstate the testimony. Defendants also object to evidence submitted by Plaintiffs in opposition to Defendants' motion on the basis that the evidence represents an improper expert opinion, is speculative or lacks foundation, is irrelevant, violates the Best Evidence Rule, is vague or ambiguous, or does not comply with Federal Rule of Civil Procedure 26(a)(2).

### A. Plaintiffs' Objections

Many of Plaintiffs' objections are "boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." *Doe v. Starbucks, Inc.*, No. 08–0582, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009). The Court will therefore aggregate Plaintiffs' numerous objections to the declarations into categories for expediency. Plaintiffs object to the declarants' testimony on the grounds that it: (1) lacks foundation, (2) is improper lay witness opinion testimony, (3) is irrelevant, (4) is conclusory, (5) violates the Best Evidence Rule, (6) constitutes hearsay, and (7) contradicts the declarant's deposition testimony.

#### 1. Foundation

First, Plaintiffs object to numerous statements made by these declarants on the grounds that they lack foundation. These statements primarily concern the shipping industry as a whole, as well as STE's business and its interactions with its drivers. Federal Rule of Evidence 602 requires that a witness have personal knowledge as to any testimony he or she gives. Fed. R. Evid. 602. The declarants whose testimony Plaintiffs object to are all employees or executives of STE. As such, each of them has personal knowledge of both the shipping industry and STE's individual business. The majority of Plaintiffs' objections on this basis to their testimony (including Plaintiffs' objections to the entirety of each declaration) are therefore **OVERRULED**.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | | Date | September 30, 2014 |
|----------|------------------------|--|------|--------------------|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | | |

There are some instances, however, in which the declarants speculate as to the reasons behind the decisions of certain drivers, or when they interpret the requirements of certain federal regulations. While the Court agrees with Plaintiffs that such speculative testimony lacks foundation, the Court does not consider this testimony in making its determination. These objections are therefore **OVERRULED** as moot.

## 2. Improper Lay Witness Testimony

Second, Plaintiffs object to certain testimony as improper lay witness testimony. Rule 701 requires that non-expert witnesses restrict their testimony to opinions that are rationally based on their perception, helpful to understanding their testimony or to determining a fact at issue, and not based on specialized knowledge. Fed. R. Evid. 701.

Here, the majority of the declarants' testimony concerns their own perceptions of STE's operations and of the shipping industry, which does not violate Rule 701. To the extent that these declarants provide testimony that goes beyond the scope of Rule 701— for instance, their testimony regarding what federal laws require of STE—the Court does not consider such testimony in making its determination. Plaintiffs' objections on this basis are therefore **OVERRULED** as moot.

## 3. Relevance

Third, Plaintiffs' relevance objections are baseless, as all of the testimony provided by STE concerns (at least in part) STE's relationship with its Drivers or how and why STE conducts its business in the way that it does. This testimony is relevant to whether STE has properly characterized its Drivers as independent contractors. Moreover, relevance is a very low threshold to overcome in determining the admissibility of evidence. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993) ("[Rule 402]'s basic standard of relevance . . . is a liberal one."). Plaintiffs' objections based on relevance are therefore **OVERRULED**.

## 4. Conclusory Statements

Fourth, Plaintiffs object to statements made by the declarants that they characterize as "conclusory." "Conclusory statements without factual support are insufficient to

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

defeat a motion for summary judgment." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008); *accord Robinson v. City of San Diego*, 954 F. Supp. 2d 1010, 1015 (S.D. Cal. 2013) ("[U]nsupported conjecture or conclusory statements are insufficient to defeat summary judgment."). The Court agrees with Plaintiffs that the declarants' testimony at times makes reference to legal terms such as "employ" or "independent contractor," and that their legal conclusions regarding such terms should not be assigned any weight. Because the Court does not consider such statements in making its decision, however, Plaintiffs' objections on this basis are moot and therefore **OVERRULED**.

### 5. Best Evidence Rule

Fifth, Plaintiffs object to various statements on the basis that they violate the Best Evidence Rule, which requires a party to provide the original document when it is being offered to prove the content of the document. Fed. R. Evid. 1002. Primarily, the declarants' statements to which Plaintiffs object on this ground concern the requirements of certain federal regulations. While this is not the appropriate ground on which to object to the declarants' interpretations of federal regulations, the Court does not consider such testimony in making its decision. These objections are thus **OVERRULED** as moot.

Plaintiffs also object that the Best Evidence Rule should preclude testimony by the declarants regarding the contents of agreements and forms that were provided by STE and executed by the Drivers. Plaintiffs properly argue that these documents should speak for themselves. Plaintiffs' objections as to the contents of documents such as the transportation agreements and the workers' compensation waiver forms are therefore **SUSTAINED**.

### 6. Hearsay

Next, Plaintiffs object to various statements as hearsay. Some of these statements concern the declarants' interpretations of federal regulations. Again, the Court does not consider these statements, and these objections are therefore **OVERRULED** as moot. Plaintiffs' other hearsay objections principally concern the declarants' personal knowledge of STE's internal disciplinary system. These statements are not hearsay, and Plaintiffs' hearsay objections to these statements are thus **OVERRULED**.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | | Date | September 30, 2014 |
|---|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | | |

In some instances, however, Plaintiffs' hearsay objections are well-taken. For instance, Mr. Alvarez states in his declaration that Drivers participating in the lease program have contacted him to tell him that they like the program's flexibility. He also asserts that everyone involved with the management of STE with whom Mr. Alvarez has spoken agrees with him that the Drivers are independent contractors rather than employees. Similarly, Mr. DeNike states in his declaration that he has "been advised" that STE's policy is adhered to in practice. And both Mr. Sanderson and Mr. Salinas make several references to statements made to or questions asked of them by Drivers relating to their employment. To the extent that these statements are being offered to prove the truth of the communications described, they are inadmissible hearsay. Plaintiffs' objections to these statements are thus **SUSTAINED**.

### 7. Contradiction of Deposition Testimony

Finally, Plaintiffs object on the basis that certain declarants contradict their deposition testimony in their declarations. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

First, Plaintiffs object to Mr. Baddeley's statement that Drivers are not required to appear at any particular time. (Dkt. No. 139 at 9.) Mr. Baddeley stated in his deposition that Drivers have to arrive within a given timeframe in order to lease a truck overnight. Mr. Baddeley's declaration does not contradict that testimony, as his statement refers to the fact that Drivers who wish to lease a truck may do so during given timeframes. Plaintiffs' objection takes one sentence out of context. Accordingly, this objection is **OVERRULED**.

Second, Plaintiffs object to Mr. Alvarez's statement that STE's "[safety] meetings are not mandatory, are infrequent, and drivers suffer no repercussions if they do not attend." (Dkt. No. 139 at 22.) Mr. Alvarez stated in his deposition that the Drivers attended a safety meeting that occurred on January 8, 2011. Mr. Alvarez's later testimony in his declaration does not contradict that assertion. In his declaration, Mr. Alvarez is clearly referring to safety meetings in general, over the course of several years, whereas his deposition testimony is limited to one meeting in January 2011. Plaintiffs' objection is therefore **OVERRULED**.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

Third, Plaintiffs object to Mr. Alvarez's assertion that STE "does not reprimand drivers for safety issues, such as only offering a driver day loads versus night loads." (Dkt. No. 139 at 23.)  Plaintiffs argue that this contradicts the fliers that he admitted during his deposition to distributing to the Drivers.  Indeed, the fliers, which are lodged as Exhibit 18 to Mr. Alvarez's deposition, state: "After multiple warnings and notices about pre-trip inspections & damaged chassis, it seems we are still having issues daily. . . .  If the chassis is painted with white/neon green paint, you will be moved to days for bringing unsafe chassis' to the yard." (Dkt. No. 95-4 at 77.)  Mr. Alvarez's statement that STE does not reprimand its drivers for safety issues by threatening to restrict Drivers to day loads appears contradictory to his earlier admission that he distributed the fliers to the Drivers.  Thus, to the extent that Mr. Alvarez's statement contradicts his earlier testimony, Plaintiffs' objection to this statement is **SUSTAINED**.

## B. Defendants' Objections

Defendants raise objections to evidence submitted by Plaintiffs both in support of Plaintiffs' motion for partial summary judgment and in opposition to Defendants' motion for summary judgment.  (Dkt. Nos. 124-12, 165-3.)

### 1. Defendants' Objections to Plaintiffs' Evidence Submitted in Support of Plaintiffs' Motion for Partial Summary Judgment

In opposition to Plaintiffs' motion for partial summary judgment, Defendants object to numerous statements contained in Plaintiffs' separate statement of facts.  (Dkt. No. 124-12.)  The sole ground for STE's objections is that these statements either mischaracterize or misstate testimony.  To the extent that Plaintiffs' briefs or separate statement (as to either of the cross-motions) summarize or describe witness testimony, the Court does not rely on these characterizations in making its decision.[1]  STE's objections are therefore **OVERRULED** as moot.

---

[1] The Court notes, however, that Defendants have failed to provide the Court with much of the testimony to which they refer.  For instance, in their objections, Defendants cite to excerpts of the depositions of Messrs. Alvarez, Baddeley, and Sanderson, as well as of Ms. Berganza, that have not been lodged with the Court either by Plaintiffs or by Defendants.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092 BRO (PLAx)** | Date | September 30, 2014 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL.** | | |

## 2. Defendants' Objections to Plaintiffs' Evidence Submitted in Opposition to Defendants' Motion for Summary Judgment

In support of their own motion for summary judgment, Defendants object to evidence submitted by Plaintiffs that Defendants argue (1) represents an improper expert opinion, (2) does not comply with Federal Rule of Civil Procedure 26(a)(2), (3) is speculative or lacks foundation, (4) is irrelevant, (5) is vague or ambiguous, or (6) violates the Best Evidence Rule. (*See* Dkt. No. 165-3.)

First, Defendants argue that several of the statements made by various witnesses and offered by Plaintiffs represent improper expert opinion testimony regarding the employment status of the Drivers, the issue of deductions and damages, or the economic strength of STE. Because the Court does not rely on the declarants' opinions of such matters, Defendants' objections are **OVERRULED** as moot.

Second, Defendants object to the declaration of Plaintiffs' expert witness, Karl Schulze. Specifically, Defendants argue that the declaration fails to comply with Federal Rule of Civil Procedure 26(a)(2) because it has failed to identify Mr. Schulze's authored publications over the past ten years, a list of cases in which he has testified, and a statement of compensation specifying the amount he is to be paid for his services, as required by Federal Rule of Civil Procedure 26(a)(2)(iv)–(vi).[2] Indeed, although Mr. Schulze's declaration states that he attached as Exhibit A his curriculum vitae detailing his qualifications, no such exhibit was attached. Nevertheless, in response to an order to show cause issued by the Court, Plaintiffs have provided the Court with the necessary information regarding Mr. Schulze's expert retention and qualifications. (Dkt. No. 175.) Moreover, the Court finds Plaintiffs' earlier omission to be substantially justified owing to the short amount of time allotted to Plaintiffs to retain a rebuttal expert before their opposition to Defendants' motion was due. Accordingly, Defendants' objection on this basis is **OVERRULED**, and the Court's order to show cause is hereby **DISCHARGED**.

---

[2] There is an exception to this written report requirement for "individuals who are employed by a party and whose duties do not regularly involve giving expert testimony." *Torres v. City of L.A.*, 548 F.3d 1197, 1214 (9th Cir. 2008). Mr. Schulze, however, is not employed by a party to this action and thus does not fall under this exception. Rather, Mr. Schulze has been "retained or specially employed to provide expert testimony in the case."

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | | Date | September 30, 2014 |
|---|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | | |

Third, Defendants argue that certain statements lack foundation and/or call for speculation.  These include statements made by Mr. Brown in his deposition, Mr. DeNike in his deposition, Mr. Karl Schulze in his declaration, and Plaintiffs' counsel, Mr. Joe Sayas, in his declaration.  To begin, the Court does not rely on the statement of Mr. Brown or the statements of Mr. Sayas.  As a result, Defendants' objections to these statements are **OVERRULED** as moot.  Next, in Mr. DeNike's deposition, he testified as to "meetings among corporate officers of STE" and that "We haven't felt it was necessary to have official board meetings or recordkeeping for STE."  Defendants objected on the basis that Mr. DeNike is only an executive officer and not a board member, and thus that he lacks foundation to discuss such matters.  But Mr. DeNike's statements do not pertain solely to board meetings; rather, they refer to "meetings *among corporate officers* of STE," and he is clearly a corporate officer.  Moreover, as a corporate officer, Mr. DeNike very likely had personal knowledge about STE's recordkeeping practices.  Defendants' objection to this statement is therefore **OVERRULED**.  As for Mr. Schulze's declaration, Defendants object to his opinion that STE is undercapitalized on the bases that the documents he evaluated include information that Defendants believe he failed to consider, that the documents do not provide insight into liquidation value or depreciation, and that he failed to include the documents in his list of reviewed documents.  The Court does not rely on STE's capitalization in reaching its decision, however, so Defendants' objections on this basis are **OVERRULED** as moot at this stage.

Next, to the extent that testimony is either irrelevant or vague and ambiguous, the Court does not rely on such statements.  These objections by Defendants are therefore **OVERRULED** as moot.  And finally, Defendants object to Mr. Sayas's characterization in his declaration of the deposition testimony of SSA Marine's officers on the basis that the deposition transcripts are the best evidence.  The Court agrees.  Defendants' objection is therefore **SUSTAINED** under Federal Rule of Evidence 1002.

## IV.   LEGAL STANDARD

Summary judgment is appropriate when, after adequate discovery, the evidence demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A disputed fact is material where its resolution might affect the outcome of the suit under the governing law.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | | Date | September 30, 2014 |
|----------|------------------------|---|------|--------------------|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | | |

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Id.* The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party may satisfy that burden by showing "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

Once the moving party has met its burden, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 587. Only genuine disputes over facts that might affect the outcome of the lawsuit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (holding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor). A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

A court may consider the pleadings, discovery, and disclosure materials, as well as any affidavits on file. Fed. R. Civ. P. 56(c)(2). Where the moving party's version of events differs from the non-moving party's version, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Although a court may rely on materials in the record that neither party cited, it need only consider cited materials. Fed. R. Civ. P. 56(c)(3). Therefore, a court may properly rely on the non-moving party to identify specifically the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

"[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty. Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001). A court may not assume that because each side

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | | Date | September 30, 2014 |
|---|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | | |

moves for summary judgment there are no disputed issues of material fact; it must make that determination by reviewing the parties' arguments. *United States v. Fred A. Arnold Inc.*, 573 F.2d 605, 606 (9th Cir. 1978).

Finally, the evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

## V.    FAAAA PREEMPTION

As a threshold matter, Defendants argue that Plaintiffs' claims under the California Labor Code are preempted by the FAAAA. They acknowledge, however, that the Ninth Circuit recently rejected this argument in *Dilts v. Penske Logistics, LLC*, 12-55705, 2014 WL 4401243 (9th Cir. Sept. 8, 2014). In *Dilts*, the Ninth Circuit engaged in a thorough discussion of the FAAAA in finding that laws related to California's meal and rest-break laws are not preempted:

> In light of the FAAAA preemption principles outlined above, California's meal and rest break laws plainly are not the sorts of laws "related to" prices, routes, or services that Congress intended to preempt. They do not set prices, mandate or prohibit certain routes, or tell motor carriers what services they may or may not provide, either directly or indirectly. They are "broad law[s] applying to hundreds of different industries" with no other "forbidden connection with prices[, routes,] and services." They are normal background rules for almost all employers doing business in the state of California. And while motor carriers may have to take into account the meal and rest break requirements when allocating resources and scheduling routes—just as they must take into account state wage laws, or speed limits and weight restrictions—the laws do not "bind" motor carriers to specific prices, routes, or services. Nor do they "freeze into place" prices, routes, or services or

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | | Date | September 30, 2014 |
|---|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | | |

"determin[e] (to a significant degree) the [prices, routes, or] services that motor carriers will provide."

*Id.* at *7 (alteration in original) (quoting *Air Transp. Ass'n of Am. v. City & Cnty. of S.F.*, 266 F.3d 1064, 1072 (9th Cir. 2001); *Am. Trucking Ass'ns, Inc. v. City of L.A.*, 660 F.3d 384, 397 (9th Cir. 2011); *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 372 (2008)).[3]

In light of *Dilts*, the Court finds that Plaintiffs' claims alleged in their First Amended Complaint are not sufficiently "related to" prices, routes, or services to be preempted by the FAAAA. Accordingly, the Court **DENIES** Defendants' motion for summary judgment on this basis.

## VI. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Next, the Court will discuss Plaintiffs' motion for partial summary judgment. (Dkt. No. 93.) The sole issue in Plaintiffs' motion is whether, as a matter of law, the Drivers should be considered employees, and not independent contractors. At the outset, the Court notes that, while this is typically a factual inquiry that should not be determined on summary judgment, *see, e.g.*, *Global Hawk Ins. Co. v. Le*, 225 Cal. App. 4th 593, 603 (Cal. Ct. App. 2014) ("Whether one is an employee or independent contractor is usually a question of fact."), "if only one inference may be drawn from all the facts, the question is one of law," *Torres v. Reardon*, 3 Cal. App. 4th 831, 838 (Cal. Ct. App. 1992). The Court also recognizes both that the transportation agreements that the Drivers signed state that the Drivers are independent contractors, and that the Drivers also appear to have signed forms acknowledging that they were independent contractors. Nevertheless, "[t]hat the Drivers here had contracts 'expressly acknowledging that they were independent contractors' is simply not dispositive under California's test of employment." *Narayan v. EGL, Inc.*, 616 F.3d 895, 903 (9th Cir. 2010); *Dalton v. Lee Publ'ns, Inc.*, 08CV1072 BTM NLS, 2011 WL 1045107, at *3 (S.D. Cal. Mar. 22, 2011); *accord Alexander v. FedEx Ground Package Sys., Inc.*, 12-17458, 2014 WL 4211107, at *16 (9th Cir. Aug. 27, 2014) (Trott, J., concurring) ("Bottom line? Labeling the drivers

---

[3] The California Supreme Court also recently concluded that the FAAAA does not preempt claims brought under the UCL. *See People ex rel. Harris v. Pac Anchor Transp., Inc.*, 59 Cal. 4th 772, 787 (Cal. 2014).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

'independent contractors' in FedEx's Operating Agreement does not conclusively make them so when viewed in the light of (1) the entire agreement, (2) the rest of the relevant 'common policies and procedures' evidence, and (3) California law.").

For causes of action arising under California Labor Code section 1194, California courts apply the definitions established in the California Industrial Welfare Commission's ("IWC") regulations—known as "wage orders"—in determining whether an employment relationship exists. *See Martinez v. Combs*, 49 Cal. 4th 35, 52 (Cal. 2010).[4] Under this definition, employment means: "(1) to exercise control over wages, hours or working conditions, (2) to suffer or permit to work, or (3) to engage, thereby creating a common law employment relationship." *Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.*, 2:11-CV-8557-CAS, 2014 WL 183956, at *15 (C.D. Cal. Jan. 14, 2014) (quoting *Martinez*, 49 Cal. 4th at 64) (internal quotation marks omitted). A plaintiff may establish an employment relationship through any one of these three definitions.

The California Supreme Court, however, recently declined to decide "what application, if any, the wage order tests for employee status might have to wage and hour claims." *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531 (Cal. 2014). Finding that the case could be decided solely on the basis of the common law employment test, the court did not apply the other *Martinez* tests. *Id.* As in *Ayala*, the Court need not consider the applicability of *Martinez* because Plaintiffs have carried their burden of establishing an employment relationship through California's common law test. *See Martinez*, 49 Cal. 4th at 64 (stating that the IWC's definition of employment "incorporates the common law definition as one alternative").

---

[4] Although this case involves causes of action under other sections of the California Labor Code in addition to section 1194, California courts have applied the *Martinez* definition of employment to causes of action arising under other sections as well. *See, e.g., Futrell v. Payday Cal., Inc.*, 190 Cal. App. 4th 1419, 1430 (Cal. Ct. App. 2010) ("To answer the question whether Payday acted as Futrell's employer for purposes of [sections 203, 226, 510, and 1194 of the California Labor Code], we see no reason to apply any other definition than the *Martinez* definition . . . ."); *see also Taylor v. Waddell & Reed Inc.*, 09-CV-02909 AJB WVG, 2013 WL 435907, at *3 (S.D. Cal. Feb. 1, 2013) (applying the *Martinez* definition of "employment" to causes of action brought under Cal. Lab. Code §§ 201, 202, 203, 204, 218.5, 218.6, 226, 226.7, 2698 *et seq.*, 510, 1182.12, 1194, 1194.2, 1197; Cal. Bus. & Prof. Code § 17200 *et seq.*; and Wage Order Nos. 4–2001 §§ 3(A), 4(A)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

### A. Plaintiffs Have Established a Prima Facie Case of Employment

Before considering the common law test for employment, the Court must acknowledge a special circumstance applicable to this analysis under California law.  In California, "once a plaintiff comes forward with evidence that he provided services for an employer, the employee has established a prima facie case that the relationship was one of employer/employee." *Narayan*, 616 F.3d at 900; *accord Robinson v. George*, 16 Cal. 2d 238, 242 (Cal. 1940) ("The rule . . . is that the fact that one is performing work and labor for another is prima facie evidence of employment and such person is presumed to be a servant in the absence of evidence to the contrary.").  Thus, at trial, if Plaintiffs can establish a prima facie case of employment, the burden would shift to Defendants, who must then establish that the Drivers were independent contractors.  *Narayan*, 616 F.3d at 900; *Alexander*, 2014 WL 4211107, at *9 ("California courts have recognized that 'the burden of proof is on the party attacking the employment relationship . . . .'" (quoting *Bemis v. People*, 109 Cal. App. 2d 253, 263–64 (Cal. Ct. App. 1952))).

Clearly, the drivers here have provided services for STE by hauling loads for STE from ports to various storage facilities in Southern California and in Oakland.  Plaintiffs have therefore established a prima facie showing of employment.  Nevertheless, as the moving party, Plaintiffs maintain the burden of establishing that there is no disputed issue of material fact as to whether, at trial, STE could demonstrate that the Drivers are independent contractors rather than employees.

### B. California's Common Law Test for Employment

California's common law test for determining a worker's employment status was set forth in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341 (Cal. 1989).  Under *Borello*, the "principal test of an employment relationship" is "[w]hether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired."  *Id.* at 350; *accord Tieberg v. Unemployment Ins. Appeals Bd.*, 2 Cal. 3d 943, 950 (Cal. 1970) ("The right to control the means by which the work is accomplished is clearly the most significant test of the employment relationship and the other matters enumerated constitute merely 'secondary elements.'").

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

While control is paramount in the *Borello* analysis, the court also recognized several other "secondary indicia" of employment that may also be considered. *Borello*, 48 Cal. 3d at 350. The court noted, for instance, that "strong evidence in support of an employment relationship is the right to discharge at will, without cause." *Id.* at 350 (internal modification omitted). There are also other "[a]dditional factors," including:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Id.* at 351. These factors are not to be applied "mechanically as separate tests"; rather, "they are intertwined and their weight depends often on particular combinations." *Id.* Moreover, "[e]ven if one or two of the individual factors might suggest an [independent contractor] relationship, summary judgment is nevertheless proper when . . . all the factors weighed and considered as a whole establish . . . an [employment] and not an [independent contractor relationship.]" *Alexander*, 2014 WL 4211107, at *5 (alterations in original) (quoting *Arnold v. Mut. of Omaha Ins. Co.*, 202 Cal. App. 4th 580, 590 (Cal. Ct. App. 2011)).

### C. Plaintiffs Have Established that the Drivers Were Employees Under the *Borello* Common Law Analysis

Both Parties go to great lengths to argue many of the factors described in *Borello*. Although STE takes issue with Plaintiffs' characterization of many of the facts pertinent to this analysis, the Court finds that the undisputed facts in the record exhibit an employment relationship between STE and its Drivers.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

## 1. STE Exercises Significant Control over the Drivers

Under *Borello*, the degree of control exercised by STE over its Drivers is the principal inquiry for determining the Drivers' employment status. "Significantly, what matters under the common law is not how much control a hirer exercises, but how much control the hirer retains the *right* to exercise." *Ayala*, 59 Cal. 4th at 533; *accord Ruiz v. Affinity Logistics Corp.*, No. 12-56589, 754 F.3d 1093, 1102 (9th Cir. 2014) ("[W]hat matters [under *Borello*] only is whether Affinity had the right to control the drivers' work."). The Court will therefore focus its analysis on the amount of control that STE has retained the right to exercise over its Drivers. "Whether a right of control exists may be measured by asking 'whether or not, if instructions were given, they would have to be obeyed' on pain of at-will 'discharge for disobedience.'" *Ayala*, 59 Cal. 4th at 533 (quoting *Toyota Motor Sales U.S.A., Inc. v. Superior Court*, 220 Cal. App. 3d 864, 875 (Cal. Ct. App. 1990)).

### a. The Right to Discharge

To begin, "[p]erhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because '[t]he power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities.'" *Ayala*, 59 Cal. 4th at 531 (second modification in original) (quoting *Malloy v. Fong*, 37 Cal. 2d 356, 370 (Cal. 1951)). Here, the Parties dispute whether STE retains this right to terminate the Drivers without cause. Plaintiffs argue that the operative agreements provide no restrictions on STE's ability to terminate the Drivers, rendering the company able to fire the Drivers at will. In response, STE contends that (1) in practice, Drivers are not terminated unless they materially breach their obligations, and (2) the agreements' fixed duration and notice requirements support a finding of independent contractor status.

In support of its first argument, STE provides declarations by its employees giving their understanding of the transportation agreements. (*See, e.g.*, Dkt. No. 124-2 at 3 ("These Agreements are each for a fixed duration and can only be terminated for a material breach.").) But it is the *right* to terminate at will—and not the practice of doing so—that creates an employment relationship. *See Ayala*, 59 Cal. 4th at 533. And the employees' interpretations of the transportation agreements are not admissible as

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | | Date | September 30, 2014 |
|---|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | | |

evidence for what the agreements actually state. Fed. R. Evid. 1002. Instead, the Court will rely on the express language of the agreements, which states:

> 8.1. . . . This Agreement shall be automatically renewed for succeeding terms of ninety (90) days each unless, at least thirty (30) calendar days before expiration of any term, either party shall give written notice to the other of its intention not to renew this Agreement. *Nothing in this Agreement shall be interpreted as requiring either party to renew or extend this Agreement.*

> 8.2. If either party defaults on the performance of this Agreement or breaches any of its provisions, the other party may terminate this agreement immediately by giving written notification.

(Dkt. No. 125-1 at 23 (emphasis added).) Clearly, STE retains the right under these provisions to terminate a Driver immediately if he or she breaches any provisions of the transportation agreement. But STE also retains the right not to renew or extend the agreement without needing any justification for doing so. Thus, STE effectively retains the right to terminate any Driver's agreement without cause provided it gives the Driver thirty days' notice.

STE's second argument relies on two cases for the proposition that the agreements support a finding of independent contractor status. The first case, *Arnold v. Mutual of Omaha Insurance Co.*, 202 Cal. App. 4th 580, 589 (Cal. Ct. App. 2011), stands for the general proposition that "a termination at-will clause for both parties may properly be included in an independent contractor agreement, and is not by itself a basis for changing that relationship to one of an employee." While this is true, the presence of such a clause remains persuasive evidence of control. *See Alexander*, 2014 WL 4211107, at *12. The second case, *Fleming v. Foothill-Montrose Ledger*, 71 Cal. App. 3d 681, 687 (Cal. Ct. App. 1977), speaks more directly to the facts at issue here. In *Fleming*, the court found an employer's right of discharge to be "sufficiently limited" to preclude a finding of an employment relationship where the contract between the parties provided for two weeks' notice prior to dismissal by either side, stating: "So long as the right of discharge cannot be invoked capriciously, as here where it can only be invoked if the newscarrier's services are 'unsatisfactory,' it is not conclusive evidence negating independence of the

| Case No. | **CV 13-02092 BRO (PLAx)** | Date | September 30, 2014 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL.** | | |

person performing work for another." *Id.* (internal modifications omitted). While the court in *Fleming* indicated that the notice period limited the employer's right of discharge, it also conditioned its holding on the finding that discharge could not be invoked capriciously, noting that the contract at issue required the employer to find the worker's services to be "unsatisfactory." Here, there is no such limitation on STE's right not to renew the Drivers' contracts; rather, STE may decide not to renew the contract for any reason or for no reason at all.

Moreover, other cases involving contracts with required notice periods for discharge rights have clarified the impact of this limitation. In *Narayan v. EGL, Inc.*, 616 F.3d 895, 902–03 (9th Cir. 2010), for instance, the Ninth Circuit addressed contracts between a transportation company and its truck drivers that are very similar to the ones at issue here. In doing so, the court stated: "Significantly, the contracts signed by the plaintiff Drivers contained automatic renewal clauses and could be terminated by either party upon thirty-days notice or upon breach of the agreement. *Such an agreement is a substantial indicator of an at-will employment relationship.*" *Id.* (emphasis added). A number of other cases have come to similar conclusions. *See, e.g.*, *Dalton v. Lee Publ'ns, Inc.*, 08CV1072 BTM NLS, 2011 WL 1045107, at *3 (S.D. Cal. Mar. 22, 2011) (noting that "evidence of an employment relationship can be found in Defendant's ability to terminate distributors without cause with thirty days notice or with cause if subscriber complaints about delivery service exceed 1.5 complaints per one thousand newspapers delivered"); *Antelope Valley Press v. Poizner*, 162 Cal. App. 4th 839, 854 (Cal. Ct. App. 2008) (stating that termination with a thirty-day notice requirement "clearly" gives the employer the right to discharge at will without cause); *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 6, 11 (Cal. Ct. App. 2007) (finding an agreement providing for termination with thirty days' notice to constitute evidence of at-will employment); *Gonzalez v. Workers' Comp. Appeals Bd.*, 46 Cal. App. 4th 1584, 1593 (Cal. Ct. App. 1996) (holding that a contract with a two-week notice termination provision constituted at-will employment where the contract provided no consequences for employers' failure to give notice).

As in these cases, the transportation agreements at issue here provided that STE could terminate (or refuse to renew) a Driver's contract either with thirty days' notice without cause or immediately with cause. And as in these cases, the Court finds that this

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

power evidences a right to control that is "a substantial indicator of an at-will employment relationship." *Narayan*, 616 F.3d at 902–03.

### b. Other Indicia of Control

In addition to the right to discharge, other important indicia of control include any factors that demonstrate whether STE had the "right to control the manner and means of accomplishing the result desired." *Borello*, 48 Cal. 3d at 350. Defendants argue that STE did not have the right to control the manner and means of the Drivers' job for several reasons, including: (1) the Drivers may choose which loads they wish to haul, they may reject loads, they may negotiate with STE for higher rates, and they may negotiate with customers either to increase rates or to obtain work for certain areas; (2) STE does not set schedules or require the Drivers to show up or work on any certain days; (3) STE does not have the right to control or monitor how the Drivers perform their jobs; (4) STE does not actively monitor the Drivers aside from occasional safety checks to ensure that the Drivers are driving under the speed limit or to inquire as to why a customer has not received a load; and (5) to the extent that STE does control the Drivers, that control is mandated by federal law.[5] (Dkt. No. 124 at 19–21.) Each of these arguments, however, is contradicted by the undisputed facts of the record.

First, despite Defendants' contentions that the Drivers could choose which loads to accept and that they are involved in the process of determining rates, the evidence in the record directly refutes these propositions. For instance, STE's "OFF-ROUTE, CALL IN & SEALED LOADS" policy explicitly states that Drivers "need to contact [their] dispatcher daily, to see when and where [they] are needed." (Dkt. No. 95-5 at 53.) Thus, even if in practice Drivers are given leniency as to which loads they wish to haul, the policy expressly reserves the right to control when and where Drivers work on a daily basis, and it is the *right* to control that is relevant. *See Ayala*, 59 Cal. 4th at 533.

Similarly, in spite of Defendants' contention that the Drivers may negotiate either with STE or with customers to secure higher rates, this privilege is nowhere expressed in

---

[5] Defendants also rebut Plaintiffs' argument that STE reclassified "employee" Drivers to independent contractors in 2010. The Court finds this issue largely irrelevant in determining whether the Drivers are employees or independent contractors.

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|----------|------------------------|------|--------------------|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

the record.  Rather, Defendants simply state that to be the case in their opposition to Plaintiffs' motion.  (Dkt. No. 124 at 20.)  And as Plaintiffs point out, "unsupported conjecture or conclusory statements are insufficient to defeat summary judgment." *Robinson*, 954 F. Supp. 2d at 1015.  In fact, this contention seems to be not only conjecture, but also untrue.  Multiple STE employees testified during their depositions that the Drivers' rates are predetermined and not subject to change.  For example, STE's Southern California General Manager Kevin Baddeley stated in his deposition that their compensation structure for Drivers has "been the same for quite sometime [sic]."  (Dkt. No. 95-1 at 33.)  STE's Oakland General Manager, Guy Sanderson, also testified that the Drivers' rates rarely change, noting that the rates have been the same in almost every single instance since he started there: "Out of, say, a hundred different rates, different locations, there may have been three or four that have changed."  (Dkt. No. 95-3 at 27–29.)  Mr. Sanderson also testified that, aside from one time, he is not aware of any instances in which rates were increased in response to complaints by Drivers.  (Dkt. No. 95-3 at 31.)

Second, STE's argument that it does not set schedules or require the Drivers to show up or work on any certain days is likewise contradicted by the record.  STE's "OFF-ROUTE, CALL IN & SEALED LOADS" policy states not only that Drivers "need to contact [their] dispatcher daily, to see when and where [they] are needed," but also that they must "be there <u>on time</u> when required."  (Dkt. No. 95-5 at 53.)  While the transportation agreements reserve to the Drivers the right to refuse work, (Dkt. No. 125-1 at 19), the language of this policy appears to impose an affirmative duty to check in daily.  In fact, it states that, "If you are not able to make yourself available for work, contact dispatch and let them know, so they can make proper arrangements to cover whatever loads are available.  (Dkt. No. 95-5 at 53.)  The policy also makes clear that a Driver's failure to comply with the policy will result in termination of the Driver's contract with STE.  Specifically, it states: "The following policy is so important that should you fail to abide by it, your contract with *Shippers Transport Express* will be terminated immediately."  (Dkt. No. 95-5 at 53.)  It also states in all caps, "YOUR CONTRACT WILL BE TERMINATED FOR VIOLATING THIS POLICY."  (Dkt. No. 95-5 at 53.)  Similarly, STE leases its trucks to the Drivers, who must arrive during a certain timeframe in order to lease a truck.  (*See* Dkt. No. 95-1 at 29 ("Well, we stop issuing trucks at 5:30.  So they have to be there before 5:30.").)  Thus, Defendants' contention

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

that STE does not have schedules or require the Drivers to show up at specific times is belied by the record. And "[s]uch regular schedules are consistent with employee status and reflect employer control." *Alexander*, 2014 WL 4211107, at *10 (quoting *Air Couriers Int'l v. Emp't Dev. Dep't*, 150 Cal. App. 4th 923, 937 (Cal. Ct. App. 2007)).

Third, Defendants' claim that STE does not monitor how the Drivers perform their jobs—for example, by monitoring their routes—is similarly unsupported. The same "OFF-ROUTE, CALL IN & SEALED LOADS" policy provides that STE may terminate a Driver's contract (and even charge a Driver with a felony for stealing the company's vehicle) if the Driver, without STE's authorization, "take[s] a trailer off route," "deviate[s] from a known truck route," "take[s] a load, empty or chassis to [his or her] house (even if only for a minute)," or leaves it "outside a secured location." (Dkt. No. 95-5 at 53.) Regardless of whether Drivers have actually been terminated or charged with a felony for such actions is immaterial; STE has retained the right to do so.[6]

Fourth, Defendants maintain that STE does not actively monitor the Drivers aside from occasional safety checks to ensure that the Drivers are driving under the speed limit or to inquire as to why a customer has not received his or her load. Again, however, it is the *right* to control that STE has retained, and not the actual exercise of control, which drives this analysis. And Defendants do not dispute that STE has the capacity (which it sometimes exercises) to track the speed of the Drivers using GPS. (Dkt. No. 124-12 at 10–11.) STE also concedes that it has, on occasion, sent out employees to observe Drivers in order to ensure that they are driving safely or to follow up on a customer's complaint. (Dkt. No. 95-4 at 16–17.)

Finally, Defendants argue that, to the extent that STE does exercise control over the Drivers, it does so only to comply with Federal Motor Carrier Safety Regulations ("FMCSRs"). As a motor carrier involved in foreign or interstate commerce, STE is

---

[6] Moreover, whether STE closely monitored the Drivers' routes is not particularly important given "the simplicity of the work (take this package from point A to point B)[, which makes] detailed supervision, or control, unnecessary." *Air Couriers*, 150 Cal. App. 4th at 937; *accord Alexander*, 2014 WL 4211107, at *7 (rejecting defendant's argument that it did not control its drivers because it did not require them to follow certain routes, noting that "the right-to-control test does not require absolute control"). Rather, what is important is that STE "retained all necessary control over the overall delivery operation." *Id.*

| Case No. | **CV 13-02092 BRO (PLAx)** | | Date | September 30, 2014 |
|---|---|---|---|---|
| Title | **GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL.** | | | |

required to comply with federal regulations regarding safety measures and recordkeeping. *See* 49 C.F.R. §§ 390–396.  And as Defendants argue, observance of "mandatory lease provisions do[es] not transform an agreed upon independent contractor relationship between the carrier and truck owner/operator into an employee relationship under state law." *Amerigas Propane, LP v. Landstar Ranger, Inc.*, 184 Cal. App. 4th 981, 999 (Cal. Ct. App. 2010).  Nevertheless, many of the aforementioned control rights retained by STE over the Drivers are not mandated by federal law.  For example, Defendants have not suggested any federal regulations mandating that STE (1) require Drivers to contact dispatch on a daily basis, (2) install GPS devices in the trucks leased by the Drivers, or (3) prohibit qualified Drivers who are contracted with STE to ride with other Drivers. Thus, STE's case is distinguishable from those Defendants cite in their opposition where the employer exerted only the control necessary to comply with federal regulations.

After considering the undisputed facts in the record, the Court determines that the degree of control exercised by STE over the Drivers demonstrates that it has "retained all necessary control over the drivers' work." *Ruiz*, 754 F.3d at 1103; *accord id.* (citing *JKH Enters., Inc. v. Dep't of Indus. Relations*, 142 Cal. App. 4th 1046 (Cal. Ct. App. 2006), where the court found that "obtaining clients and providing workers" was "sufficient to establish right of control").  Because the "principal test of an employment relationship" is "[w]hether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired," *Borello*, 48 Cal. 3d at 350, Plaintiffs have satisfied their burden of establishing an employment relationship with STE.

## 2.  The "Secondary Indicia" Also Indicate the Existence of an Employment Relationship Between STE and the Drivers

Although the most important aspect of the *Borello* analysis is control, consideration of the "secondary indicia" from *Borello* does not support STE's position. Because these factors are "intertwined and their weight depends often on particular combinations," *Borello*, 48 Cal. 3d at 351, the Court finds it helpful to analogize to a factually similar case that applied these secondary *Borello* factors.

Despite Defendants' attempts to distinguish the case, the Court finds *Air Couriers International v. Employment Development Department*, 150 Cal. App. 4th 923 (Cal. Ct. App. 2007), to be instructive in applying these factors.  In *Air Couriers*, the California

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|----------|------------------------|------|---------------------|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

Court of Appeal upheld the trial court's determination that a courier business's drivers were employees rather than independent contractors as a matter of law. Applying the secondary *Borello* factors in great detail, the court rejected a number of the same arguments that have been raised by Defendants here. *Id.* at 938–39. For example, the court in *Air Couriers* concluded that the following established facts "point to a finding of employee status":

- some drivers had worked for the courier company for a number of years, which was "another factor inconsistent with independent contractor status";

- the drivers were performing an integral and entirely essential aspect of the courier company's business;

- the drivers were required to use the company's forms in order to be paid;

- the drivers were paid on a regular schedule;

- the courier company sent the drivers to each delivery, provided deadlines, and required them to notify the dispatchers when the delivery was completed;

- the courier company provided placards for the drivers' vehicles;

- the drivers delivered to the courier company's customers, rather than to their own customers; and

- the courier company set the rates that were charged to the customers, billed the customers, and collected the payment.

*Id.* As a result of these secondary factors—and in addition to finding that the company retained the right to control the drivers—the court upheld the lower court's decision. *Id.*

Each of these facts is similarly present in this case. For example, Defendants do not dispute PSUF No. 81, which asserts that some of the Drivers have been working

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

continuously for STE for over two years. (PSUF ¶ 81.) Similarly, Defendants do not and cannot reasonably dispute that the Drivers are performing an integral and entirely essential aspect of STE's business. *Cf. Alexander*, 2014 WL 4211107, at *14 ("The work that the drivers perform, the pickup and delivery of packages, is 'essential to FedEx's core business.'" (quoting *Estrada*, 154 Cal. App. 4th at 9)). Defendants also do not dispute that the Drivers must fill out their forms in order to receive payment (although they contend that STE uses these forms to comply with federal regulations). (PSUF ¶¶ 56–61.) And while Defendants argue that "[t]here is no guarantee of weekly payments to the Drivers," they also concede that STE regularly issues payment to Drivers once a week. (Dkt. No. 124 at 14.)

Next, it is undisputed that STE's dispatchers—and not the customers—assign the Drivers which loads to haul and where to deliver them. (PSUF ¶¶ 16–17.) Moreover, while the Drivers may lease their own trucks, it appears that the vast majority (if not all) of the Drivers use STE trucks bearing STE's labeling. (PSUF ¶ 24.) It is also undisputed that the customers to whom the Drivers deliver loads are exclusively STE's customers, and not those of the Drivers. (PSUF ¶ 18.) *Cf. Alexander*, 2014 WL 4211107, at *10 (considering to be evidence of an employment relationship the fact that "Drivers deliver packages to FedEx's customers, not to their own customers" and that "FedEx sets the rates charged to customers, bills the customers, and collects payment" (internal modifications omitted)). Finally, although Defendants point out that at least on one occasion a Driver's rate negotiations have resulted in an increase in the rate, (*see* Defs.' Response to PSUF ¶¶ 4–5), they cannot dispute Mr. Sanderson's deposition testimony that the Drivers' rates rarely change, nor that, aside from that one time, he is not aware of any instances in which rates were increased in response to complaints by Drivers. (Dkt. No. 95-3 at 27–29.)

While there are undoubtedly some factual discrepancies between *Air Couriers* and the case at bar, the Court nonetheless finds that the secondary indicia from *Borello* militate in favor of finding an employment relationship to exist between STE and the Drivers.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

## VII. SSA MARINE AS A CO-EMPLOYER

In their First Amended Complaint, Plaintiffs seek to hold SSA Marine liable as either a single or a joint employer of the Drivers. (FAC ¶¶ 6–7.) In general, "[a]n employee who seeks to hold a parent corporation liable for the acts or omissions of its subsidiary on the theory that the two corporate entities constitute a single employer has a heavy burden to meet under both California and federal law. Corporate entities are presumed to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result." *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737 (Cal. Ct. App. 1998), *overruled on other grounds by Reid v. Google*, 50 Cal. 4th 512 (Cal. 2010). In their motion for summary judgment, Defendants argue that, as a matter of law, SSA Marine cannot qualify as a joint employer. For the following reasons, the Court finds that there is a genuine issue of material fact and **DENIES** Defendants' motion.

### A. The Court Applies the Integrated Enterprise Test

Both parties contend that the Court should apply the "integrated enterprise" test in determining whether SSA Marine may be liable as a joint employer. Indeed, "California courts as well as federal courts in the Ninth Circuit have applied the 'integrated enterprise' test to claims arising from alleged violations of the California Labor Code." *Trosper v. Stryker Corp.*, 13-CV-0607-LHK, 2014 WL 1619052, at *3 (N.D. Cal. Apr. 22, 2014); *accord Huse v. Auburn Honda*, No. 04–0227, 2005 WL 1398521, at *3 (E.D. Cal. June 10, 2005) (applying integrated enterprise test to determine whether a defendant was an employer within the meaning of the California Labor Code); *Serrano v. 180 Connect, Inc.*, No. 06–1363, 2006 WL 2348888, at *2 (N.D. Cal. Aug. 11, 2006) (same), *rev'd on other grounds*, 478 F.3d 1018 (9th Cir. 2007). "Courts have also applied the integrated enterprise test in the context of addressing UCL claims predicated upon California Labor Code violations." *Trosper*, 2014 WL 1619052, at *3; *accord Maddock v. KB Homes, Inc.*, 631 F. Supp. 2d 1226, 1238 (C.D. Cal. 2007). The Court thus agrees with the parties that the "integrated enterprise" test is applicable in this situation.[7]

---

[7] The other two tests that courts have applied in this context are the alter ego test and the California common law test. Each of these tests, however, requires analysis of similar factors to those considered

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

**B. Defendants Cannot Establish as a Matter of Law that SSA Marine Is Not a Joint Employer Under the Integrated Enterprise Test**

Under the integrated enterprise test, the Court must consider four factors to determine whether SSA Marine should be considered a joint or single employer for purposes of liability: (1) interrelation of operations; (2) common management; (3) common control of labor relations; and (4) common ownership or financial control. *See Laird*, 68 Cal. App. 4th at 737. "The first three factors carry the most weight and particularly significant is the common control of labor." *L.A. Marine Hardware Co., Div. of Mission Marine Assocs. v. N.L.R.B.*, 602 F.2d 1302, 1305 (9th Cir. 1979); *accord J.M. Tanaka Constr., Inc. v. N.L.R.B.*, 675 F.2d 1029, 1034 (9th Cir. 1982) ("The most important single factor is centralized control of labor relations."). Nevertheless, "[n]o factor is controlling and all need not be present." *J.M. Tanaka*, 675 F.2d at 1033. The Court will therefore consider each of these factors in determining whether SSA Marine may be considered a joint employer for purposes of liability.

**1. Interrelation of Operations**

The first factor considers whether the two corporate entities share interrelation of operations. "To make a sufficient showing of 'interrelation of operations' on summary judgment, the plaintiff must do more than merely show that officers of the subsidiary report to the parent corporation or that the parent benefits from the subsidiary's work." *Laird*, 68 Cal. App. 4th at 738. Rather, the plaintiff must demonstrate that "the parent has exercised control 'to a degree that exceeds the control normally exercised by a parent corporation.'" *Id.* (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993));[8] *Trosper*, 2014 WL 1619052, at *7 (quoting *Laird*, 68 Cal. App. 4th at 738). To

---

by the integrated enterprise test and would undoubtedly compel the same result. *See Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838–40 (Cal. Ct. App. 1962) (identifying the many factors to be considered in the alter ego test); *Futrell v. Payday Cal., Inc.*, 190 Cal. App. 4th 1419, 1429 (Cal. Ct. App. 2010) (discussing the common law factors). The Court thus does not deem it necessary to discuss these theories at length.

[8] At oral argument, counsel for Defendants argued that the language from *Frank* is dispositive on this issue. In *Frank*, the Tenth Circuit rejected the plaintiffs' argument that a parent company was a joint employer with its subsidiary merely because "the chain of command over Plaintiffs . . . crossed subsidiary lines and led ultimately to [the parent company's] president." 3 F.3d at 1362. Here, by

LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

do so, the plaintiff may submit evidence demonstrating interrelated operations, such as "combined accounting records, bank accounts, lines of credit, payroll preparation, telephone lines, or offices, and interchange of employees." *Van Norman v. Harman Mgmt. Corp.*, C93-2880 MHP, 1995 WL 803508, at *4 (N.D. Cal. July 6, 1995); *accord E.E.O.C. v. Con-Way, Inc.*, CV 06-1337-MO, 2007 WL 2610367, at *3 (D. Or. Sept. 4, 2007) ("Evidence of interrelated operations can include common offices, long distance shipping, bank accounts, payroll preparation, and shared facilities." (citing *NLRB v. Transcon. Theaters Inc.*, 568 F.2d 125, 129–30 (9th Cir. 1978))).

Defendants argue that SSA Marine and STE are not interrelated because the companies occupy distinct roles in the industry and are separate corporate entities. Specifically, Defendants argue that while SSA Marine operates terminals and provides stevedoring services through its own subsidiaries, STE provides trucking and storage services directly to consignees, including other port terminals and storage yards. Defendants also claim that the companies "are each independently incorporated (in different states), do not own equity in one another, engage in separate advertising, maintain different websites, have separate and distinct physical locations, implement their own policies and procedures, and engage in arm's length transactions when contracting for each other's services." (Dkt. No. 151-1 at 20 (citing DSUF ¶¶ 13–15, 18).)

In opposition, however, Plaintiffs dispute Defendants' characterization of this autonomy between the companies, arguing instead that SSA Marine employees handle all

---

contrast, Plaintiffs are not asserting simply that STE is ultimately accountable to SSA Marine; rather, Plaintiffs argue that SSA Marine manages many of STE's key operations, making the two companies' operations highly interrelated. In fact, the court in *Frank* specifically noted that the plaintiffs had failed to produce "the type of evidence routinely used to show interrelated operations," and that evidence closely resembles the evidence submitted by Plaintiffs here. *Id.* at 1363 (citing *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987) (holding that a parent's operations were interrelated with those of its subsidiary where parent kept subsidiary's books, issued its paychecks, and paid its bills); *Perry v. Manocherian*, 675 F. Supp. 1417, 1426 (S.D.N.Y. 1987) (finding operations to be interrelated where the parent and subsidiary had common employees, the same headquarters, and common advertising, and where the parent rented its properties to the subsidiary); *E.E.O.C. v. Fin. Assurance, Inc.*, 624 F. Supp. 686, 689 (W.D. Mo. 1985) (finding operations interrelated where parent and subsidiary shared services, equipment, employees, and office space, and where parent controlled subsidiary's payroll and benefit programs)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

of STE's key operations.  For example, Plaintiffs contend that "SSA Marine manages STE's cash flow, accounts payable, accounts receivable, accounting, payroll, benefits, leaves of absence, and tax reporting, and SSA Marine requires and maintains personnel records on STE's employees." (Dkt. No. 159 at 22.)  Plaintiffs also argue that SSA Marine pays for all of these services without any written management or service agreement between the parties.  Further, Plaintiffs claim: that STE officers work out of SSA Marine's office and are paid by SSA Marine rather than STE; that the companies use the same information technology infrastructure and hardware; that the companies borrow from and contribute to a common bank account; that SSA Marine pays STE's expenses; and that SSA Marine prepared STE's new hire policies and handbook. (Dkt. No. 159 at 22.)  Defendants deny these characterizations. (Dkt. No. 165.)

While the parties clearly dispute many of the facts underlying this inquiry, the undisputed record makes certain facts plain.  For example, Mr. DeNike, Vice President of SSA Marine and President of STE, testified that he created STE specifically to support the terminal operations of other Carrix subsidiaries such as SSA Marine and SSA Containers. (Dkt. No. 160-2 at 27.)  Similarly, although Defendants claim in their brief that STE "[d]oes not share a principal place of business with SSA Marine, but has as its principal place of business as [sic] the Carson facility," (Dkt. No. 165 at 5), STE's response to Plaintiffs' interrogatories states that its principal place of business is the same address in Seattle, Washington where SSA Marine is also located, (Dkt. Nos. 160-7 at 51, 160-10 at 4–5).[9]  And SSA Marine's Vice President of Accounting and Benefits testified that certain STE employees work at SSA Marine's headquarters. (Dkt. No. 160-7 at 51, 52.)  While the companies appear to have different bank accounts, STE responded in a supplemental discovery response that, "due to their relationship to Carrix, [STE and SSA Marine] each participate in individual accounts that comprise a series of accounts that have a cash sweep feature.  This means that the series of accounts borrow from and contribute to one account as working capital is needed or is in excess." (Dkt. No. 160-6 at 4.)  The companies also share various officers, (Dkt. No. 160-6 at 6), and there is substantial deposition testimony from SSA Marine executives indicating that SSA Marine manages STE's accounts payable, accounts receivable, and all other accounting

---

[9] SSA Marine's Vice President of Accounting and Benefits also testified that "[w]e consider Carson to be [STE's] headquarters," (Dkt. No. 160-7 at 51), but this executive's impression of another company's headquarters is insufficient to overcome that company's own representations in its discovery responses.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | Date | September 30, 2014 |
|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | |

operations, (*see, e.g.*, Dkt. Nos. 160-2 at 28–29, 160-3 at 9, 160-7 at 37), as well as STE's payroll and benefits, (*see, e.g.*, Dkt. Nos. 160-3 at 22, 160-4 at 9).

Based on all of this evidence in the record, a reasonable jury could find that the operations between SSA Marine and STE are highly interrelated. This factor thus weighs in favor of Plaintiffs.

## 2. Common Management

Under the common management factor, the Court must consider "whether the entities have common officers, directors, and managers." *Con-Way, Inc.*, 2007 WL 2610367, at *5. But "[o]ne common manager is insufficient to establish a disputed material fact under this prong of the integrated enterprise test." *Frank*, 3 F.3d at 1364. Rather, the plaintiff must provide evidence that individuals served as a manager of both corporations, that at least one manager of the parent corporation made or influenced "day-to-day managerial decision[s]" for the subsidiary, or that certain managers were transferred from one corporation to the other. *Laird*, 68 Cal. App. 4th at 740; *Trosper*, 2014 WL 1619052, at *8. Without any such showing, the plaintiff cannot create an issue of fact regarding common management between the two entities.

In support of their motion, Defendants acknowledge that SSA Marine and STE share certain officers, such as Mr. DeNike—who is the Executive Vice President of SSA Marine and the President of STE—but maintain that these officers occupy very different roles in each company. For example, Defendants repeatedly argue that Mr. DeNike wears a different "hat" when serving SSA Marine than he wears when serving STE. (*See, e.g.*, Dkt. Nos. 151-1 at 21, 165 at 8.) And, as Defendants point out, "officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998). But a dispute exists between the Parties regarding the role of Mr. DeNike at his two companies. While Defendants argue that he relies on STE's General Managers for all STE decisions, Mr. DeNike testified that he has "been in charge" of STE "from the very beginning" and that he "tr[ies] to direct STE as to how [it] should operate so that [it] can be financially responsible." (Dkt. No. 160-1 at 6, 7.) Moreover, Mr. DeNike is not the only officer that the two companies have in common. Rather, STE identified seven officers, executives, or managers who work for both

| Case No. | CV 13-02092 BRO (PLAx) | | Date | September 30, 2014 |
|---|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | | |

companies, including STE's (1) Chief Executive Officer ("CEO"); (2) President; (3) Executive Vice President; (4) Vice President, General Counsel, and Secretary; (5) Vice President of Finance and Accounting; (6) Vice President of Finance; and (7) Vice President of Tax. (Dkt. No. 160-6 at 9.) Each company's board of directors is also comprised of the same two individuals. (Dkt. No. 160-1 at 56.)

Given the substantial overlap between SSA Marine and STE's directors and officers, and particularly given that Mr. DeNike serves as a manager to both corporations, this factor also weighs in favor of Plaintiffs.

### 3. Common Control of Labor Operations

Whether two entities share a common control of labor operations is widely considered to be the most important factor in the joint enterprise analysis. *See, e.g.*, *J.M. Tanaka*, 675 F.2d at 1034; *L.A. Marine Hardware*, 602 F.2d at 1305; *Trosper*, 2014 WL 1619052, at *4. "The critical question is, what entity made the final decisions regarding employment matters related to the [plaintiffs]?" *Laird*, 68 Cal. App. 4th at 738 (internal citations, quotation marks, and modifications omitted). As with the previous factors, there is great dispute between the Parties as to what control SSA Marine exercises over STE's employment matters. At the outset, it is undisputed that SSA Marine and STE are not in a typical parent-subsidiary relationship. Rather, SSA Marine is a subsidiary of Carrix, and STE is a subsidiary of a subsidiary of Carrix. Nevertheless, STE's President testified that STE was created specifically to support the terminal operations of other Carrix subsidiaries such as SSA Marine and SSA Containers, so there is clearly a connection between the two subsidiaries. (Dkt. No. 160-2 at 27.) To establish that the companies share common control of labor operations, Plaintiffs must demonstrate that SSA Marine "directly interfered with [STE's] hiring, firing, and other employment practices." *Con-Way*, 2007 WL 2610367, at *6.

Defendants acknowledge that SSA Marine and STE share payroll services and "some human resource functions for administrative staff," but they argue that such overlap is insufficient to demonstrate common control of labor operations. (Dkt. No. 151-1 at 19 (citing *Con-Way*, 2007 WL 2610367, at *5 ("[S]hared payroll and other administrative services are typical of parent-subsidiary relationships so long as the subsidiary pays for those services."); *Burnett v. Intercon Sec. Ltd.*, 97 C 3385, 1998 WL

LINK:

| Case No. | **CV 13-02092 BRO (PLAx)** | Date | September 30, 2014 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL.** | | |

142395, at *7 (N.D. Ill. Mar. 24, 1998) ("[S]haring the same commercial payroll service does not show that accounting or bookkeeping was singular or that the hundreds of employees employed by the three entities were lumped into one."); *Richard v. LaSalle Talman Bank*, 94 C 1799, 1995 WL 234633, at *11 (N.D. Ill. Apr. 19, 1995) (finding evidence demonstrating that subsidiaries shared a single employee benefit plan, a bank resources policy manual, and one central computer that processes human resources information insufficient "to establish even a tentative inference that the two subsidiaries operate in concert").) Defendants further contend that the Drivers entered into their operating leases with STE without any interference by SSA Marine, and that SSA Marine has no involvement in selecting the Drivers or in disciplining, managing, or paying them. (Dkt. No. 151-1 at 19; DSUF ¶¶ 20–22.)

By contrast, Plaintiffs dispute these contentions and maintain that SSA Marine, and in particular Mr. DeNike, plays a significant role in STE's labor relations. Indeed, Mr. DeNike testified that he handles serious disciplinary issues confronting STE. (Dkt. No. 160-1 at 36.) Although Defendants argue that Mr. DeNike is acting solely on behalf of STE in this capacity, Mr. DeNike also testified that he is paid solely by SSA Marine for his various positions working for Carrix subsidiaries. (Dkt. No. 160-1 at 17.) Moreover, despite Defendants' attempts to minimize the overlap in human resources between the companies, the testimony of SSA Marine's Vice President of Accounting and Benefits, Theresa Bicknell, makes clear that SSA Marine's benefits department handles many of STE's human resources issues. For example, Ms. Bicknell testified that SSA Marine's benefits department handles all STE employee leave issues under the Family and Medical Leave Act ("FMLA"), (Dkt. No. 160-7 at 18–23), including issues of eligibility, (Dkt. No. 160-7 at 33–34), and communications regarding the need for FMLA leave, (Dkt. No. 160-7 at 30–32, 141). Ms. Bicknell also testified that SSA Marine retains the hiring documents of STE's employees in their files. (Dkt. No. 160-7 at 13–14.) Plaintiffs also note that STE uses the same new hire packet that was created by SSA Marine, as well as the same employee handbook that was created by SSA Marine's CEO and Benefits Manager in conjunction with outside counsel. (Dkt. No. 160-7 at 6–8, 24–25.)

Although it remains unclear exactly how much control SSA Marine exercises over STE—and the Parties vigorously dispute this issue—the testimony of various SSA Marine executives suggests that SSA Marine is not the "distant cousin" to STE that Defendants claim in their motion. Rather, the record establishes that SSA Marine has at

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092 BRO (PLAx) | | Date | September 30, 2014 |
|---|---|---|---|---|
| Title | GRAYLING TAYLOR ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC. ET AL. | | | |

least some control over the labor relations at STE. As a result, there is a material issue of fact, which is enough to defeat summary judgment.

### 4. Common Ownership or Financial Control

Finally, although this factor "alone is never enough to establish . . . liability," the Court will nevertheless consider whether the two entities share common ownership or financial control. *Laird*, 68 Cal. App. 4th at 738; *accord Trosper*, 2014 WL 1619052, at *9 ("Courts have recognized this factor as being the least important of the four."). It is undisputed that both SSA Marine and STE are entirely owned by Carrix. While this factor is likely the least important in this analysis, it, too, favors Plaintiffs.

Based on the foregoing analysis under the joint enterprise test, there clearly remain disputed issues of fact as to whether SSA Marine qualifies as a joint employer for purposes of liability. Accordingly, Defendants' motion for summary judgment as to Defendant SSA Marine is **DENIED**.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is **GRANTED**, and Defendants' motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

                                                                    :

                                        Initials of Preparer            rf