**LAW OFFICES OF C. JOE SAYAS, JR.**
C. JOE SAYAS, JR. (Bar No. 122397)
KARL P. EVANGELISTA (Bar No. 250685)
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955
cjs@joesayaslaw.com
kpe@joesayaslaw.com

**HAYES PAWLENKO LLP**
Matthew B. Hayes (SBN: 220639)
Kye D. Pawlenko (SBN: 221475)
595 East Colorado Blvd., Suite 303
Pasadena, California 91101
(626) 808-4357; FAX (626) 921-4932
mhayes@helpcounsel.com
kpawlenko@helpcounsel.com

Attorneys for Plaintiffs

(Additional Counsel on signature page)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRAYLING TAYLOR, an individual, and BRUCE BROWN, an individual, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STE TRANSPORT EXPRESS, INC., a California corporation; SSA MARINE, INC., a Washington corporation; and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No.: CV13-02092-BRO(PLAx)<br>Hon. Beverly Reid O'Connell<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF FORM AND MANNER OF NOTICE**<br><br>Hearing Date: TBD<br>Time: TBD<br>Location: Courtroom 14 – Spring St. |

i

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION                                                                 1

II.  FACTUAL AND PROCEDURAL BACKGROUND                                          2

    A.  The Certified Class                                                    3

        1.  The Agreement Requests an Additional Opt-Out Opportunity for Class Members Hired After Dissemination of Class Notice    4

    B.  The Parties Diligently Prepared for Trial, but the Court-Ordered Settlement Conference Resulted in Settlement Close to Trial    4

    C.  Plaintiff's Extensive Investigation and Discovery                      6

III.  SUMMARY OF SETTLEMENT TERMS                                               8

    A.  Allocation of Net Settlement Amount                                    9

    B.  Settlement Administration Costs, Litigation Costs, and Attorneys' Fees    10

    C.  Incentive Payments for Named Plaintiffs and Active Class Members        10

    D.  Scope of Release as to Class Members' Claims                          10

IV.  STANDARD OF REVIEW OF PROPOSED SETTLEMENT                                  11

V.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL                         12

    A.  Arms-Length Negotiations Resulted in Settlement                        12

    B.  The Proposed Settlement Has No Obvious Deficiencies                    13

    C.  Proposed Settlement Does Not Provide Improper Preferential Treatment    15

    D.  The Settlement Falls Within the Range of Possible Approval             16

        1.  The strength of plaintiffs' case and the amount offered in settlement    17

        2.  The risk, expense, complexity, and likely duration of further litigation    18

        3.  The risk of maintaining class action status throughout the trial    19

## TABLE OF CONTENTS (cont'd)

|  |  |  | **Page** |
|---|---|---|---|
| | 4. | The extent of work completed and close to trial | 19 |
| | 5. | The experience and views of counsel | 20 |
| E. | | The Proposed Plan Meets the Requirements of Notice and a Fairness Hearing Should be Scheduled | 20 |
| | 1. | The Court Should Order Notice Be Provided to the Class | 20 |
| | | a.   Mailed notice | 22 |
| | 2. | The Court Should Set Settlement Deadlines and Schedule a Fairness Hearing | 22 |
| VI. | CONCLUSION | | 24 |

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Air Lines Stewards & Stewardesses Ass'n Local 550 v. Am. Airlines, Inc.*,
455 F.2d 101 (7th Cir. 1972) ........ 21

*Alberto v. GMRI, Inc.*,
252 F.R.D. 652 (E.D. Cal. 2008) ........ 12

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ........ 20

*Barcia v. Contain-A-Way, Inc.*,
2009 WL 587844, No. 07CV938-IEG-JMA (S.D. Cal. Mar. 6, 2009) ........ 16

*Boyd v. Bank of Am., Corp.*,
No. SACV 13-0561-DOC (JPRx), 2014 WL 6473804
(C.D. Cal. 2014) ........ 15 n.5

*Carlough v. Amchem Prods., Inc.*,
158 F.R.D. 314 (E.D. Pa. 1993) ........ 20

*Carter v. Anderson Merchandisers, LP*,
Nos. EDCV 08-00025-VAP (OPx) and EDCV 09-0216-VAP (OPx),
2010 WL 144067 (C.D. Cal. Jan. 7, 2010) ........ 13

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ........ 11

*Collins v. Cargill Meat Solutions Corp.*,
274 F.R.D. 294 (E.D. Cal. 2011) ........ 14

*Create-A-Card, Inc. v. Intuit, Inc.*,
2009 U.S. Dist. LEXIS 93989 (N.D. Cal. Sept. 22, 2009) ........ 19

*Durrett v. Housing Auth. of Providence*,
896 F.2d 600 (1st Cir. 1990) ........ 20

*Eddings v. Health Net, Inc.*,
No. CV-10-1744-JST, 2013 WL 169895 (C.D. Cal. Jan. 16, 2013) ........ 12

*Fernandez v. Victoria Secret Stores, LLC*,
No. CV 06-04149 MMM, 2008 WL 8150856 (C.D. Cal. 2008) ........ 15 n.5

*Franklin v. Kaypro Corp.*,
884 F.2d 1222 (9th Cir. 1989) ........ 11

*Glass v. UBS Fin. Serv., Inc.*,
No. 06-cv-4068 MMC, 2007 WL 221862
(N.D. Cal. Jan. 26, 2007) ........ 14, 15 n.5, 16, 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF FORM AND MANNER OF NOTICE

# TABLE OF AUTHORITIES (cont'd)

<u>**Page(s)**</u>

*Greko v. Diesel U.S.A., Inc.*,
  No. 10-cv-02576 NC, 2013 WL 1789602
  (N.D. Cal. Apr. 26, 2013)                                          13-14, 17

*Harris v. Vector Marketing Corp.*,
  No. C-08-5198-EMC, 2011 WL 1627973, at *9 (N.D. Cal. 2011)        16, 17

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010)                                        14

*In re Activision Sec. Litig.*,
  723 F.Supp. 1373 (N.D. Cal. 1989)                                   15 n.5

*In re Corrugated Container Antitrust Litig.*,
  659 F.2d 1322 (5th Cir. 1981)                                       11

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000)                                        13, 17

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y.  1993)                                      22

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  962 F.Supp. 450 (D.N.J. 1997), *aff'd* 148 F.3d 283 (3d Cir. 1998)  21 n.6

*Lake v. First Nationwide Bank*,
  156 F.R.D. 615 (E.D. Pa. 1994)                                      21-22

*Nen Thio v. Genji, LLC*,
  14 F.Supp.3d 1324 (N.D. Cal. 2014)                                  15, 16

*Nordstrom Comm'n Cases*,
  186 Cal.App.4th 576 (Cal. Ct. App. 2010)                           14

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982)                                        11

*Reppert v. Marvin Lumber & Cedar Co.*,
  359 F.3d 53 (1st Cir. 2004)                                         20

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009)                                        12

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994)                                        20

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)                                        16

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482, 491 (E.D. Cal. 2010)                               15 n.5

v

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Vasquez v. Coast Valley Roofing, Inc.,*
670 F. Supp. 2d 1114 (E.D. Cal. 2009) ..... 16

*White v. NFL,*
822 F. Supp. 1389 (D. Minn. 1993) ..... 21

**Other Authorities**

California's Unfair Competition Law
(*Cal. Bus. & Prof. Code §§ 17200 et seq.*) ..... 1

Manual for Complex Litigation, § 21.632 (4th ed. 2004) ..... 11, 12

Cal. Lab. Code § 2699(e)(1) ..... 21

## I.  **INTRODUCTION**

Plaintiff and Class Representative Bruce Brown seeks preliminary approval of a proposed settlement of this certified class action, which asserts claims for violations of California's Unfair Competition Law (*Cal. Bus. & Prof. Code §§ 17200 et seq.*), the California Labor Code, and the applicable Wage Order of California's Industrial Welfare Commission.  The terms of the Settlement are outlined in a Settlement Agreement dated February 27, 2015 (hereafter, the "Agreement"), a copy of which is attached as Exhibit 2 to the "Declaration of C. Joe Sayas, Jr., Esq., in Support of Motion for Preliminary Approval of Class Action Settlement" (hereafter, the "Sayas Declaration") being filed contemporaneously with the present Motion.[1]

In accordance with the Agreement, defendants STE Transport Express, Inc. ("STE") and SSA Marine, Inc. ("SSA Marine") (collectively, "Defendants") agree to pay a non-reversionary, maximum settlement amount of $11,040,000, inclusive of Attorneys' Fees and Costs; Administration costs; Incentive Awards to Named Plaintiffs and Active Class Members, and civil penalties to the Labor and Workforce Development Agency ("LWDA") under the Labor Code Private Attorney General Act of 2004 ("PAGA"). Shippers also agrees under the Settlement to reclassify its lease drivers as employees.

As set forth more thoroughly below, the Settlement here is an excellent result that merits preliminary approval.  The Settlement is fully informed by years of hard-fought litigation and extensive discovery; was reached after the Court had issued both a class certification Order and a grant of partial summary judgment finding that Class Members were misclassified as independent contractors; occurring after the commencement of trial preparation; and was consummated through arms-length negotiations undertaken in three separate all-day settlement conferences held before highly skilled settlement judges: the

---

[1] Unless stated otherwise, all capitalized words used in this Motion are defined in the Agreement.

Honorable Enrique Romero (Ret.) of ADR Services and the Honorable Jay C. Gandhi of the United States District Court.

Furthermore, the proposed Notice complies with all of the requirements of Fed. R. Civ. P. 23(c)(2)(B), provides Class Members with the best notice practicable under the circumstances, and allows for a full and fair opportunity to consider the Settlement. Accordingly, Plaintiffs request this Court to grant preliminary approval of the Settlement, approve the proposed Notice to Class Members, and set a fairness hearing to consider final approval of the Settlement.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This action was originally filed on January 31, 2012 in the California Superior Court against STE, a California corporation.  On February 22, 2013, Plaintiffs filed a First Amended Complaint ("FAC") that, *inter alia*, added SSA Marine as a defendant. On March 25, 2013, SSA Marine, a Washington corporation, removed this action to the United States District Court for the Central District of California, pursuant to the Class Action Fairness Act.  [*See* Sayas Declaration, ¶¶ 4-5, 26-30.]

The claims in this certified class action center on a class of port truck drivers misclassified as independent contractors by STE.  In or about 2010, STE implemented the truck-lease program around which the claims in this lawsuit revolve.  Under the program, STE classified their workforce of port truck drivers as independent contractors instead of employees.  As detailed below, this Court has found—as a matter of law—that STE's port truck drivers were misclassified as independent contractors.  [*See* Sayas Declaration, ¶¶ 2-3.]

The operative First Amended Complaint states causes of action for: (1) failure to pay minimum wages, pursuant to California Labor Code sections 1194, 1194.2 and 1197; (2) failure to reimburse business expenses, pursuant to California Labor Code section 2802; (3) unlawful coercion under California Labor Code section 450 (4) failure to provide accurate, itemized wage statements, pursuant to California Labor Code section 226; (5) waiting time penalties, pursuant to California Labor Code section 203; (6) unfair

business practices, pursuant to California Business and Professions Code sections 17200 *et seq.*; and (7) civil penalties under the Labor Code Private Attorney General Act, California Labor Code sections 2698 *et seq.*

**A.    The Certified Class**

On September 23, 2013, Plaintiff Bruce Brown filed a motion to certify a class comprised of "All Drivers who signed [STE'] Truck Lease Agreement, actually drove [STE] trucks without employing or using other drivers, and who were classified by [STE] as independent contractors instead of employees from 2008 to present." Defendants filed a timely opposition, and Plaintiff Brown filed a timely Reply. On December 2, 2013, the certification motion came on for hearing and the Court heard oral arguments. [*See* Sayas Declaration, ¶ 6.]

On March 10, 2014, this Court issued an Order granting Plaintiff Brown's motion for class certification. The Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, certified a class of "all persons who (1) signed a Truck Lease Agreement with [STE] in California from January 31, 2008, through the date on which notice is provided to the class, (2) actually drove [STE'] truck without hiring others to perform the work for [STE], and (3) were classified by [STE] as independent contractors instead of employees." [*See* Order Re Plaintiff's Motion for Class Certification, dated March 10, 2014, at Document No. 71.]

On May 5, 2014, the Court issued an Order approving the parties' agreed-upon Notice of Pendency of Class Action, and directed the dissemination of the Notice of Pendency of Class Action to all Class Members by a Claims Administrator, Gilardi & Co., LLC ("Gilardi"). On May 29, 2014, the Court appointed C. Joe Sayas, Jr. and Matthew Hayes as interim class counsel. On June 18, 2014, and June 27, 2014, Gilardi sent the Notice of Pendency of Class Action via United States Mail to 501 class members whose names and addresses were provided to Gilardi by Defendants. The Notice of Pendency of Class Action informed Class Members, among other things, of the 30-day deadline within which to request exclusion from the class action. In response, twelve

(12) recipients of the Notice of Pendency of Class Action submitted timely requests to opt out of the class.   [*See* <u>Declaration of Adrien Bizouarn Re: Notice and Claims Administration ("Bizouarn Declaration")</u>, dated October 9, 2014, attached as Exhibit 1 to <u>Sayas Declaration</u>; <u>Sayas Declaration</u>, ¶ 8.]

## 1.   *The Agreement Requests an Additional Opt-Out Opportunity for Class Members Hired After Dissemination of Class Notice*

Following Gilardi's last mailing of the Notice of Pendency of Class Action on June 27, 2014, the number of Class Members has increased because of STE's hiring of additional drivers from June 28, 2014 through the end of 2014.   Since Gilardi did not send the Notice of Pendency of Class Action to such additional Class Members in June 2014, these individuals have not been previously provided the opportunity to opt out of the present class action. Accordingly, the Parties' Agreement expressly provides that those Class Members are to be provided the opportunity to object to the Settlement or opt out.   In furtherance of same, Plaintiffs are submitting with this motion, for the Court's approval, separate class settlement notices to: (1) previously-noticed class members who chose to remain in the class and are now afforded an opportunity, if they so choose, to weigh in on the Settlement by way of an objection; and (2) additional class members who were hired after Gilardi's dissemination of Notice of Pendency of Class Action in June 2014, who are to be given the opportunity, if they so choose, to either opt out of the previously-certified class, or remain in the Class with the option to object to the terms of the Settlement. [*See* <u>Settlement Agreement</u>, § 6.]

## B.   <u>The Parties Diligently Prepared for Trial, but the Court-Ordered Settlement Conference Resulted in Settlement Close to Trial</u>

Despite intensive litigation and trial preparation work, the parties, simultaneously engaged in repeated and prolonged good-faith settlement negotiations.   Following the Court's Order granting certification and Plaintiffs' filing of their above-noted motion for partial summary judgment, the parties, in compliance with this Court's Order,

participated in private mediation in an effort to resolve the case. [*See* Sayas Declaration, ¶ 11.]

As their private mediator, the parties selected the Honorable Enrique Romero (Ret.), a highly regarded mediator and former jurist with expertise in class-action employment litigation. The parties held a mediation with Judge Romero on July 25, 2014. Unfortunately, despite the prolonged efforts of the parties and Judge Romero, including post-mediation discussions facilitated by the mediator, no settlement was reached at that time. The parties then re-focused their attention to the parties' competing motions for summary adjudication, and preparation for trial. [*See* Sayas Declaration, ¶ 11.]

Following the Court's September 30, 2014 Order granting Plaintiffs' summary adjudication motion and denying Defendants' counter-motion for summary judgment, the parties then proceeded to conduct depositions of each other's designated experts.[2] All parties then made final preparations for the trial then scheduled for December 2, 2014, organizing and evaluating evidence for trial, spending substantial time working to exchange drafts, meeting and conferring to finalize and file the joint trial exhibits, trial witnesses, the Memorandum of Contentions of Facts and Law, the numerous Motions in Limine and Oppositions thereto, and the proposed Final Pre-Trial Conference Order. [*See* Sayas Declaration, ¶¶ 15-17.]

At the November 3, 2014 Pre-Trial Conference, the Court ordered the parties to appear in a Settlement Conference before the Honorable Jay C. Gandhi, and continued the trial to December 16, 2014 to allow the related case of *Thomas Perez, Secretary of*

---

[2] The parties timely designated a total of ten (10) initial and supplemental experts, encompassing a wide variety of specialization areas, including class action surveys and statistics, economics, port trucking industry practices and transportation regulations, employment reimbursement practices, forensic accounting, *alter ego*, integrated enterprise and joint employer issues. [*See* Sayas Declaration, ¶ 16.]

- 5 -

*Labor v. STE Transport Express Inc.* to proceed to trial first. [*See* <u>Sayas Declaration</u>, ¶ 18.]

The parties and counsel then appeared and participated in a settlement conference before the Honorable Jay C. Gandhi at the United States District Court, in Santa Ana, California, on November 13, 2014.  In the evening of a lengthy settlement conference with Judge Gandhi, the parties signed a Memorandum of Understanding ("MOU") outlining the material terms of their settlement.  [*See* <u>Sayas Declaration</u>, ¶¶ 19-20.]

Following execution of the parties' MOU, counsel then commenced further discussions regarding the production of the long-form written Agreement expressly contemplated by the MOU.  When the parties became unable to resolve specific disputes regarding the terms of the Agreement, they once again reached out for Judge Gandhi's assistance with the Settlement.  [*See* <u>Sayas Declaration</u>, ¶ 21.]

On February 10, 2015, the parties participated in a second, all-day settlement conference with Judge Gandhi.  Although the Agreement was not finalized by the end of the day-long negotiations, Judge Gandhi directed the parties' continued negotiations.  On February 12, 2015, Class Counsel and the attorneys for Defendant SSA Marine continued the discussions catalyzed by Judge Gandhi's mediation in another day-long, face-to-face conference devoted fully to drafting a finalized, Agreement.  On February 27, 2015, the parties executed the Agreement being submitted here for the Court's preliminary approval.  [*See* <u>Sayas Declaration</u>, ¶¶ 22-23.]

### C.   <u>Plaintiff's Extensive Investigation and Discovery</u>

Since the commencement of this action, and throughout the course of three (3) years of hard-fought litigation and prolonged negotiations, the parties to this action have diligently engaged in extensive investigation and discovery.  Both sides served and responded to multiple sets of document production requests, specially-prepared interrogatories, form interrogatories and requests for admissions.  Class Counsel obtained production of  more than a million pages of both hard-copy and electronically-stored documents, including Class Members' pay and work records, policy documents, assorted

- 6 -

filled-in trucking forms, and e-mails exchanged amongst Defendants' key management personnel, including SSA Marine's and STE's CEO, CFO, and STE's President.  [*See* Sayas Declaration, ¶¶ 24, 26-27, 29-30, 32.]

In the course of three years of active and contentious litigation, the parties took and defended fifty-eight (58) total depositions, some of which required travels to Oakland, California and Seattle, Washington.  These included sixteen (16) depositions for various management and administrative personnel of Defendants, thirty-three (33) depositions for the named plaintiffs and other Class Members, and nine (9) experts' depositions. Depositions of Defendants' key personnel include those of: (i) Edward DeNike, President of STE and Executive VP of SSA Marine; (ii) Charles Sadoski, CFO and Executive VP for both STE and SSA Marine; (iii) Theresa Bicknell, VP of Accounting and Benefits for SSA Marine; (iv) Gordon Hoffman, VP of Finance for SSA Marine; (v) Juan Carlos Alvarez, Safety Director for STE; (vi) Kevin Baddeley, General Manager for STE' Carson, California operations; and (vii) Guy Sanderson, General Manager for STE' Oakland, California operations.  The numerous depositions taken in the three years leading up to trial here provided invaluable information regarding the wage-and-hour practices at issue in this case, and significantly informed the parties' negotiations leading to settlement on the eve of trial.  [*See* Sayas Declaration, ¶ 32.]

At the outset of the case, Class Counsel—through their investigation and with the assistance of the named plaintiffs and other active Class Members—obtained the names and contact information of scores of additional Class Members willing to be interviewed regarding the employment practices at issue in this case.  Following certification, Class Counsel then obtained the rest of the class list from Defendants.  Class Counsel used the additional information to, *inter alia*, conduct extensive Class-Member interviews, and thereby obtained valuable data regarding Defendants' workplace practices, policies, and procedures, regarding the level of control exercised by Defendants over Class Members, scheduling, wage practices, and Defendants' meal- and rest-break policies, all of which provided valuable information as Class Counsel prepared for further litigation while

- 7 -

simultaneously pursuing settlement discussions with Defendants. [*See* Sayas Declaration, ¶ 25.]

To assist with discovery and investigation, Plaintiffs also retained multiple experts, including an experienced forensic electronic discovery firm to assist counsel in the collection, organization, review and analysis of voluminous work and pay records, as well as relevant e-mail communications amongst a selection of Defendants' key management and executive personnel. Class Counsel's extensive search from more than a million pages produced through the Relativity electronic platform yielded significant information that support the claims of the class. Phillips, Fractor & Company, LLC ("PFC"), economists specializing in wage and hour data analysis and accounting, were also retained to review and analyze Class Members' voluminous work and pay records. Two senior economists and a data analyst from PFC collectively worked as a team to conduct extensive class surveys, and produced a Damages Analysis which was ready for presentation at trial. Such Damages Analysis was ultimately used in the parties' settlement negotiations on the eve of trial. Other experts, Jon Haveman, Ph.D., a senior economic analyst who has conducted studies on port trucking industry practices, and Karl Schulze, CPA, a forensic accountant knowledgeable in corporate alter ego and integrated enterprise issues, were additionally retained. [*See* Sayas Declaration, ¶¶ 30-31.]

## III.    SUMMARY OF SETTLEMENT TERMS

The Agreement sets out the terms of the Settlement in greater detail. [*See generally* Settlement Agreement.] The Agreement provides that Defendants will pay an amount of $11,040,000 to settle the claims of the certified class of approximately 540 Drivers. [*See* Settlement Agreement, §§ 2.5 & 5.1.] The Settlement is not on a claims-made basis, and every Class Member will therefore be sent a check, such that the participation rate in the Settlement will be 100%. The key provisions of the Agreement are as follows:

/ / /

/ / /

### A.     Allocation of Net Settlement Amount

The Agreement provides that each Class Member who has not, or does not, opt out of the Class shall receive an Individual Settlement Payment.  These Individual Settlement Payments are inclusive of all wages, interest and penalties to which the Class claim entitlement in this action.  The Agreement includes a Plan of Allocation, based on a generally acceptable formula utilized in this type of wage-and-hour litigation, designed to fairly and accurately compensate the Class Members.  [*See* Settlement Agreement, §§ 2.22 & 5.1.1.]

Specifically, the Class Members shall be entitled to a *pro rata* portion of the Net Settlement Amount[3] based on their length of service, according to the formula set out in the Agreement.  Each Class Member's Individual Settlement Payment shall be calculated as follows:

(a)     Gilardi shall calculate the total aggregate number of Workweeks that all Class Members worked during the relevant class period ("Total Workweeks").

(b)     The Net Settlement Amount shall be divided by the Total Workweeks, resulting in the "Workweek Point Value".

(c)     The total number of Workweeks for each Class Member during the Class Period will be calculated.  Gilardi shall initially base this information on

---

[3] As discussed below, pursuant to the Agreement, and pending Court approval, the Net Settlement Amount will be determined by deducting the following amounts from the Class Settlement Amount of $11.04 million: (i) payment of $50,000 to satisfy claims of civil penalties under the PAGA (payment of 75% of said penalties, or $37,500, shall be paid to the California Labor and Workforce Development Agency, with the remaining 25% to be paid directly to the Participating Class Members, pursuant to the PAGA statute); (ii) Incentive Awards to Plaintiffs Grayling Taylor and Bruce Brown ($15,000 each), and to active class members Elroy Lambey ($10,000) and Mario Giron ($7,500); (iii) Administration Costs not to exceed $25,000; and (iv) Class Counsel's Attorneys' Fees not to exceed 33 and 1/3 % of the Class Settlement Amount plus reasonable litigation costs not to exceed $485,000.  [*See* Settlement Agreement, § 2.13.]

Defendants' records, but Class Members shall be afforded a reasonable opportunity to challenge said information by presenting their documentation of weeks worked.

(d)     An Individual Settlement Payment amount for each Class Member shall then be determined by multiplying the individual's number of Workweeks by the Workweek Point Value.

[*See* Settlement Agreement, § 5.1.1.]

### B.     Settlement Administration Costs, Litigation Costs, and Attorneys' Fees

Defendants have agreed not to oppose Class Counsel's request for an award of attorneys' fees in an amount not to exceed 33 and 1/3% of the Class Settlement Amount, litigation costs and expenses approved by the Court in an amount not to exceed $485,000, and Notice and Administration Costs in an amount not to exceed $25,000.  Class Counsel shall file a separate motion and accompanying memorandum in support of their fees, costs and expenses prior to the Final Approval hearing in this case.  [*See* Settlement Agreement, § 5.1.3.]

### C.     Incentive Payments for Named Plaintiffs and Active Class Members

Class Counsel will likewise separately move the Court for Incentive Awards to Named Plaintiffs Grayling Taylor and Bruce Brown ($15,000 each), and Active Class Members Elroy Lambey ($10,000) and Mario Giron ($7,500) for their services to the Class.  [*See* Settlement Agreement, § 5.1.2.]

### D.     Scope of Release as to Class Members' Claims

As part of the settlement, each Class Member, in exchange for the payments outlined above, shall release and discharge Defendants from any claims, rights, penalties, demands, damages, debts, accounts, duties, costs (other than those costs required to be paid pursuant to this Agreement), liens, charges, complaints, causes of action, obligations, or liability of any and every kind, whether known or Unknown Claims, that were alleged or could have been asserted based on the alleged facts in the Litigation and/or Related Litigation and any claims relating in any way to any of the facts alleged or

asserted or referred to in any of the pleadings and/or papers filed in the Litigation and/or Related Litigation, as explained in Section 8 of the Agreement. [*See* Settlement Agreement, §§ 2.18, 2.19 & 8.]

## IV.   **STANDARD OF REVIEW OF PROPOSED SETTLEMENT**

Federal law strongly favors and encourages settlements, especially in class actions. [*See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[I]t hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits.") (citations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation...").] The resolution of complex cases by settlement contributes greatly to the efficient utilization of scarce judicial resources and promotes the swift implementation of justice, for a "just result is often no more than an arbitrary point between competing notions of reasonableness." [*In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981).]

Under FRCP Rule 23(e), preliminary approval is the first of a two-stage process whereby the court considers whether the proposed settlement should be approved as fair, reasonable and adequate. [*See* Federal Judicial Center, *Manual for Complex Litigation*, § 21.632 (4th ed. 2004).] The second and last step is a final approval hearing, at which time arguments concerning the fairness, adequacy and reasonableness of the settlement may be presented, and the Court may consider class-member reaction to the proposed settlement. [*See, e.g., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (detailing factors to be considered in determining whether a settlement is fair, reasonable and adequate).]

Preliminary approval, in contrast, does not require that the Court ultimately determine the question of whether a tentative settlement is fair, reasonable and adequate. Rather, the Court simply determines whether the proposed settlement is within the range of possible approval, and thus warrants that notice be sent to class members so that they

- 11 -

may fully and fairly consider the proposed settlement.   [*See Manual for Complex Litigation*, § 21.632; *see also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) ("a full fairness analysis is unnecessary" at preliminary approval stage; Court simply needs to "conduct a cursory review of the terms of the parties' settlement for the purpose of resolving any glaring deficiencies before ordering the parties to send the proposal to class members").]

## V.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

"[P]reliminary approval and notice of the settlement terms to the proposed class are appropriate where '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval.'"   [*Eddings v. Health Net, Inc.*, No. CV-10-1744-JST, 2013 WL 169895, at *2 (C.D. Cal. Jan. 16, 2013) (*quoting In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007)).]   The Court is also to ensure that the settlement notice "contains adequate information, presented in a neutral manner, to apprise class members of the essential terms and conditions of the settlement."   [*Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).]   As discussed herein, the parties' settlement here meets all of the above requirements for preliminary approval.

### A.   Arms-Length Negotiations Resulted in Settlement

As described above, the settlement reached in this case was the result of extensive, arms-length settlement negotiations against the backdrop of completed discovery and contentious litigation through the eve of trial.   These negotiations included an intensive mediation process with an experienced wage-and-hour mediator and former jurist, the Honorable Enrique Romero (Ret.), as well as two separate, all-day settlement conferences with the Honorable Jay C. Gandhi.   [*See* <u>Sayas Declaration</u>, ¶¶ 11, 18-22.]

The parties commenced an all-day Mandatory Settlement Conference on November 13, 2014 with Magistrate Judge Gandhi.   As noted above, this Mandatory

- 12 -

Settlement Conference, resulted in a signed Memorandum of Understanding ("MOU")[4] between the parties.  [*See* Sayas Declaration, ¶¶ 19-20, 26-27, 29-31.]  The parties participated in a second settlement conference on February 10, 2014.  [*See* Sayas Declaration, ¶¶ 21-23.]

The product of the hard-fought negotiations noted above is the proposed Settlement Agreement executed by the parties on February 27, 2015.  Far from being a collusive agreement, the parties' Agreement is instead the result of highly contentious, informed, arms-length negotiations, between counsel with substantial litigation experience, who are fully familiar with the legal and factual issues in this case and have specific experience litigating complex and class action cases.  Of significant importance is the fact that the settlement process was presided over by well-respected settlement judges.  [*See* Sayas Declaration, ¶¶ 18-22; *see also Carter v. Anderson Merchandisers, LP*, Nos. EDCV 08-00025-VAP (OPx) and EDCV 09-0216-VAP (OPx), 2010 WL 144067, at *6 (C.D. Cal. Jan. 7, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").]

The fact that the parties' settlement is non-collusive supports preliminary approval.

**B.    The Proposed Settlement Has No Obvious Deficiencies**

The proposed settlement here has no obvious deficiencies.  As detailed below, the settlement amount represents approximately 42% to 65% of what the class expected to obtain following a successful trial and judgment, an amount well within the range of what has been considered fair in other, comparable class settlements.  [*See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding recovery of one-sixth of potential recovery to be fair under circumstances); *Greko v. Diesel U.S.A., Inc.*, No. 10-

---

[4]  The MOU also resolved the individual wrongful termination claims of Plaintiff Grayling Taylor filed in the Los Angeles Superior Court ("LASC").  As noted, Mr. Brown served as the sole class representative in the instant class action.  The MOU further resolved the separate class action filed in LASC by active class member Elroy Lambey.  [*See* Sayas Declaration, ¶ 20.]

cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (24 percent); *Glass v. UBS Fin. Serv., Inc.*, No. 06-cv-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (25 to 35 percent).]

There are also no obvious deficiencies in the scope of the release. [*See* <u>Settlement Agreement</u>, § 8.] The release is entirely consistent with well-settled case law. [*See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action."); *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 303 (E.D. Cal. 2011) (granting preliminary approval where released claims were "based on the facts alleged" in the complaint and thus appropriately tracked the breadth of plaintiffs' allegations in the action and the settlement did not release "unrelated claims").]

The Settlement provides a reasonable allocation of $50,000 of the Class Settlement Amount as payment for civil penalties under PAGA, a matter well within the discretion of the trial judge ruling on preliminary approval here. [*See Cal. Lab. Code § 2699(e)(1)* (court exercises discretion in awarding civil penalties under PAGA); *Nordstrom Commission Cases*, 186 Cal.App.4th 576, 589 (Cal. Ct. App. 2010) (settlement approved despite no allocation for PAGA civil penalties).] Nor are there any deficiencies in Class Counsel's anticipated request for an award of attorneys' fees and costs subject to the Court's approval. [*See Collins v. Cargill*, *supra*, 274 F.R.D. at 299, 302 (in granting preliminary approval, Court found no obvious deficiencies in proposed settlement in which attorneys' fees of up to 55% of the gross settlement amount would be sought, since such attorney-fee award would be "subject to court approval at the final approval hearing").][5]

---

[5] While the Agreement does not stipulate a specific amount of attorneys' fees to be awarded here, Class Counsel anticipates requesting an award representing 33 and 1/3% of the Class Settlement Amount. As noted above, such award would have to be approved

The absence of obvious deficiencies in the Settlement weighs in favor of a grant of preliminary approval.

### C.   Proposed Settlement Does Not Provide Improper Preferential Treatment

The proposed settlement here does not provide preferential treatment to any Class Members.   Rather, as described above, a uniform formula is applied that fairly and accurately compensate Class Members based on their length of service and amount of actual work performed for Defendants.   Such uniform application of a payment formula is illustrative of a non-preferential distribution of a common fund class settlement.   [*See Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1334-35 (N.D. Cal. 2014) (*pro rata* distribution of common settlement fund to class members based on amount of work performed does not grant undue preferential treatment to any class members).]

Moreover, the fact that the parties' Agreement authorizes Class Counsel to apply for Incentive Awards to the Named Plaintiffs and Active Class Members does not invalidate the Settlement on account of preferential treatment.   The Ninth Circuit has expressly recognized that service awards in a class action are permissible and do not

---

by the Court following a hearing on final approval.  Nonetheless, Class Counsel's request would not fall beyond the range of reasonable awards as to warrant an obvious deficiency in the Settlement.  [*See*, *e.g.*, *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM, 2008 WL 8150856, at *15-16 (C.D. Cal. 2008) (awarding 34% of common fund as attorneys' fees in settlement of wage-and-hour class action); *Glass v. UBS Fin. Serv., Inc.*, No. 06-cv-4068-MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007), at *4 (finding award of attorneys constituting 25% to 35% of settlement in wage and hour class action reasonable in light of uncertainties involved in the litigation); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value"); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1374-78 (N.D. Cal. 1989) ("…nearly all common fund awards range around 30%...").]; *Boyd v. Bank of America, Corp.*, No. SACV 13-0561-DOC (JPRx), 2014 WL 6473804, at *12 (C.D. Cal. Nov. 28, 2014) (holding that attorneys' fees representing 1/3 of the settlement fund in wage and hour class action is reasonable.).]

render a settlement unfair or unreasonable.  [*See Nen Thio*, *supra*, 14 F.Supp.3d at 1335 (*citing Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).]

Such Incentive Awards are routine, appropriate, and serve public policy by encouraging individuals to come forward to protect the rights of others, while at the same time compensating class representatives for their time, effort and inconvenience in representing the collective interests of the members of the certified class.  [*See, e.g.*, *Glass v. UBS Fin. Serv., Inc.*, No. 06-cv-4068-MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007), at *17 (awarding four service awards of $25,000 each in FLSA overtime collective action); *Barcia v. Contain-A-Way, Inc.*, No. 07CV938-IEG-JMA, 2009 WL 587844, at *7 (S.D. Cal. Mar. 6, 2009) (approving $25,000 incentive award in wage-and-hour class action; citing cases).]

That there is no indication of improper preferential treatment supports preliminary approval of the Settlement.

### D.  The Settlement Falls Within the Range of Possible Approval

To determine whether a proposed settlement falls within the range of possible approval at the preliminary approval stage, the Court applies a two-step analysis.  First, "[t]o evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  [*Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1125 (E.D. Cal. 2009).]   As part of this assessment, the Court "compare[s] the value of the settlement against the expected recovery at trial."  [*Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *9 (N.D. Cal. 2011).]

The parties' proposed settlement falls well within the range of reasonable settlements as a percentage of potential recovery at trial.  Here, the damages analysis conducted by Class Counsel and Plaintiffs' experts estimated a potential wage recovery for the class in the range of approximately $16,968,424 to $26,188,796.  These figures were heavily disputed, and were alleged to be substantially lower, by the Defendants.  As

such, the proposed settlement amount of $11,040,000 constitutes a range of between 42% to 65% of the maximum recovery at trial, and the percentage is likely higher if Defendants' arguments prevailed. [*See* Sayas Declaration, ¶ 39.] Such a percentage falls well within the range of fairness warranting approval in other comparable class actions. [*See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, *supra*, 213 F.3d at 459 (finding recovery of one-sixth of potential recovery to be fair under circumstances); *Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (24 percent); *Glass v. UBS Fin. Serv., Inc.*, No. 06-cv-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007), at *4 (25 to 35 percent).]

As a secondary matter, the Court may also preview the factors that ultimately inform final approval, such as, "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." [*See Harris v. Vector Marketing Corp.*, *supra*, 2011 WL 1627973, at *9 (*citing Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).] Although the Court undertakes a more in-depth investigation of these factors at the final approval stage, these factors "inform whether the Settlement Agreement falls within the 'range of possible approval.'" [*Harris*, *supra*, 2011 WL 1627973, at *9.] As discussed below, these factors also weigh in favor of preliminary approval in this action.

### 1.    *The strength of plaintiffs' case and the amount offered in settlement*

The Settlement has substantial value and provides substantial economic benefits to the Class. Given the inherent risks associated with any trial, let alone a complicated and hotly disputed trial such as would take place in this action, such monetary payment is substantial and potentially exceeds the relief the Class could receive in a successful, let alone an unsuccessful, trial. [*See* Sayas Declaration, ¶¶ 33-39.]

- 17 -

**2.     *The risk, expense, complexity, and likely duration of further litigation***

This factor also weighs heavily in favor of preliminary (and, ultimately, final) approval of the Settlement.  The risk, expense, complexity, and likely duration of further litigation are very significant.  [*See* <u>Sayas Declaration</u>, ¶¶ 33-37.]

The numerous array of defenses on a variety of issues that could spell the death knell for this case or certain segments of the Class are hardly insubstantial and include, but are not necessarily limited to: (1) whether Class Plaintiffs could survive a motion for decertification, (2) whether the class representative is adequate, (3) whether common issues predominate, (4) whether Class Plaintiffs can maintain a derivative UCL action now that they have dismissed all underlying causes of action, (5) whether Class Plaintiffs' PAGA claims seek double recovery, (6) whether Class Plaintiffs' PAGA claims are manageable on a class-wide basis, and (7) whether SSA Marine and STE will be found to be joint employers.  [*See* <u>Sayas Declaration</u>, ¶¶ 34-35.]

There are also significant risks involving the question of collectability of any judgment obtained following trial, in light of the unresolved question of SSA Marine's liability.  Discovery in this action have revealed serious questions regarding STE's ability to pay a hefty judgment in this case, thus making the question of collectability hinge on a finding of joint liability of STE and SSA Marine.  There is a substantial likelihood that a judgment imputing liability to STE but not SSA Marine would limit Class Members' ability to collect a judgment to well below the Class Settlement Amount.  In contrast, the Settlement guarantees recovery for the Class Members, and for those Class Members who remain employed as STE Drivers, it also provides a recovery without the danger of their employer being forced into insolvency and Class Members potentially losing their jobs.  [*See* <u>Sayas Declaration</u>, ¶ 36, 38.]

Additionally, if this matter went to verdict, a lengthy appeal period would certainly result.  Hundreds of thousands of dollars in out-of-pocket expenses have been incurred in pursuing claims on behalf of the Class.  [*See* <u>Sayas Declaration</u>, ¶ 37.]  Settlement will

conserve the resources of the Parties and the Court.   The Settlement guarantees a substantial recovery for the Class now while obviating the need for a lengthy, complex, and uncertain trial.  [*See Create-A-Card, Inc. v. Intuit, Inc.*, 2009 U.S. Dist. LEXIS 93989, at *13 (N.D. Cal. Sept. 22, 2009).]

### 3. *The risk of maintaining class action status throughout the trial*

As noted above, Defendants intend to move to decertify the Class.   Accordingly, although Class Plaintiffs believe that they would be successful in maintaining class action status through the trial, there is a substantial risk that Defendants would prove successful in attacking class certification.  [*See* Sayas Declaration, ¶ 34.]

### 4. *The extent of work completed and close to trial*

This matter has been intensely litigated, as even a cursory review of the Court's docket reveals.  This Settlement was reached after the end of the discovery period.  A total of 58 depositions have been taken of Plaintiffs, Class Members, Defendants' employees, and the parties' respective experts.  Defendants have produced more than a million of pages of documents for search and review by Class Counsel.  The parties designated numerous experts, who have generated multiple reports and their depositions taken.  Several motions were filed and argued in Court, including discovery motions, a class certification motion, motion for evidentiary sanctions, and cross summary judgment motions.  Pre-trial documents were finalized and filed, and the parties commenced preparation for trial.  [*See* Sayas Declaration, ¶¶ 4-17, 24-32.]

Given the advanced stage of these proceedings, there can be no question that Class Counsel has a clear view of the strengths and weaknesses of the Class's claims and damage approaches.  Extensive discovery has been conducted, and trial preparation was made in this matter to allow counsel to fairly investigate the pertinent legal and factual issues and enable them to recommend the Settlement. [*See* Sayas Declaration, ¶ 24-39.]

/ / /

/ / /

/ / /

- 19 -

### 5.     The experience and views of counsel

Class Counsel have substantial experience serving as counsel in numerous class actions, including complex cases.  They fully endorse the Settlement as fair, reasonable and adequate to the Class.

**E.     The Proposed Plan Meets the Requirements of Notice and a Fairness Hearing Should be Scheduled**

### 1.     The Court Should Order Notice Be Provided to the Class

Reasonable notice must be provided to the Class to allow class members an opportunity to object to the Settlement.  [*See Durrett v. Housing Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990).]  Rule 23(e) requires notice of a proposed settlement "in such manner as the court directs."  In a settlement of a class maintained under Rule 23(b)(3), class notice must meet the requirements of both the Federal Rules of Civil Procedure 23(c)(2) and 23(e).  [*See Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 324-25 (E.D. Pa. 1993) (stating that requirements of Rule 23(c)(2) are stricter than requirements of Rule 23(e) and arguably stricter than the due process clause).]  Under Rule 23(c)(2), notice to the Class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," [*Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997); *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004)], although actual notice is not required, [*see Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)].

The Manual sets forth several elements of the "proper" content of notice.  If these requirements are met, a notice satisfies Fed. R. Civ. P. 23(c)(2), Fed. R. Civ. P. 23(e) and due process, and binds all members of the Class. The Notice should, among other things:

1.     Describe the essential terms of the Settlement;

2.     Disclose any special benefits or incentives to the class plaintiffs;

3.     Provide information regarding attorneys' fees;

4.     Indicate the time and place of the hearing to consider approval of the Settlement, and the method for objection to and/or opting out of the

Settlement;

5.   Explain the procedures for allocating and distributing Settlement funds; and

6.   Prominently display the address of class counsel and the procedure for making inquiries.

[*See* Manual, ¶ 21.312 (4th ed. 2004); *see also*, *e.g.*, *Air Lines Stewards & Stewardesses Ass'n Local 550 v. American Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972) (notice that provided summary of proceedings to date, notified of significance of judicial approval of settlement, and informed of opportunity to object at the hearing satisfied due process).]

The proposed Notice, attached as Exhibits 2-3 to the Agreement, is clear, precise, informative, and meets the foregoing standards.[6]  Further, the proposed notice program provides "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  As reflected in the proposed notice plan detailed in the Agreement, the Class Members will be notified by first class mail.  Notice via first class mail is an avenue for notice that has been approved by various courts.  [*See*, *e.g.*, *White v. NFL*, 822 F. Supp. 1389, 1400 (D. Minn. 1993) (notice by mail to identified Class members and publication once in *USA Today* "clearly satisfy both  Rule 23 and due process requirements"); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (approving as reasonable notice by third class mail to

---

[6] The Notice is also written in plain English, and is easy to read and includes other information such as the case caption; a description of the Class; a description of the claims; a description of the Settlement; the names of counsel for the Class; a statement of the maximum percentage of attorneys' fees that may be sought by Class Counsel; the Fairness Hearing date; a description of Class members' opportunity to appear at the hearing; a statement of the procedures and deadlines for requesting exclusion and filing objections to the Settlement for Class Members who were not previously provided with the Notice of Pendency of Class Action; and the manner in which to obtain further information. [*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 496 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998). *See also* MANUAL § 21.312 (Rule 23(e) notice designed to be only a summary of the litigation and settlement to apprise Class members of the right and opportunity to inspect the settlement agreement).]

- 21 -

identified Class members and publication two times in the national edition of USA Today); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice by mail to identified Class members and publication in USA Today).]

### a.    Mailed notice.

Beginning not later than ten business days after the entry of the Preliminary Approval Order, the Claims Administrator will begin mailing the Notice, substantially in the form attached as Exhibits 2-3 to the Agreement, by U.S. Mail, proper postage prepaid, to all potential Class members.  The Claims Administrator will: (i) re-mail any notices returned by the United States Postal Service with a forwarding address; and (ii) following receipt of any returned notices that do not include a forwarding address, perform a skip trace or other search using name, address, and Social Security Number, and promptly re-mail copies of the Notice.

The Parties have selected Gilardi to serve as the Claims Administrator in this case. Gilardi has already served as the court-appointed Notice Administrator who mailed the prior Notice of Pendency of the Class Action. Gilardi is one of the premier class action settlement administration firms in the country and has years of experience in crafting notice plans.  Named Plaintiffs believe that the proposed Notice will fairly apprise Class Members of the Settlement and their options relating thereto, and therefore should be approved by the Court.

### 2.    *The Court Should Set Settlement Deadlines and Schedule a Fairness Hearing*

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing the Notices, and deadlines for objecting to the Settlement and filing papers in support of the Settlement.  Plaintiffs propose the following schedule, which the parties believe will provide ample time and opportunity for Class Members to decide whether to request exclusion or object.  The proposed schedule assumes that the Court timely approves the Settlement on a preliminary basis:

- 22 -

| Date | Event |
|------|-------|
| Ten (10) business days following the Court's entry of the Preliminary Approval Order | Date by which Claims Administrator shall cause the Notice to be mailed. |
| Twenty (20) business days following the Court's entry of the Preliminary Approval Order | Date by which Class Counsel must submit Motion for Award of Attorneys' Fees and Expenses, and Incentive Awards. |
| Within forty-five (45) calendar days after Class Administrator mails Notice | Deadline for Class Members to submit an objection to Class Counsel's Application for Final Approval of Settlement and/or Expense and Fees Application, and deadline for Class Members who were not previously provided with the Notice of Pendency of Class Action, to submit a request to be excluded from the Class. |
| Twenty-eight (28) calendar days in advance of the Fairness Hearing | Date by which Class Counsel must submit Motion for Final Approval of Settlement. |
| Seven (7) calendar days prior to Fairness Hearing. | Deadline for filing with the Court of reply papers in support of the Settlement, Plan of Allocation, and Class Counsel's application for an award of attorneys' fees, costs and expenses if necessary. |
| Seven (7) calendar days prior to Fairness Hearing. | Date by which Class Counsel must file proof of mailing of the Notice. |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

- 23 -

## VI.   **CONCLUSION**

For all the above-stated reasons, Plaintiffs respectfully request that the Motion be granted and the Court enter an order: (i) granting preliminary approval of the Settlement; (ii) scheduling a final fairness hearing and establishing all related deadlines; (iii) directing that Notice be provided to the Class in accordance with the notice plan; and (iv) ordering a stay of all proceedings in this action until the Court renders a final decision regarding the approval of this Settlement.

Respectfully submitted,

Dated: February 27, 2015                LAW OFFICES OF C. JOE SAYAS, JR.

By:   /s/ C. Joe Sayas, Jr.
                          C. JOE SAYAS, JR.
                          KARL P. EVANGELISTA
                          Co-Class Counsel