**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

Present: The Honorable     **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS)

## ORDER GRANTING PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES [231, 234]

### I. INTRODUCTION

Pending before the Court are two separate motions related to the settlement of this class action case: Plaintiffs' Motion for Final Approval of Class Action Settlement and Plaintiffs' Motion for Attorneys' Fees.[1] (Dkt. Nos. 231, 234.) The Court held a final fairness hearing on these matters on May 11, 2015. After considering the papers filed in connection with the instant motions, the arguments advanced at the hearing, and the entirety of the record, the Court **GRANTS** Plaintiffs' motions.

### II. FACTUAL AND PROCEDURAL BACKGROUND

This case involves a class action dispute for alleged violations of the California Labor Code.[2] Named plaintiffs Grayling Taylor ("Mr. Taylor") and Bruce Brown ("Mr. Brown") initiated this action on behalf of a class of California port truck drivers (collectively, "Plaintiffs") against Defendants Shippers Transport Express, Inc. ("STE")

---

[1] The Court will refer to these motions as "Motion for Final Approval" and "Motion for Fees," respectively.

[2] All further references to the Labor Code will be to the California Labor Code unless otherwise indicated.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

and SSA Marine ("SSA") (collectively, "Defendants").[3] The central dispute is whether STE misclassified port truck drivers as independent contractors, thereby depriving them of the rights and benefits accorded to employees under California law. (FAC ¶ 1.)

The instant dispute began sometime in 2010, when STE began leasing trucks to drivers in its workforce. (Mot. for Final Approval at 2; *see also* FAC ¶ 14.) Under the program, STE deducted a daily "lease charge" from each truck driver's compensation. (FAC ¶ 14.) STE also classified its drivers as independent contractors, which consequently denied them minimum wage protection, indemnification of business expenses, and other statutory benefits available to employees. (FAC ¶ 16.) Additionally, STE required drivers to pay the operating costs for the leased trucks. (*Id.*)

### A. The Proceedings Leading to the Settlement Agreement

Plaintiffs initiated this action on January 31, 2012 by filing a Complaint against STE in the Superior Court of California, County of Los Angeles. (Dkt. No. 1-1, Ex. A.) Approximately one year later, on February 22, 2013, Plaintiffs filed a First Amended Complaint adding SSA as a co-defendant. (Dkt. No. 1-2, Ex. B.) SSA is a Washington corporation. (FAC ¶ 5.) According to Plaintiffs, SSA is so integrated with STE as to make it liable for the alleged misclassification under integrated enterprise and joint employer theories of liability. (FAC ¶ 6; *see also* Mot. for Final Approval at 2.)

The First Amended Complaint brings the following state law claims for relief: (1) failure to pay minimum wages pursuant to Labor Code sections 1194, 1194.2, and 1197; (2) failure to reimburse drivers' business expenses pursuant to Labor Code section 2802; (3) unlawful coercion under Labor Code section 450; (4) failure to provide accurate, itemized wage statements pursuant to Labor Code section 226; (5) waiting time penalties under Labor Code section 203; (6) a violation of California's Unfair Competition Law, ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (7) civil penalties under the Labor Code Private Attorney General Act, ("PAGA"), §§ 2698 *et seq.* (FAC ¶¶ 39–76.)

---

[3] Mr. Taylor's claims are brought in his individual capacity. Mr. Brown is the only class representative in this case. (*See* First Am. Compl. ("FAC") ¶ 30; *see also* Decl. of Joe Sayas, Jr. in Supp. of Mot. for Final Approval ¶ 3.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

On March 22, 2013, SSA removed the case pursuant to the Class Action Fairness Act, ("CAFA"), 28 U.S.C. § 1332(d). (Dkt. No. 1.) The case was then transferred to this Court. (Dkt. No. 14.) On September 23, 2013, Plaintiffs moved for class certification. (Dkt. Nos. 32, 33.) The Court held a hearing on the matter, (Dkt. No. 65), and on March 10, 2014, the Court granted Plaintiffs' motion and certified the following class:

> [A]ll persons who (1) signed a Truck Lease Agreement with STE in California from January 31, 2008 through the date on which notice is provided to the class, (2) actually drove STE's truck without hiring others to perform the work for STE, and (3) were classified by STE as independent contractors instead of employees.

(Dkt. No. 71 at 6.)

Following class certification, on May 5, 2014, the Court issued an order approving the parties' proposed class certification notice packets. (Dkt. No. 105.) Pursuant to this approval, a third-party claims administrator, Gilardi & Co., LLC ("Claims Administrator" or "Gilardi"), sent notice packets to all class members whose names and addresses had been identified and provided by Defendants. (Mot. for Final Approval at 3; *see also* Decl. of Joe Sayas, Jr. in Supp. of Mot. for Final Approval ("Sayas Approval Decl.") ¶ 11.) The notice packets informed all class members of the thirty-day deadline to request exclusion from the class. (Mot. for Final Approval at 3.) In response, twelve drivers opted out. (Sayas Approval Decl. ¶ 11.)

Shortly before the Claims Administrator issued the notice packets, Plaintiffs filed a motion for partial summary judgment seeking a determination as a matter of law that the class members are employees and not independent contractors. (Dkt. No. 93.) Defendants filed a separate motion for summary judgment, arguing that Plaintiffs' wage and hour claims are preempted by the Federal Aviation Authorization Administration Act ("FAAAA"), and that SSA cannot be held jointly liable for any unlawful conduct by STE. (Dkt. No. 97.) On September 30, 2014, the Court granted Plaintiffs' motion, holding that the class members are employees as a matter of law, and denied Defendants' motion, finding that Plaintiffs' claims are not preempted by the FAAAA and that triable issues exist with respect to SSA's potential joint liability. (Dkt. No. 178.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

Following the Court's ruling on the motions for summary judgment, the parties began preparing for trial. (Mot. for Final Approval at 4.) In anticipation of a scheduled trial date on December 2, 2014, the parties completed expert witness depositions, met and conferred about pre-trial filings, finalized the trial exhibit and witness lists, agreed to a final pre-trial conference order, and filed numerous motions in limine. (*See* Sayas Approval Decl. ¶¶ 17–18; *see also* Decl. of Matthew B. Hayes in Supp. of Mot. for Final Approval ("Hayes Approval Decl.") ¶ 19.)

### B. The Settlement Agreement

The parties began negotiating a potential settlement in the months preceding trial. To that end, on July 25, 2014, the parties participated in a private mediation session before the Honorable Enrique Romero, ("Judge Romero"), a mediator and former jurist with extensive experience in class action employment litigation. (Sayas Approval Decl. ¶ 14; *see also* Hayes Approval Decl. ¶ 20.) Although the session did not result in a settlement, the parties continued to conduct informal settlement negotiations. (*Id.*) On November 5, 2014, the Court ordered the parties to attend a second settlement conference before Magistrate Judge Jay C. Gandhi ("Judge Gandhi"). (Dkt. No. 214.) After a full day of negotiation, the parties executed a memorandum outlining the general terms of a settlement agreement. (Sayas Approval Decl. ¶ 20; *see also* Hayes Approval Decl. ¶ 22.)

Following the mediation, the parties conferred to execute a long-form settlement agreement. (Sayas Approval Decl. ¶ 21; *see also* Hayes Approval Decl. ¶ 23.) The parties reached an impasse and participated in a third settlement conference before Judge Gandhi. (Sayas Approval Decl. ¶¶ 21–22; *see also* Hayes Approval Decl. ¶¶ 23–24.) The conference did not result in a final agreement. (*Id.*) Two days after the conference, Plaintiffs' counsel met with SSA's counsel and again failed to reach a final agreement. (Sayas Approval Decl. ¶ 22; *see also* Hayes Approval Decl. ¶ 25.) Then on February 27, 2015, the parties resolved the issues and executed a final Settlement Agreement to resolve this dispute.[4] (Sayas Approval Decl. ¶ 23; *see also* Hayes Approval Decl. ¶ 26.)

---

[4] A copy of the final Settlement Agreement is available at Docket No. 229-4 as Exhibit 2 to Plaintiffs' *ex parte* Application for Preliminary Settlement Approval.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

### C. The Terms of the Settlement Agreement

The final Settlement Agreement requires Defendants to pay $11,040,000 to settle the claims of approximately 529 to 540 class members.  (Settlement Agreement ¶ 5.1.) Additionally, STE will be required to reclassify all class members as employees instead of independent contractors.  (*Id.* ¶ 5.2.)  In exchange, Plaintiffs agree to voluntarily dismiss, with prejudice, all claims in two separate state court actions, as well as release all claims alleged or that could have been alleged in these proceedings.  (*Id.* ¶¶ 5.3, 8.1.)

The agreement applies to the class certified by the Court's March 10, 2014 order, plus any other driver who entered into a truck lease agreement with STE in California after the Claims Administrator first sent notice of the class action in June 2014 through the date of preliminary settlement approval on March 4, 2015.  (*Id.* ¶ 2.21.)  The class does not include the twelve drivers who timely opted out upon notice of class certification.  (*Id.*)  All new drivers who signed lease agreements between the first notice of class action and the preliminary settlement approval will be given the opportunity to opt out of the class.  (*Id.* ¶ 6.2.)  Accordingly, the Settlement Agreement provides for two separate settlement notices: (1) a notice to the previously-noticed class members who did not originally opt out of the class, which describes the method of distribution and advises members of their right to object to the settlement; and (2) a notice to the additional drivers hired after first notice of the class certification order, which additionally advises the members of their right to opt out of the class.  (*Id.* ¶¶ 6.1, 6.2, Exs. 2, 3.)

Pursuant to the Settlement Agreement, each class member will receive a pro rata share of the net settlement sum.  (*Id.* ¶¶ 5.1.1–5.1.5.)  The net settlement sum is equal to the $11,040,000 gross settlement less attorneys' fees and costs approved by the Court, approved incentive awards, class notice and administration costs, and a PAGA penalty payment.  (*Id.* ¶ 2.13.)  The Claims Administrator will distribute the net settlement according to a three-step process.  First, the Claims Administrator will calculate the total number of workweeks worked by all class members during the class period.  (*Id.* ¶ 5.1.1.) The Claims Administrator will then divide the net settlement sum by the total number of workweeks, resulting in a "workweek point value" figure.  (*Id.*)  Each class member will be entitled to the product of the number of weeks he or she worked times the workweek

LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 13-02092-BRO (PLAx)** | | Date | May 14, 2015 |
|----------|---------------------------|--|------|--------------|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | | |

point value.[5] (*Id.*) Additionally, STE bears responsibility for paying the employer's portion of any payroll taxes applicable to each class member's payment. (*Id.* ¶ 5.1.6.) The settlement is also non-reversionary. Thus, in the event a class member cannot be located or fails to timely negotiate his or her settlement payment, these portions of the net settlement will be distributed to the other class members on a pro rata basis. (*Id.* ¶ 7.1.7.)

In exchange for the settlement payment, each class member must agree to a release of claims against Defendants. The Settlement Agreement defines the scope of the released claims as follows:

> [A]ny claims, rights, demands, and causes of action of every nature and description, including both known claims and Unknown Claims (as defined below), whether arising under federal, state or common law, whether class, representative, or individual in nature, that the Named Plaintiffs or any other Class Member: (i) asserted in the Litigation and/or Related Litigation; or (ii) could have asserted in the Litigation and/or Related Litigation or in any other action or in any forum based on the facts alleged or asserted or referred to in any of the pleadings and/or papers filed in the Litigation and/or Related Litigation including, all claims released pursuant to Section 8.1 below.

(*Id.* ¶ 2.18.) Accordingly, the class members agree to:

> [I]rrevocably release, acquit, and forever discharge Defendants of and from any and all claims, rights, penalties, demands, damages, debts, accounts, duties, costs (other than those costs required to be paid pursuant to this Settlement Agreement), liens, charges, complaints, causes of action, obligations, or liability of any and every kind, whether known or Unknown Claims, that were alleged or could have been asserted based on the alleged facts in the Litigation and/or Related Litigation and any claims relating in any way to any of the facts alleged or asserted or referred to in any of the pleadings and/or papers filed in the Litigation and/or Related Litigation.

---

[5] If neither Defendants nor a particular class member can provide information regarding the number of weeks worked by a class member, the number will be deemed to be 20% of the average number of weeks worked by all class members. (*See id.*)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|----------|---------------------------|------|--------------|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

(*Id.* ¶ 8.1.)

### D. Notice to the Class Members and the Class Response

Upon issuing preliminary approval of the class settlement, the Court directed that notice be given to all class members and approved the notice forms set forth in the parties' final Settlement Agreement. (Dkt. No. 230.) The Claims Administrator coordinated with Defendants' counsel to generate a list of 525 potential class members. (*See* Decl. of Bernella Osterlund ("Osterlund Decl.") ¶ 2.) On March 18, 2015, the Claims Administrator mailed the approved notices by first class mail, postage prepaid, to 521 of these class members.[6] (*Id.* ¶ 3.) On April 1, 2015, counsel identified four additional class members, and the Claims Administrator sent notice packets to these members thereafter. (*Id.* ¶ 4.) Thus, the total class includes approximately 529 members, of whom 527 have been sent notice of the settlement. (*Id.* ¶¶ 5, 14.) The Claims Administrator has also been contacted by at least three additional individuals who wish to be included in the class. (*Id.* ¶ 13.) Defendants' counsel are currently reviewing these claims, (*id.*), and estimate that the class will include approximately 540 members.

The settlement notice advised class members of all of the following: (1) the nature of the lawsuit; (2) the total settlement sum; (3) the attorneys' fees and litigation expenses to be deducted from the settlement; (4) the incentive awards, PAGA penalties, and claims administration costs to be deducted from the settlement; (5) the plan of allocation for distributing the net settlement sum among the class members; (6) the individual class members' recorded workweeks and estimated share of the settlement; (7) the scope of the release; (8) the date of the final settlement approval hearing; (9) the procedure and deadline for filing objections to the settlement; and (10) the name and address of class counsel and the procedure for making inquiries about the settlement. (*See id.* Ex. A.)

After distributing the settlement notice, seven notices were returned to the Claims Administrator with forwarding addresses. (*Id.* ¶ 6.) The administrator re-mailed these notices to the appropriate forwarding address, and none have been returned. (*Id.*)

---

[6] The administrator did not send notices to four class members whose addresses were not available. (*Id.* ¶ 4.) On April 10, 2015, class counsel provided mailing addresses for two of these individuals, and the Claims Administrator has now directed notice to these members. (*Id.* ¶ 14.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

Seventeen notices have been returned to the Claims Administrator as undeliverable. (*Id.* ¶ 7.) The Claims Administrator has located updated mailing addresses for thirteen of these class members, and since re-mailing the notices, none have been returned a second time. (*Id.*) The Claims Administrator has also established a toll-free telephone number for class members to call to request a copy of the notice and claim form. (*Id.* ¶ 8.)

The deadline to object to the settlement was April 20, 2015, and the deadline to request exclusion was May 2, 2015. (*Id.* ¶¶ 10–11.) As of April 13, 2015, no class members had opted out of the settlement. (*Id.* ¶ 10.) Four class members have disputed the employment information regarding the number of weeks they worked and have sent the Claims Administrator supporting documentation. (*Id.* ¶ 12.) These disputes are currently being reviewed by Defendants' counsel. As indicated above, the Claims Administrator has also been contacted by three individuals who believe they were mistakenly excluded from the class. (*Id.* ¶ 13.) One of these individuals is Carlos Garcia, ("Mr. Garcia"), who filed an "objection" to the settlement on the basis that he should be included in the class. (*See* Hayes Approval Decl. ¶ 37; *see also* Dkt. No. 239.) Defendants' counsel have agreed to include Mr. Garcia in the class and are determining his workweeks during the class period. (Hayes Approval Decl. ¶ 37.) Mr. Garcia has now withdrawn his objection. (*See* Supplemental Approval Decl. ¶ 6.)

### E. Relevant Procedural History

As indicated above, the Court preliminarily approved the class settlement on March 4, 2015. (Dkt. No. 230.) Following preliminary approval, Plaintiffs filed the instant Motion for Final Approval and Motion for Fees.[7] (Dkt. Nos. 231, 234.) Plaintiffs seek final approval of the proposed settlement and plan of allocation, as well as an award of attorneys' fees and expenses, approval of incentive awards for the named plaintiffs and two other active class members, approval of the Claims Administrator's expenses, and approval of a proposed PAGA penalty payment. On April 20, 2015, Defendants filed a Notice of Non-Opposition to Plaintiffs' Motion for Fees. (Dkt. No. 240.) Defendants have not opposed the Motion for Final Approval.

---

[7] Plaintiffs filed the Motion for Fees on April 1, 2015. (Dkt. No. 231.) Plaintiffs thereafter filed the Motion for Final Approval on April 13, 2015. (Dkt. No. 234.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092-BRO (PLAx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL. | | |

## III. LEGAL STANDARD

There is a strong judicial policy favoring settlement agreements, "particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, when reviewing a proposed class action settlement, district courts "have the responsibility of ensuring fairness to all members of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). A district court may not approve a class settlement unless the court determines that the "proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 959 (internal quotation marks omitted).

### A. Final Approval of a Class Action Settlement Under Rule 23(e)

Under Rule 23(e), the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). District courts must follow a two-step process when deciding whether to approve a proposed class action settlement. *See McKenzie v. Fed. Express Corp.*, No. CV 10-02420 GAF, 2012 WL 2930201, at *2 (C.D. Cal. July 2, 2012). "First, the court must determine whether the proposed settlement deserves preliminary approval." *See id.* (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)). Second, once the class members receive notice of the proposed settlement, the court must hold a fairness hearing and determine whether final approval is warranted. *Id.* (citing *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525).

Under Rule 23(e), a district court may not finally approve a class settlement unless the court determines that the "proposed settlement is fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 959 (internal quotation marks omitted). The very circumstances of settlement negotiations raise "incentives for the negotiators to pursue their own self-interest and that of certain class members." *Id.* at 960. Thus, a district court must review a proposed class action settlement not only for actual fraud, overreaching, or collusion, but also with an eye to whether the terms are fair, adequate, and reasonable to the class as a whole. *Id.*

In determining whether a proposed settlement meets the fundamental standard of fairness, adequacy, and reasonableness, a district court may consider the following

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

factors: (1) "the strength of [the] plaintiffs' case"; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining class action status throughout the trial"; (4) "the amount offered in settlement"; (5) "the extent of discovery completed, and the stage of the proceedings"; (6) "the experience and views of counsel"; (7) "the presence of a governmental participant"; and (8) "the reaction of the class members to the proposed settlement." *Id.* at 959 (internal quotation marks omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

A district court's role in evaluating a proposed settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable[,] and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). Accordingly, a district court should neither judge the merits of the claims in dispute, nor compare the proposed settlement "against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations[,] and rough justice." *Id.* (internal quotation marks omitted).

### B. Attorneys' Fees Under Rule 23(h)

In any certified class action, a district court may award reasonable attorneys' fees and nontaxable costs as authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). Where, as here, a proposed class action settlement contains a fee provision, the provision is subject to the same fundamental inquiry into whether the settlement is fair, adequate, and reasonable as is the remainder of the agreement. *Staton*, 327 F.3d at 963 (explaining that "[t]here is no exception in Rule 23(e) for fees provisions contained in proposed class action settlement agreements"). A district court must "carefully assess" the reasonableness of a fee provision. *Id.* The mere fact that the defendant agrees to pay the fees "does not detract from the need to carefully scrutinize the fee award." *Id.* at 964. This is because the allocation between the class award and the attorneys' fees "is of little or no interest to the defense." *Id.* (internal quotation marks omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092-BRO (PLAx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL. | | |

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This doctrine is known as the "common fund" doctrine. As the Supreme Court has explained,

> The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Id.* (internal citations omitted). Thus, the common fund doctrine permits a district court to award attorneys' fees from the total monetary fund recovered by the class to ensure that each class member "contributes proportionately to the payment of attorneys' fees." *Staton*, 327 F.3d at 967.

The Supreme Court has set forth three criteria for obtaining an award of attorneys' fees from a common fund. First, the class of persons benefiting from the fund must be "easily identifiable." *Van Gemert*, 444 U.S. at 478–79. Second, the court must be able to accurately trace the benefits from the fund to the class beneficiaries. *Id.* at 479. Finally, the court must be able to shift the fee from the fund to those benefiting from it "with some exactitude." *Id.* Generally, these three criteria are satisfied "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.*

In the Ninth Circuit, a district court presiding over a common fund case may award attorneys' fees based on one of two methods: the lodestar method or the percentage method. *Staton*, 327 F.3d at 967–68; *see also Hanlon*, 150 F.3d at 1029. If the court adopts the lodestar method, it may apply a risk multiplier to increase or decrease the fee award based on various factors, including the risk involved and the length of the proceedings. *Staton*, 327 F.3d at 968. If the court adopts the percentage method, "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon*, 150 F.3d at 1029.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-02092-BRO (PLAx) | Date | May 14, 2015 |
| Title | GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL. | | |

Although a court has discretion to apply either method, "use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). In applying the percentage method, the court "must show why [the chosen] percentage and the ultimate award are appropriate based on the facts of the case." *Id.* at 1046 (explaining that a court may not "arbitrarily apply a percentage"). The "benchmark" for percentage method fee awards in the Ninth Circuit is 25% of the common fund. *Hanlon*, 150 F.3d at 1029. Notwithstanding this benchmark, the percentage should be adjusted "when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

The ultimate goal under either the lodestar method or the percentage method is to "reasonably compensate counsel for their efforts in creating the common fund." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 (citing *Paul, Johnson*, 886 F.2d at 271–72). In considering the overall fairness and reasonableness of a fee award, a court should consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden on class counsel; and (5) awards made in similar cases." *Id.* (citing *Vizcaino*, 290 F.3d at 1048–50).

## IV. DISCUSSION

### A. Plaintiffs' Motion for Final Approval

As described above, a district court may only approve a class settlement after a hearing and upon finding that the settlement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). After considering the papers filed in connection with Plaintiffs' Motion for Final Approval, the arguments advanced at the final fairness hearing, and the relevant factors, the Court concludes that the Settlement Agreement here is fair, adequate, and reasonable within the meaning of Rule 23(e).

| Case No. | CV 13-02092-BRO (PLAx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL. | | |

### 1. The Strength of Plaintiffs' Case

The first fairness factor considers the strength of the plaintiffs' case. *See Staton*, 327 F.3d at 959. In assessing the strength of the case, a district court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625.

The Court has already held that the class members are employees as a matter of law. (Dkt. No. 178.) Nevertheless, Plaintiffs assert that "significant risks still remain regarding the class's ability to ultimately prevail and collect damages on the wage and hour claims at issue in this case." (Mot. for Final Approval at 14.) To that end, Plaintiffs aver that Defendants have asserted potentially viable defenses and offsets to a substantial portion of the class damages. (*Id.*) For example, Defendants have argued that STE's lease payment deductions from each driver's compensation were permissible under California state law. (Hayes Approval Decl. ¶ 33 (citing *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 21–22 (Cal. Ct. App. 2007) (affirming the trial court's finding that "the drivers were not entitled to reimbursement for expenses related 'to purchasing or leasing a vehicle for the purpose of performing pick up and delivery services' because 'employers in the pick up and delivery industry in California can require as a condition of employment that their drivers, at their own expense, purchase or lease a truck to the employer's specifications.'").) Defendants have also argued that they should be permitted to offset their liability for fuel deductions from class members' paychecks based on the fuel surcharge payments that STE passed along from its customers to its drivers. (*Id.*) If this case proceeded to trial and these arguments proved successful, the scope of the class's potential damages could be significantly reduced.

Plaintiffs also point to the uncertainty as to whether their claims are in fact preempted by the FAAAA in light of a pending writ of certiorari before the United States Supreme Court.[8] (*Id.* ¶ 34.) Additionally, Plaintiffs are concerned about SSA's liability.

---

[8] The case is called *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014). The Ninth Circuit concluded that the FAAAA does not preempt California's meal and rest break laws in the trucking industry. *Id.* at 647–50. The Ninth Circuit's decision contrasts with the First Circuit's in *Massachusetts Delivery Ass'n v. Coakley*, 769 F.3d 11, 23 (1st Cir. 2014), which requires lower courts to apply a broad

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|----------|---------------------------|------|--------------|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

If SSA is not held jointly liable, Plaintiffs anticipate that STE may not be able to pay a substantial judgment equivalent to the amount in the Settlement Agreement. (*Id.* ¶ 35.)

It is clear that Plaintiffs have considered their claims in light of the plausible defenses and offsets asserted by Defendants. Plaintiffs have also considered the possibility that none of their claims will survive if preempted by the FAAAA, and finally, the risk that any judgment at trial may prove to be uncollectible. In light of these risks and considerations, Plaintiffs' counsel believes the settlement represents a favorable result for all class members. (*Id.* ¶ 36.) Given that Plaintiffs have conducted extensive discovery and motion practice, accounted for potential litigation risks, and assessed their overall likelihood of success at trial, this factor weighs in favor of approval. *See Franco v. Ruiz Food Prods., Inc.*, No. CV 10-02354 SKO, 2012 WL 5941801, at *11 (E.D. Cal. Nov. 27, 2012) (finding this factor favored settlement approval where the plaintiffs properly accounted for their likelihood of success).

## 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526 (internal quotation marks omitted). Here, Plaintiffs aver that even if a verdict were reached, the losing party would likely file an appeal. (Mot. for Final Approval at 16; *see also* Hayes Approval Decl. ¶ 36.) Plaintiffs assert that they have already spent hundreds of thousands of dollars in pursuing their claims and argue that an appeal would only result in further expense and a delay in final judgment. (Mot. for Final Approval at 16.) In light of the expenses already incurred, as well as the additional time and money that would be incurred on appeal, the Settlement Agreement's promise of prompt and certain relief represents an immediate benefit to the class and ensures that the class members will benefit overall. This factor favors approval.

---

preemption test to state laws affecting the classification of truck drivers as employees or independent contractors.

| Case No. | **CV 13-02092-BRO (PLAx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | | |

### 3. The Risk of Maintaining Class Action Status Throughout the Trial

SSA retained new counsel on October 29, 2014. (Mot. for Final Approval at 16.) According to Plaintiffs, SSA's new counsel has indicated its intent to decertify the class if this matter proceeds to trial. (Sayas Approval Decl. ¶ 44; *see also* Hayes Approval Decl. ¶ 31.) SSA intends to argue that Mr. Brown's status as a former driver renders him an inadequate class representative, as he does not have standing to pursue injunctive relief on behalf of the class members who currently work as truck drivers for STE. (Hayes Approval Decl. ¶ 31.) Although Plaintiffs disagree with this contention, (*id.* ¶ 32), Plaintiffs nevertheless have filed a motion to intervene to add a current driver as an additional class representative, (Dkt. No. 215). Due to the settlement, the Court has not yet addressed the motion. The uncertainty regarding the continued viability of class certification suggests that the settlement resolution here ensures more timely and certain class relief. This factor also weighs in favor of granting final settlement approval.

### 4. The Amount Offered in Settlement

In considering the overall fairness of a settlement, a court should view "the complete package taken as a whole, rather than the individual component parts." *Officers for Justice*, 688 F.2d at 628. A proposed settlement may be fair, adequate, and reasonable even though greater recovery might be available to the class members at trial. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). Further, the Ninth Circuit has long deferred to the parties' private, consensual decisions. *See Hanlon*, 150 F.3d at 1027.

The Settlement Agreement provides for a gross settlement sum of $11,040,000, as well as the reclassification of all class members as employees. (*See* Settlement Agreement ¶¶ 5.1, 5.2.) The net settlement sum to be distributed among the class members will be determined by deducting from the gross settlement sum the proposed attorneys' fees and costs, incentive awards, administration costs, and PAGA penalty. (*See id.* ¶¶ 2.13, 5.1.1–5.1.5.) Each class member will receive a pro rata portion of the net settlement sum according to the number of weeks he or she worked. (*Id.* ¶ 5.1.1.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

Based upon the proposed attorneys' fees and costs, incentive awards, administrative costs, and PAGA penalty, the Claims Administrator estimates that the net settlement sum will be $6,951,408.89. (Osterlund Decl. ¶ 9.) Given that the total combined number of workweeks among the class members amounts to 37,048, the workweek point value for calculating each class member's share of the net settlement is $187.63. (*Id.*) The average claim value is approximately $13,140.66.[9] (*Id.*)

In comparison, Plaintiffs' damages experts have estimated that should this case proceed to trial, the maximum potential class recovery ranges between $16,968,424 and $26,188,796. (*See* Mot. for Final Approval at 18; *see also* Sayas Approval Decl. ¶ 48.) The proposed settlement thus represents an immediate recovery equal to between 42% and 65% of the estimated maximum sum that could be awarded at trial. (*Id.*) But Defendants heavily dispute Plaintiffs' damages. Should Defendants prevail on their arguments concerning the propriety of the lease payment deductions or the applicability of a fuel surcharge offset, the maximum amount recoverable at trial could be much lower than the experts' estimates.

In light of these considerations, the settlement appears fair and reasonable. Although a larger damages award is theoretically possible, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624 (internal quotation marks omitted). In light of the risks associated with proceeding to trial, this agreement will provide class members with significant and immediate compensation. Additionally, the settlement guarantees future relief for all class members and ensures that they will not suffer further damages from misclassification. Although Plaintiffs' counsel have not provided an estimate as to the monetary value of the injunctive relief, it is reasonable to assume that Defendants' agreement to reclassify all class members as employees will provide a significant benefit to these individuals. That no class member has objected to or opted out of the settlement suggests that the class as a whole perceives the recovery to be fair, favorable, and a better alternative to the risks of trial. Accordingly, this factor weighs in favor of final approval.

---

[9] Plaintiffs' Motion for Fees, which was filed approximately two weeks before the claims administrator's declaration, states that the average recovery is $12,881. (*See* Mot. for Fees at 1.) Presumably, there is a more recent and accurate figure. Regardless, the difference does not alter the Court's conclusion that the proposed settlement is fair and reasonable.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

### 5. The Extent of Discovery Completed and the Stage of the Proceedings

The extent of discovery may be indicative of the parties' knowledge of the case and is therefore relevant to determining the overall fairness of a settlement. *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527. Where the parties have conducted extensive discovery, this factor favors final approval "because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id.* (internal quotation marks omitted). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Id.*

This matter has been pending for over three years. During this time, the parties have engaged in extensive discovery and motion practice. Indeed, the parties did not reach a settlement until after the close of discovery and upon the eve of trial. A cursory review of the docket reflects the substantial time and effort that the parties devoted to this case before settlement. A snapshot of the parties' efforts is set forth below.

During discovery, the parties conducted fifty-eight depositions of Defendants' employees, management, and personnel; the named plaintiffs; class members; and the parties' respective experts. (Sayas Approval Decl. ¶ 36.) Additionally, Defendants have produced more than a million pages of documents, requiring extensive document evaluation and analysis. (*Id.* ¶¶ 32–34.) Both parties also conferred with, retained, and received reports from numerous experts. (*Id.* ¶¶ 30–35.) Both parties also filed and argued numerous motions, including discovery motions, a motion for class certification, a motion for evidentiary sanctions, motions for summary judgment, motions for leave to amend, a motion for intervention, and motions in limine. (*See* Dkt. Nos. 23, 32, 69, 73, 79, 83, 87, 88, 93, 97, 101, 119, 123, 135, 146, 151, 153, 156, 194, 195, 198, 201–06, 215; *see also* Sayas Approval Decl. ¶¶ 5–10, 12–18; Hayes Approval Decl. ¶¶ 6–18.) Additionally, at the time the Settlement Agreement was finalized, the parties had completed their pre-trial documents and were in the final stages of preparing for trial. (Sayas Approval Decl. ¶ 18; Hayes Approval Decl. ¶ 19.)

In sum, the protracted history of these proceedings highlights the parties' extensive knowledge of this case and the likely risks of further litigation. Given the significant amount of discovery and the parties' final preparations for trial, it is clear that both

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

parties have a comprehensive understanding of the strengths and weakness of their case. As a result, the settlement may be presumed to be fair, *see Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527, and this factor weighs in favor of approval.

### 6. The Experience and Views of Class Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Plaintiffs assert that they are represented "by counsel who have significant experience in employment law and class action litigation, and had the ability to litigate this case on a class-wide basis if a fair settlement were not offered." (*See* Mot. for Final Approval at 19.) Indeed, Plaintiffs' counsel have extensive experience in the field of wage and hour class actions. (*See* Sayas Approval Decl. ¶¶ 40–43; Hayes Approval Decl. ¶¶ 27–29.) Together, Mr. Sayas and Mr. Hayes have over thirty-eight years of experience representing and litigating employment matters. (Sayas Approval Decl. ¶ 40; Hayes Approval Decl. ¶ 27.) Both attorneys have pursued other employment cases to trial, as well as negotiated successful settlement agreements. (*Id.*) Based upon this experience, as well as their understanding of the risks associated with proceeding to trial, Plaintiffs' counsel believe the settlement here to be fair, reasonable, and in the best interest of the class. (Sayas Approval Decl. ¶ 50; Hayes Approval Decl. ¶ 30.) Given class counsel's collective experience, this view appears credible and reasonable. Thus, this factor also weighs in favor of approval.

### 7. The Presence of a Governmental Participant

Although there is no governmental participant in this case, the United States Department of Labor ("DOL") concurrently pursued claims against STE for violations of the Fair Labor Standards Act in a related case.[10] The DOL participated in the mediation sessions and has received notice of the proposed settlement in this case. (*See* Mot. for Final Approval at 20.) To date, the DOL has not objected to the settlement. "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal

---

[10] *See Thomas E. Perez v. STE Transport Express, Inc.*, No. CV 13-04255-BRO.

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|----------|----------------------------|------|--------------|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

course of the class action settlement procedures." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08-01365 CW, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) (citing Fed. R. Civ. P. 23(e)(2)). As a result, this factor favors final approval. *Id.*

### 8. The Reaction of the Class Members to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529; *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable."). In accordance with the Court's preliminary approval of the proposed settlement, the Claims Administrator mailed the approved settlement notice by first class mail, postage prepaid, to each identified class member for whom a mailing address was available. (*See* Osterlund Decl. ¶¶ 2–5, 14.) Of the seventeen notices that were initially returned as undeliverable, the Claims Administrator has successfully re-mailed the notice packet to thirteen of these individuals. (*Id.* ¶ 7.) Thus, almost the entire class has received notice of the proposed settlement. And to date, no class member has requested exclusion. (*Id.* ¶ 10.) The only "objection" the Claims Administrator has received is, in fact, a request from Mr. Garcia to be included as a class member. (*See* Dkt. No. 239.) Plaintiffs' counsel affirms that Mr. Garcia has been included in the class, and that the parties are presenting working to verify his qualifying workweeks for purposes of a pro rata share of the settlement. (Hayes Approval Decl. ¶ 37.) Given that the deadline to object was April 20, 2015, and in light of the absence of any substantive objections to the terms or conditions of the proposed settlement, the class response appears universally positive. Accordingly, there is a strong presumption that the settlement is fair, *see Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529, and this factor strongly favors approval.

### 9. The Method of Distribution

A district court must also find that a proposed settlement's plan for allocation among the class members is fair and reasonable before granting final settlement approval. *See Class Plaintiffs*, 955 F.2d at 1284–85. In this case, the Court finds that the proposed

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|----------|----------------------------|------|--------------|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

plan for allocating the net settlement sum is fair. The Settlement Agreement provides that each class member will receive a pro rata share based upon the number of workweeks he or she worked during the class period. (*See* Settlement Agreement ¶ 5.1.1.) The losses claimed by Plaintiffs are unpaid minimum wages and unreimbursed business expenses. Given the direct link between these losses and the number of weeks each class member worked, the method of distribution ensures that each class member's recovery is proportional to his or her injury. Thus, the plan of allocation here appears fair and reasonable. *See In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable.").

In sum, all of the fairness factors weigh in favor of approving the settlement in this case. The Settlement Agreement provides immediate and substantial recovery to a class of individuals who have vigorously pursued this litigation, and who would otherwise face a real risk of lesser recovery should this case proceed to trial. Additionally, the proposed method of distribution reasonably compensates each class member according to his or her individual injury. For these reasons, the Court concludes that the proposed settlement is fair, adequate, and reasonable. The Court therefore **GRANTS** Plaintiffs' Motion for Final Approval.

### B. Plaintiffs' Motion for Fees

Next, the Court considers Plaintiffs' Motion for Fees. This motion involves various requests, including: (1) class counsel's request for attorneys' fees; (2) class counsel's request for costs; and (3) Plaintiffs' request for incentive awards to the named plaintiffs and two other active class members. (*See generally* Mot. for Fees.) Although the motion does not address the issues of the Claims Administrator's claimed costs or the PAGA payment provided for in the Settlement Agreement, the Court will consider the reasonableness of these figures, as both affect the net settlement sum to be distributed among the class.

#### 1. Class Counsel's Request for Attorneys' Fees

Pursuant to the Settlement Agreement, class counsel request attorneys' fees of $3,680,000, or one-third of the $11,040,000 gross settlement sum. (*See* Mot. for Fees at

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

10–21.)  In evaluating this request, the Court first considers whether the proposed common fund fee request is appropriate in this case.  The Court then considers whether, under the relevant Ninth Circuit factors, the requested fee award is fair and reasonable.  Because class counsel seek a fee award that is higher than the Ninth Circuit's benchmark, the Court will also assess whether an upward adjustment is warranted under the facts and circumstances of this case.  As a final check on the overall reasonableness of the fee request, the Court compares the percentage method fee award that the parties have agreed to with the fee recovery that would result under the lodestar method.

Plaintiffs' claims arise exclusively under California law.  The Ninth Circuit has held that in cases where state law claims predominate, state law governs the method of calculating fee awards.  *See Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).  Under California law, a court may award attorneys' fees from a common fund by applying either the lodestar method or the percentage method.  *See Wershba v. Apple Computer, Inc.*, 81 Cal. App. 4th 224, 254 (Cal. Ct. App. 2001); *see also Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (citing *Vizcaino*, 290 F.3d at 1047).  Regardless of the method chosen, California law requires that the overall fee be reasonable.  *See In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557–58 (Cal. Ct. App. 2009); *see also In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 (citing *Paul, Johnson*, 886 F.2d at 271–72).

### a. A Common Fund Award of Attorneys' Fees from the Gross Settlement is Appropriate

As discussed above, an award of attorneys' fees from a common fund is appropriate where the Court can: "(1) sufficiently identify the class of beneficiaries; (2) accurately trace the benefits; and (3) shift the fee to those benefitting with some exactitude." *Staton*, 327 F.3d at 972 (citing *Van Gemert*, 444 U.S. at 478–79).  These criteria are not met when the litigants "simply vindicate a general social grievance." *Van Gemert*, 444 U.S. at 479.  But where each class member has "an undisputed and mathematically ascertainable claim" to a sum recovered on his or her behalf, a fee award from the sum is appropriate.  *Id.*

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

Here, an award of attorneys' fees from the gross settlement is appropriate. The class of beneficiaries is sufficiently identifiable, consisting of "all persons, except those [who opted out of the class after certification] who (1) signed a Truck Lease Agreement with [STE] in California from January 31, 2008 through the date on which the Court grants preliminary approval; (2) actually drove a [STE] truck without hiring others to perform the work for [STE]; and (3) were classified by [STE] as independent contractors instead of employees." (*See* Settlement Agreement ¶ 2.21). To date, the Claims Administrator affirms that the class includes 529 members. (Osterlund Decl. ¶ 5.) Another three individuals have requested inclusion in the class, and Plaintiffs' counsel estimates that the class will include approximately 540 members. (Mot. for Fees at 1.)

Additionally, the benefits from the gross settlement can be accurately traced to each class member according to the Settlement Agreement's proposed method for apportioning individual payments. (*See* Settlement Agreement ¶ 5.1.1.) The agreement provides that each class member will receive a pro rata share of the net settlement sum based upon the number of weeks he or she worked during the class period and the workweek point value." (*Id.*) The workweek point value will be calculated by dividing the net settlement sum by the total number of weeks worked by all class members. (*Id.*) Each individual settlement payment will be calculated by multiplying the class member's actual workweeks by the workweek point value. (*Id.*) Thus, each class member's recovery is proportional to the time the member worked for STE during the relevant period and represents a reasonable estimate of his or her actual loss.

Finally, the fee award can be shifted to the class members with some exactitude. The award will be deducted from the gross settlement sum before calculating each class member's individual payment. Thus, each class member will bear a proportional share of the total fee expense. As a result, a common fund fee award is appropriate in this case, as each class member will receive an "undisputed and mathematically ascertainable" settlement payment. *Van Gemert*, 444 U.S. at 479.

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

### b. The Relevant Factors Indicate That Class Counsel's Requested Fee is Fair and Reasonable

Class counsel request a fee equal to one-third of the net settlement sum. This fee request diverges from the Ninth Circuit's 25% benchmark for percentage method fee recovery. *See Hanlon*, 150 F.3d at 1029. Nevertheless, the Ninth Circuit has emphasized that although the benchmark is "a starting point for analysis," it "may be inappropriate in some cases." *Vizcaino*, 290 F.3d at 1048.

In evaluating a percentage method fee request that diverges from the benchmark, the relevant inquiry is whether, under all the facts and circumstances of the case, the percentage is reasonable. *Id.* Factors to consider include: (1) the results achieved; (2) the risk undertaken by class counsel in pursuing the case; (3) whether the settlement generated benefits beyond a cash payment; (4) the market rate for similar representations; and (5) the nature of the representation, including whether it was executed on a contingency basis. *Id.* at 1048–50. Some of these factors overlap with those relevant to a fee award's overall fairness and reasonableness. *Compare In re Omnivision Techs.*, 559 F. Supp. 2d at 1046, *with Vizcaino*, 290 F.3d at 1048–50. Accordingly, the Court will simultaneously consider the factors relevant to fee requests in general, as well as those relevant to requests above the 25% benchmark. As set forth in further detail below, the Court finds cause to depart from the benchmark and concludes that class counsel's request for 33% is reasonable and appropriate in light of the particular facts and circumstances of this case.[11]

### i. The Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046. Here, the Claims Administrator estimates that the average class member's recovery will be

---

[11] The Ninth Circuit has explained that "the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000). Finding class counsel's request for one-third of the gross settlement fair and reasonable under the circumstances, the Court does not separately address the issue of net versus gross recovery.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

$13,140.66. (*See* Osterlund Decl. ¶ 9.) The highest individual settlement payments will range from $46,000 to $51,000. (Mot. for Fees at 13.) Given the lack of Ninth Circuit precedent addressing the proper classification of port truck drivers, as well as Defendants' contentious and zealous defense of Plaintiffs' claims, the Court finds that the $11,040,000 settlement here represents a highly favorable result which favors an upward adjustment from the 25% benchmark. *See Vizcaino*, 290 F.3d at 1048 (noting that "[e]xceptional results are a relevant circumstance" for departing from the benchmark and upholding a 28% fee award where the district court approved the award based on the absence of supporting precedent and the defendant's vigorous opposition).

Additionally, Plaintiffs' counsel assert that the settlement here compares favorably to other settlements recently approved in similar disputes in California federal district courts. (Mot. for Fees at 10–11, 13–14.) Plaintiffs' counsel cite several district court cases exemplifying the proposed Settlement Agreement's positive results. (*See id.*) Counsel also point to the settlement's guarantee of immediate relief, highlighting the fact that class members will receive their share of the settlement within the year—no doubt a welcome relief given the protracted litigation of this case. (*Id.* at 14.) Finally, class counsel note that the settlement fund is non-reversionary, and that any uncashed settlement payments will be redistributed to the class members. (*Id.*)

In light of the prolonged litigation, the risks associated with proceeding to trial, and the high value of the settlement's monetary component, the Court finds that the settlement represents, on the whole, an exceptional recovery. Class members will not only receive a gross settlement amount of $11,040,000, but will also be reclassified as employees, which will prevent similar harm from occurring in the future. When compared to settlements in similar cases, the average payout to each class member and the highest estimated payouts are far above average. *See, e.g.*, *Boyd v. Bank of Am. Corp.*, No. CV 13-00561 DOC, 2014 WL 6473804, at *5–7, 10 (C.D. Cal. Nov. 18, 2014) (in a class action hour and wage dispute, finding that a gross settlement of $5.8 million, with an average payout of $10,840 per class member and a maximum recovery of $30,000, was greater than the results achieved in similar cases and justified a fee award of one-third of the overall settlement); *Barbosa*, 297 F.R.D. at 450 (collecting cases and finding counsel's request for one-third of a $1.29 million settlement fair and reasonable); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM, 2008 WL 8150856, at *15–16 (C.D. Cal. July 21, 2008) (awarding fees equal to 34% of a $8.5

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02092-BRO (PLAx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL. | | |

million gross settlement). In sum, the favorable results achieved here suggest that an enhancement of the benchmark is appropriate, and that class counsel's request for one-third of the gross settlement amount is fair and reasonable under the circumstances.

### ii. The Benefits Generated Beyond Cash Payment

Where a settlement affords class members benefits beyond monetary relief, these benefits may justify an above-benchmark fee award. *See Vizcaino*, 290 F.3d at 1049 ("Incidental or non-monetary benefits conferred by the litigation are a relevant circumstance); *see also In re Pac. Enters.*, 47 F.3d at 379. Here, the Settlement Agreement requires Defendants to reclassify all class members as employees rather than independent contractors. (*See* Settlement Agreement ¶ 5.2.) Reclassification ensures that the class members will not be subject to future harm and extends the settlement's benefits beyond the fact of a one-time settlement payment. As a result of the reclassification, STE's drivers will no longer be harmed by paycheck deductions for the cost of fuel, insurance, and other truck operating expenses; will benefit from the greater rights accorded to employees under state law, including workers' compensation and protection against unlawful discrimination; and will be entitled to certain benefits that they did not previously receive, such as health insurance and retirement.[12] Additionally, Plaintiffs' counsel point out that Defendants "are major players in the port-trucking and marine-terminal industries." (Mot. for Fees at 15.) As such, the reclassification may encourage other businesses within the industry to follow suit. In short, the non-monetary relief obtained here represents a "special circumstance" that justifies an upward enhancement from the benchmark. *See Boyd*, 2014 WL 6473804, at *9 (awarding one-third of the gross settlement where the agreement also provided for substantial non-monetary benefits stemming from the class members' reclassification as non-exempt employees).

---

[12] For example, class counsel has affirmed that STE drivers are now paid $21 per hour and are able to collectively bargain to receive overtime compensation. (*See* Supplemental Approval Decl. ¶ 9.) Additionally, drivers now receive health, dental, and vision insurance for themselves and their family dependents, with 100% of the insurance premiums paid by STE. (*Id.*) Drivers are also now entitled to pension benefits, paid holidays, and sick leaves. (*Id.*)

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-02092-BRO (PLAx) | Date | May 14, 2015 |
| Title | GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL. | | |

### iii. The Risks of Litigation

The risk that further litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47; *see also Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance."). In evaluating the risk of the litigation, a court may consider the complexity of the legal issues involved. *In re Omnivision*, 559 F. Supp. 2d at 1046–47. Plaintiffs and their counsel believe that further litigation would pose a significant risk that the class members would receive no recovery. (*See* Mot. for Fees at 16–17; *see also* Mot. for Final Approval at 14–16.) As discussed in further detail above, Plaintiffs have identified several circumstances that could reduce the class's recovery or even prevent the class from prevailing, including: (1) Defendants' proposed motion for decertification; (2) Defendants' challenge to Mr. Brown's adequacy as a class representative; (3) whether common issues in fact predominant; (4) whether the named Plaintiffs' PAGA claims seek double recovery; and (5) whether SSA will be found to be jointly liable for STE's conduct. (*Id.*) Given that Plaintiffs have prosecuted this matter to the eve of trial, their assessment that the settlement represents a highly favorable result in light of these apparent risks is entitled to due weight and regard. The Court agrees that the comprehensive monetary and non-monetary benefits accorded under the Settlement Agreement represent a favorable outcome, especially when compared to the real risk that Plaintiffs would obtain nothing at trial. Accordingly, this factor suggests that class counsel's fee request is reasonable under the circumstances.

### iv. The Skill Required and the Quality of Class Counsel's Work

Class counsel assert that the skill required in this case favors granting their above-benchmark request. The Ninth Circuit has advised that the benchmark should be adjusted "when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311. Indeed, where class counsel's skill and experience are essential to the result, the legal questions involved present significant trial risks, and class counsel expends substantial time and effort on a case at the expense of working on other matters, the circumstances merit an upward adjustment from the

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

benchmark. *See Boyd*, 2014 WL 6473804, at *10 (citing *In re Heritage Bond Litig.*, No. CV 02-01475 DT, 2005 WL 1594389, at *19 (C.D. Cal. June 10, 2005)).

As discussed above, class counsel here have extensive experience litigating and negotiating settlements in wage and hour class action cases. (*See* Sayas Approval Decl. ¶¶ 40–43; Hayes Approval Decl. ¶¶ 27–29.) Class counsel believe that their collective skill and experience were necessary to certify the class, navigate the discovery process, advocate and prevail on various motions, and manage what proved to be a large and complex class action. (*See* Mot. for Fees at 17.) Additionally, the Court notes that class counsel have been litigating this case for over three years and have expended over 8,800 hours of time and effort. (*See id.* at 20.) In that time, they have successfully certified the class, prevailed on motions for summary judgment, and negotiated the instant Settlement Agreement. Given the significant time and energy class counsel have skillfully devoted to this case, this factor favors a finding that the proposed fee request is reasonable.

### v. The Contingent Nature of the Representation and the Financial Burden Carried By Class Counsel

The contingent nature of the representation bears on the overall fairness and reasonableness of a fee request. The risk that counsel will not recover, as well as the financial burden accompanying the contingent nature of the representation, may justify a higher percentage fee award. *See Carter v. Anderson Merchandisers, LP*, No. CV 08-0025 VAP, 2010 WL 1946757, at *2 (C.D. Cal. May 11, 2010) (finding an award of 25% to be reasonable where class counsel undertook the case on a contingent basis and advanced all the litigation costs).

Here, class counsel class took on this case on a contingency basis. (*See* Decl. of Joe Sayas, Jr. in Supp. of Mot. for Fees ("Sayas Fee Decl.") ¶ 65; *see also* Decl. of Matthew B. Hayes in Supp. of Mot. for Fees ("Hayes Fees Decl.") ¶ 4.) Class counsel therefore faced a very real risk that they would not recover any fees. In the face of this risk, class counsel devoted significant time, effort, and resources toward litigating this case for over three years and preparing for a full trial on the merits. (Sayas Fee Decl. ¶¶ 63–65; *see also* Hayes Fee Decl. ¶¶ 3–4.) Class counsel also took on the burden and expense of advancing all litigation costs. (Sayas Fee Decl. ¶ 65; *see also* Hayes Fee Decl. ¶ 4.) Finally, class counsel avers that to effectively manage and litigate this case,

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|----------|---------------------------|------|--------------|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

they had to forgo other representations. (Mot. for Fees at 16.) Given the significant burden to class counsel by taking this case on a contingency bases, advancing all costs, and proceeding for over three years without any compensation, this factor also supports a finding that the requested one-third fee recovery is reasonable.

### vi. The Awards Made in Similar Cases

Class counsel cite to numerous cases to demonstrate that similar fee awards have been approved in analogous cases. In *Stuart v. Radioshack Corp.*, No. CV 07-04499 EMC, 2010 WL 3155645, at *5–7 (N.D. Cal. Aug. 9, 2010), the court awarded fees equal to one-third of a $4.5 million settlement in a wage and hour class action alleging failure to reimburse expenses. In *Singer v. Becton Dickinson & Co.*, No. CV 08-00821 IEG, 2010 WL 2196104, at *8–9 (S.D. Cal. June 1, 2010), the court approved a request for one-third of the common fund, finding that the request was reasonable compared to other wage and hour class actions where fee awards ranged from 30.3% to 40%. Similarly in *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491–93 (E.D. Cal. Mar. 9, 2010), the court approved an award of one-third of a wage and hour class settlement, citing five other recent wage and hour class action settlements where district courts had approved awards ranging from 30% to 33.3%. The facts and circumstances of this case suggest that a similar award is reasonable. Class counsel have been working on this case since 2012, and they have achieved a highly favorable result. The proposed settlement will provide substantial compensation to each class member, as well as valuable non-monetary relief that eliminates the prospect of future harm. Under these circumstances, the request for one-third of the gross settlement here appears fair and reasonable.

### vii.    The Reaction of the Class

The reaction of the class is also relevant in determining the overall fairness and reasonableness of an award of attorneys' fees. *In re Heritage Bond Litig.*, 2005 WL 1594389, at *15 ("The presence or absence of objections from the class is also a factor in determining the proper fee award."). To date, no class member has opted out or objected to the Settlement Agreement. The only "objection" came from a drive who sought to be included in the class and who has since been included. The class reaction appears to be

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|----------|----------------------------|------|--------------|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

overwhelmingly positive. Thus, this factor weighs in favor of granting class counsel's one-third fee request.

### c. The Lodestar Method Confirms the Fairness and Reasonableness of Class Counsel's Requested Fee

Courts may apply the lodestar method as a "cross-check" on the reasonableness of a percentage-based fee award. *Vizcaino*, 290 F.3d at 1050. The lodestar "is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). A court may adjust the lodestar figure upward or downward by an appropriate multiplier to reflect "a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 941–42 (internal quotation marks omitted). Where class counsel's investment of time is minimal, the lodestar calculation may favor awarding a lower percentage. *Vizcaino*, 290 F.3d at 1050.

To aid the Court's analysis, class counsel have calculated their fees under the loadstar method. (*See* Mot. for Fees at 20.) Based on a total number of 8,843.66 working hours,[13] at rates ranging from $185 to $750 per hour, the lodestar figure is $4,954,029.85. (*Id.*) Thus, without applying a multiplier, the lodestar figure is $1,274,029.85 more than class counsel's requested percentage-based fee of $3,680,000. The requested fee also represents a 26% discount from the unadjusted lodestar. Additionally, class counsel have provided declarations from attorneys within the community engaged in similar practices who confirm that the hourly rates charged by class counsel here were reasonable.[14] (*See*

---

[13] This figure does not include the time class counsel has spent or will spend on preparing final approval papers, addressing class member inquiries, and preparing for the final fairness hearing. (*See* Mot. for Fees at 20.) Class counsel estimates that they have expended an additional 90 working hours on this case since submitting the Motion for Fees on April 1, 2015. (*See* Supplemental Approval Decl. ¶ 8.)

[14] "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-02092-BRO (PLAx) | Date | May 14, 2015 |
|----------|------------------------|------|--------------|
| Title | GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL. | | |

Decl. of Michael Morrison ("Morrison Decl.") ¶ 16; *see also* Decl. of Randy Renick ("Renick Decl.") ¶¶ 17–18.) Given the substantial time and effort class counsel expended on this litigation, that their request for one-third of the gross settlement sum falls far below the unadjusted lodestar confirms the reasonableness of the request.

Based on the factors and the foregoing analysis, the Court concludes that class counsel's request for one-third of the gross settlement is fair and reasonable under the circumstances. This fee appropriately compensates Plaintiffs' counsel for the time they invested in settling this dispute, as well as the risk they assumed by accepting the matter on a contingency basis. The Court therefore approves Plaintiffs' Motion for Fees to the extent it seeks an award of attorneys' fees in the amount of $3,680,000.

### 2. Class Counsel's Request for Reimbursement is Reasonable

Plaintiffs' counsel also request reimbursement for the necessary expenses they incurred in litigating this case. (*See* Mot. for Fees at 21–22.) Plaintiffs' counsel advanced all the costs and expenses of this litigation. (*See* Sayas Fee Decl. ¶ 65; *see also* Hayes Fee Decl. ¶ 4.) As a result, they have incurred expenses for depositions, private mediations, photocopying, mailing, filing fees, consultant and expert fees, investigation, legal research, travel, surveys, notices, group meetings with class members, attorney and messenger services, and other costs necessary for this litigation. (*See* Sayas Fee Decl. ¶¶ 65–66; Hayes Fee Decl. ¶ 43.) These costs and expenses total $294,290.31. (*Id.*) Defendants have not objected to awarding these expenses, and class counsel have adequately documented them. Reimbursement is therefore appropriate. *See Odrick v. UnionBancal Corp.*, No. CV 10-05565 SBA, 2012 WL 6019495, at *6 (N.D. Cal. Dec. 3, 2012) (approving expenses "for a retained expert, mediation, travel, copying, mailing, legal research, and other litigation-related costs"); *Rutti v. Lojack Corp.*, No. CV 06-00350 DOC, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable.").

The only cost the Court declines to approve is the $3,129.86 Plaintiffs' counsel seek for "miscellaneous" expenses. (*See* Sayas Fee Decl. ¶ 65.) Because counsel have

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

not informed the Court as to the nature of these expenses, the Court cannot reasonably conclude whether they were necessary for the litigation. Accordingly, the Court approves class counsel's request for reimbursement in the amount of $291,160.45.

### 3. Plaintiffs' Request for Incentive Awards is Reasonable

In the context of class action cases, incentive awards for the named representatives are discretionary but nevertheless "fairly typical." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Incentive awards are designed "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958–59. Factors to consider in determining whether to approve an incentive award include:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The Settlement Agreement provides for an incentive award of up to $15,000 for each named plaintiff. (Settlement Agreement ¶ 5.1.2.) It also provides for incentive awards of $10,000 and $7,500, respectively, to active class members Elroy Lambey (Mr. Lambey") and Mario Giron ("Mr. Giron"). (*Id.*) To date, no class member has objected to or opposed the proposed incentive awards. Additionally, the request for $15,000 incentive awards for each named plaintiff accords with awards deemed reasonable and approved in other cases in this district. *See, e.g.*, *La Fleur v. Med. Mgmt. Int'l, Inc.*, Nos. CV 13-00398 VAP, CV 13-01960 VAP, 2014 WL 2967475, at *7–8 (C.D. Cal. June 25, 2014) (awarding a $15,000 incentive award to each named plaintiff).

The relevant factors also favor granting Plaintiffs' requests for incentive awards. The named plaintiffs, Mr. Taylor and Mr. Brown, have been involved in this litigation

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

since its inception. (*See* Decl. of Grayling Taylor ("Taylor Decl.") ¶ 4; *see also* Decl. of Bruce Brown ("Brown Decl.") ¶ 4.) Their declarations affirm that they have invested significant time and energy in communicating with class counsel to prepare discovery responses and help craft a litigation strategy; liaisoning between class counsel and the various class members; and attending numerous hearings, mediations, and settlement conferences. (Taylor Decl. ¶¶ 4–12; *see also* Brown Decl. ¶¶ 4–5, 7–17.) Mr. Brown estimates that he has devoted over 250 hours of time to this case. (Brown Decl. ¶ 17.) Based on this estimate, the proposed incentive award would compensate Mr. Brown at $60 per hour, a figure that is wholly reasonable in light of the risks associated with pursuing this case. As one example of such risk, Mr. Taylor affirms that when he initiated this action, STE "disqualified" him from the truck lease program, effectively terminating his employment, due to an incident involving minor truck damage that cost only $100 to repair. (*See* Taylor Decl. ¶ 13.)

Mr. Lambey and Mr. Giron became involved in the case later than Mr. Taylor and Mr. Brown, but they have actively participated in the litigation since. These class members assisted class counsel with discovery and litigation strategy; provided declarations in support of the motion for class certification and motion to intervene; communicated with other class members to apprise them of case updates; and attended hearings, mediations, and the settlement negotiations. (*See* Decl. of Elroy Lambey ("Lambey Decl.") ¶¶ 4–11; *see also* Decl. of Mario Giron ("Giron Decl.") ¶¶ 4–10.) Given the time and effort these individuals expended on the litigation and the proposed settlement, the proposed incentive awards will provide fair and reasonable compensation.

In sum, the named plaintiffs and active class members all assumed financial and personal risks by involving themselves in this litigation. In light of the favorable class recovery that these individuals helped achieve, the proposed incentive awards are appropriate. The Court therefore approves the requested incentive awards.

### 4. The Proposed Payment to the Claims Administrator is Reasonable

The Settlement Agreement provides that the Claims Administrator's fees and costs will be paid from the gross settlement. (Settlement Agreement ¶ 5.1.5.) The Court's order preliminarily approving the settlement appointed Gilardi as the Claims

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|----------|---------------------------|------|--------------|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

Administrator. (Dkt. No. 230 at ¶ 5.) Gilardi's total costs for administering the settlement, including both costs incurred to date as well as costs anticipated to finalize the class payments, amount to $29,300.80. (*See* Osterlund Decl. ¶ 18, Ex. C.) This request is reasonable in light of the size of the class. *See, e.g.*, *Franco*, 2012 WL 5941801, at *14 (approving the claims administrator's request for $30,000 in fees in a case involving 2,055 class members). The Court therefore approves this request.

### 5. The Proposed PAGA Penalty Payment is Reasonable

The settlement of a PAGA claim is also subject to a district court's review and approval. *See* Cal. Labor Code § 2699(l); *Franco*, 2012 WL 5941801, at *14. Pursuant to the Settlement Agreement, Defendants have agreed to pay $50,000 as civil penalties on Plaintiffs' PAGA claim. (Settlement Agreement ¶ 5.1.4.) The proposed PAGA payment is greater than awards deemed reasonable and approved in other cases. *See, e.g.*, *Hicks v. Toys "R" Us-Delaware, Inc.*, No. CV 13-1302 DSF, 2014 WL 4703915, at *1 (C.D. Cal. Sept. 2, 2014) (approving $5,000 PAGA payment in a case involving a $4 million settlement); *Franco*, 2012 WL 5941801, at *14 (approving $10,000 PAGA payment in a case involving a $2.5 million settlement). The payment also comports with section 2699 of the Labor Code, which sets forth the method for distributing civil penalties recovered by employees on a PAGA claim.[15] (*See* Settlement Agreement ¶ 5.1.4.) Accordingly, the Court approves the $50,000 proposed PAGA payment as fair and reasonable and directs that it be distributed in accordance with the Settlement Agreement.

---

[15] Section 2699 provides that 75% of the penalty shall be distributed to the California Labor and Workplace Development Agency ("LWDA"), and that 25% of the penalty shall be distributed to the aggrieved employees. *See* Cal. Lab. Code § 2699(i). There is an exception to this method of distribution where the defendant does not employ one or more employees. That exception is not applicable here. Accordingly, the Settlement Agreement accords with California law, as it directs that 75% of the PAGA payment shall be made to the LWDA, and 25% "shall revert to and be deemed part of" the net settlement sum. (*See* Settlement Agreement ¶ 5.1.4.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02092-BRO (PLAx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **GRAYLING TAYLOR, ET AL. V. SHIPPERS TRANSPORT EXPRESS, INC., ET AL.** | | |

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Final Approval and Motion for Fees.

The Court directs the parties to file a proposed judgment in accordance with this order **by no later than Friday, May 29, 2015**.

**IT IS SO ORDERED.**

                                                      :

Initials of Preparer                    rf